UNITED STATES OF AMERICA *ex
rel*. COMFORT FRIDDLE AND
STEPHANIE KENNEDY,

       Plaintiff,

v.

TAYLOR, BEAN & WHITAKER
MORTGAGE CORPORATION; HOME
AMERICA MORTGAGE, INC.; GREGORY
HICKS; DENNIS MOSELEY; CARL
WRIGHT; AND JOHN DOE,

       Defendants.

CIVIL ACTION NO.

1:06-cv-3023-JEC

## <u>ORDER AND OPINION</u>

This case is before the Court on defendant Wright's Motion to Dismiss [66], defendant Hicks' Motion to Dismiss [67], defendant Moseley's Motion to Dismiss [68], relators' Motion regarding Concurrent Representation [81], and relators' Motion for Summary Judgment [101]. The Court has reviewed the record and the arguments of the parties and, for the reasons that follow, concludes that defendant Wright's Motion to Dismiss [67] should be **DENIED without prejudice**, defendant Hicks' Motion to Dismiss [67] should be **GRANTED in part** and **DENIED in part**, defendant Moseley's Motion to Dismiss should be **GRANTED**, relators' Motion regarding Concurrent

Representation [81] should be **DENIED**, and relators' Motion for Summary Judgment [101] should be **DENIED without prejudice**.

## BACKGROUND

Relators Stephanie Kennedy and Comfort Friddle, who were employees of one or both of the two corporate defendants, have brought this qui tam action on behalf of themselves and the United States. They sue both the corporate defendants and three individuals affiliated with the latter for violations of the False Claims Act, 31 U.S.C. §§ 3729-3733. Relators allege that the defendants engaged in massive mortgage fraud against the United State Government ["the Government"] by duping the latter into guaranteeing fraudulent, high-risk loans through application materials that contained false information. When the borrowers eventually defaulted, defendants presented claims for repayment to the Government; relators allege that defendants' claims of entitlement to repayment were false.

In addition to the above fraud claim, brought pursuant to § 3729, the relators have brought a retaliation claim pursuant to § 3730(h). Specifically, relators allege that some of the defendants retaliated against them when relators complained internally about the above wrongdoing. This retaliation included forcing the relators out of their job positions and attempting to thwart their future employment. Relator Kennedy also brings a state-law breach of contract claim.

AO 72A
(Rev.8/82)

The Relators' Complaint remained under seal for a lengthy period of time while the United States investigated and considered whether to intervene in this action. Ultimately, the Government intervened as to the two corporate defendants: Taylor, Bean & Whitaker Mortgage Corporation ("TBW") and Home America Mortgage, Inc. ("HAM"). This intervention was limited only to the § 3729 claim brought against the corporate defendants. In other words, the Government declined to intervene as to any claims brought against the individual defendants or as to any retaliation claims brought against the corporate defendants.

After the filing of the Government's Notice of Intervention in September 2010, the Complaint was unsealed. Because, in the meanwhile, the corporate defendants TBW and HAM had filed for bankruptcy, the Government subsequently requested a stay of proceedings as to those defendants to allow the bankruptcy proceedings to run their course. The bankruptcy proceedings continue for the corporate defendants, as does the stay of the litigation involving them.

Litigation of the relators' claims against the individual defendants continues, however. In this Order, the Court addresses the individual defendants' motions to dismiss particular claims, as well as relators' motion to preclude the individual defendants from being represented by the same counsel.

3

**DISCUSSION**

**I.   DEFENDANTS' MOTIONS TO DISMISS**

   A.   Claims Asserted in Complaint

The Complaint consists of four counts. Count I alleges substantive False Claims Act violations. Counts II and III allege False Claims Act retaliation claims on behalf of relators Kennedy and Friddle, respectively. Count IV alleges a breach of contract claim on behalf of relator Kennedy.

The Complaint does not attribute any counts to particular defendants. Accordingly, as written, the Complaint appears to direct all four claims against all three individual defendants. Defendant Wright has moved to dismiss the complaint in its entirety. Defendants Hicks and Moseley have filed motions to dismiss Counts II, III, and IV of the Complaint.

   B.   Applicable Law

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for failure to state a claim for relief. A complaint alleging False Claim Act violations must satisfy two pleading requirements. It must satisfy FED.R.CIV.P. 8(a)(2) standards and it must comply with FED.R.CIV.P. 9(b)'s heightened pleading requirements. *United States ex rel Matheny v. Medco Health Solutions, Inc.*, ___ F.3d ___, No. 10-15406, 2012 WL 555200, at *3 (11th Cir. Feb. 12, 2012).

4

As to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint cannot merely recite the elements of a cause of action, but must make factual allegations that are sufficient to raise the right to relief above the speculative level. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Stated another way, the complaint must contain sufficient factual support to state a claim for relief that is "plausible on its face." *Wooten v. Quicken Loans, Inc.*, 626 F.3d 1187, 1196 (11th Cir. 2010)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)).

A complaint is "plausible" when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering a motion to dismiss, a court should "(1) eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). A properly pled complaint must contain more than an "unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

AO 72A
(Rev.8/82)

A claim brought under the False Claims Act must also comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires a party to "state[] with particularity" the "circumstances constituting fraud or mistake." *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1308 (11th Cir. 2002). To state a claim under the False Claims Act that complies with Rule 9(b), "the complaint must allege 'facts as to time, place, and substance of the defendant's alleged fraud,' [and] 'the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" *United States ex rel. Shurick v. Boeing Co.*, 300 Fed. App'x 781, 783 (11th Cir. 2009)(citing *Corsello*, 428 F.3d at 1012). A failure to satisfy Rule 9(b) is a ground for dismissal of a complaint. *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).

C. <u>Defendant Wright's Motion to Dismiss</u>

Defendant Wright has filed a Rule 12(b)(6) motion to dismiss the Complaint in its entirety [66], arguing that relators fails to state a claim. Albeit the four counts of the Complaint purport to be directed toward all the defendants, the parties seem to agree that the only claim aimed at defendant Wright is Count I, which alleges a violation of three subsections of the False Claims Act, as codified

at 31 U.S.C. § 3729(a).[1]  Subsection (a)(1) makes liable any person who knowingly presents, or causes to be presented, a false or fraudulent claim to the United States Government for payment or approval.  Subsection (a)(2) makes liable any person who knowingly makes, uses, or causes to be made or used, a false record or statement to get a false claim paid or approved.  Subsection (a)(3) makes liable anyone who conspires to defraud the Government by causing a false or fraudulent claim to be allowed or paid.

As noted above, to adequately state a claim alleging fraud under the False Claims Act, a relator must "state with particularity the circumstances constituting [the] fraud."  *United States ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1302 (11th Cir. 2010). That is, relators must plead "facts as to time, place, and substance of the defendants' alleged fraud, specifically, the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them."  *Sanchez*, 596 F.3d at 1302.  Rule 9(b) requires, at a minimum, "some examples of actual false claims."  *Id.*

---

[1]  Since the filing of this *qui tam* complaint, the False Claims Act has been amended by the Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, 123 Stat. 1617, as well as the Patient Protection and Affordable Care Act of 2010, Pub. L. No. 111-148, 124 Stat. 119.  Neither party argues that any of these amendments should be applied retroactively.  Accordingly, all references in this Order pertain to the pre-amended version of the Act: that is, the iteration enacted in 1994.  *See* Act of July 5, 1994, Pub. L. No. 103-272, 108 Stat. 745, 1362 (1994).

AO 72A
(Rev.8/82)

The Complaint describes, in great detail, the scheme to defraud the Government by inducing the guarantee of loans based on false information. It also asserts numerous specific facts from which one could conclude that defendants Hicks and Moseley were complicit in this wrongdoing. As to defendant Wright, however, the Complaint mentions him only in connection with a single, vaguely-described fraudulent act: specifically, that "Carl Wright falsified the VOE" for a loan whose TBW and FHA numbers are "unknown." (Compl. [1] at ¶ 80, No. 27.) The acronym "VOE" is short for "verification of employment," which information is included in loan documentation to demonstrate an applicant's existing employment. (Resp. Br. [72] at 13.) Falsifying the details of an applicant's employment can lead the Government to insure a loan it otherwise would reject. (Compl. [1] at ¶¶ 20-22.)

This thin factual allegation fails to describe defendant Wright's wrongdoing with any particularity. It fails to identify when the verification of employment was falsified, where it was falsified, and in what manner it was falsified. Indeed, the particular loan involving the falsified verification of employment is described as "unknown." The deficiency in this allegation of fraud is in striking contrast to the other allegations of fraudulent acts set forth in paragraph 80 of the Complaint, which provide TBW and FHA loan

AO 72A
(Rev.8/82)

numbers, as well as details explaining how the documentation was falsified.

Moreover, the Complaint fails to allege with particularity an essential element of subsection (a)(1): the presentation of a false or fraudulent claim to the Government. *Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1326 (11th Cir. 2009)(relators must allege the "who, what, where, when and how of fraudulent submissions to the government")(internal quotations omitted.) The Complaint fails to state that the particular "unknown" loan associated with Wright's falsified application was ever presented to the Government. Without an allegation of "presentment," the complaint fails to state a claim for a violation of subsection (a)(1). *See Klusmeier v. Bell Constructors, Inc.*, No. 10-15657, 2012 WL 555736, at *3 (11th Cir. 2012)(dismissing False Claims Act claim where relators failed to allege that breach of government contracts actually resulted in the submission of false claims).

As to subsection (a)(2), "a plaintiff must prove that the defendant made false statements to get a false claim paid or approved, not that the defendant caused the submission of the claim itself." *Hopper*, 588 F.3d at 1329. This provision does not require an allegation that defendant Wright was involved in the submission of a false claim to the Government, but it does require an allegation that he made a false statement for the purpose of having the former

9

approve such a claim. Thus, a sufficiently-pled complaint must describe with particularity how the defendant's false statements "ultimately led the government to pay amounts it did not owe." *Id.*

Because the loan associated with defendant Wright is declared "unknown," however, it necessarily fails to allege that this loan was ever presented, or intended to be presented, to the Government. This is more than a technical objection. As the Complaint indicates that only one-third of the loans made by defendants were Government-insured loans, it is conceivable that the unidentified loan for which defendant Wright allegedly made a false statement was not a Government loan, and hence was not a loan that could give rise to a False Claims Act claim.

Finally, to state a valid claim for conspiring to violate the False Claims Act under subsection (a)(3), the plaintiff must establish "(1) that the defendant conspired with one or more persons to get a false or fraudulent claim paid by the United States; (2) that one or more of the conspirators performed any act to effect the object of the conspiracy; and (3) that the United States suffered damages as a result of the false or fraudulent claim." *Corsello*, 428 F.3d at 1014. Wright's only alleged relationship to the defendants is as a "closing attorney associated with HAM." (Compl. [1] at ¶ 12.) This vague reference is insufficient to make it plausible that Wright worked in concert with the other defendants to defraud the

10

Government. *See Corsello*, 428 F.3d at 1014 (dismissing conspiracy claim for failure to comply with Rule 9(b), where there were no specific allegations of any agreement or overt act).

Relators contend that Wright does not need more specific notice as he pled guilty to conspiracy to commit fraud. (Resp. Br. [72] at 13.) On a motion to dismiss, however, a court does not consider matters beyond the complaint. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 371 (11th Cir. 1997)(considering matters beyond the pleadings on a motion to dismiss converts the latter into a motion for summary judgment). The Complaint here does not allege that defendant Wright pled guilty to falsification of loan documentation involving TBW or HAM, and, even if it did, he is still entitled to proper notice of the civil claims made against him, as required by the Federal Rules of Civil Procedure.

For all the above reasons, defendant Wright's motion to dismiss is meritorious. Relators, however, have requested an opportunity to amend their complaint in the event it is found deficient. As more particularized detail about defendant Wright's alleged fraud could state a claim, the Court will permit relators to do so. Therefore, defendant Wright's Motion to Dismiss is **DENIED without prejudice** and relators shall file an amended complaint by **April 23, 2012**.

AO 72A
(Rev.8/82)

D.    <u>Defendants Hicks and Moseley's Motions to Dismiss Retaliation Claims</u>

Implicitly acknowledging the sufficiency of the allegations set out in Count I, the False Claims Act fraud claim, defendants Hicks and Moseley move to dismiss only Counts II, III, and IV.[2] As noted, Count II alleges that defendants retaliated against relator Kennedy in violation of 31 U.S.C. § 3730(h). Count III makes a similar allegation of retaliation as to relator Friddle. Count IV alleges that defendants breached an employment contract with Kennedy, in violation of Georgia common law.

Both defendants Hicks and Moseley contend that the retaliation claims against them should be dismissed as the statute applies only to an employer who retaliates, and neither defendant was an employer of either relator. The Court agrees.

The version of 31 U.S.C. § 3730(h)[3] in effect for purposes of this case only prohibits retaliation by an employer. The statute does not provide for individual liability against a supervisor or a manager who has retaliated against a False Claims Act whistleblower,

---

[2] Defendants Hicks and Moseley's Motions to Dismiss [67] & [68] are virtually identical.

[3] An amendment to § 3730(h) in 2009 eliminated the reference to an "employer." *See* Fraud Enforcement and Recovery Act, Pub. L. No. 111-21, 123 Stat. 1617, 1624-25 (2009). The relators have not contended that this amendment should be applied retroactively. Accordingly, all references to § 3730(h) refer to the iteration in effect prior to the 2009 amendment.

12

unless the former can be considered to be an employer. Section 3730(h) creates a cause of action for:

> [a]ny employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment <u>by his or her employer</u> because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section.

31 U.S.C. § 3730(h)(emphasis added).

Courts that have interpreted this language have almost unanimously declined to find that 3730(h) creates liability as to individual defendants who are merely supervisors or managers. *See United States ex rel. Golden v. Ark. Game & Fish Comm'n*, 333 F.3d 867, 870-71 (8th Cir. 2003); *United States ex rel. Yesudian v. Howard Univ.*, 270 F.3d 969, 972 (D.C. Cir. 2001); *Pollak v. Bd. of Trs. of the Univ. of Ill.*, No. 99 C 710, 2004 WL 1470028, at *3 (N.D. Ill. June 30, 2004)("Although the Seventh Circuit has never addressed this issue, our sister courts have uniformly held that supervisors, such as the Individual Defendants, do not qualify as "employers" subject to liability under the FCA."); *United States ex rel. Lockyer v. Hawaii Pac. Health*, 490 F. Supp. 2d 1062, 1085 (D. Haw. 2007)("Although the Ninth Circuit has not addressed the issue of whether an individual supervisor is an "employer" under the FCA, the vast majority of courts that have addressed the issue have answered

13

in the negative."). *Accord United States ex rel. Parato v. Unadilla Health Care Ctr., Inc.*, 787 F. Supp. 2d 1329, 1341 (M.D. Ga. 2011); *United States ex rel. Sarafoglou v. Weill Med. Coll. of Cornell Univ.*, 451 F. Supp. 2d 613, 625 (S.D.N.Y. 2006); *Orell v. Umass Mem'l Med. Ctr., Inc.*, 203 F. Supp. 2d 52, 66 (D. Mass. 2002); *United States ex rel. Palladino v. VNA of S. N.J., Inc.*, 68 F. Supp. 2d 455, 464 (D.N.J. 1999); *Miller v. Bunce*, 60 F. Supp. 2d 620, 624 (S.D. Tex. 1999); *United States ex rel. Lamar v. Burke*, 894 F. Supp. 1345, 1348 (E.D. Mo. 1995).

Many courts have reached this conclusion by analogy to Title VII. *See Yesudian*, 270 F.3d at 972 (analogizing to Title VII caselaw, in which all other circuits have held that the word "employer" does not cover a supervisor in his personal capacity); *Lamar*, 894 F. Supp. 2d at 1347-48; *Parato*, 787 F. Supp. 2d at 1341; *Lockyer*, 490 F. Supp. 2d at 1086). Like other circuits, the Eleventh Circuit does not consider a supervisor in his personal capacity to be an "employer" under Title VII. *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991)(finding that an employee-supervisor cannot be sued in his or her individual capacity under Title VII). *Cf. Mack v. Augusta-Richmond Cnty.*, 148 Fed. App'x 894, 897 (11th Cir. 2005)(explaining that even if plaintiff could show that defendant city administrator acted in retaliatory manner, he could not be

14

liable because he lacked ultimate terminating power which rested with plaintiff's employer, the commission).

Relators have offered no persuasive reason why this Court should not likewise define the term "employer" as these other courts have done. They have asked the Court to expand the term to include a *de facto* employer, as did a 1998 decision from the District of New Jersey: *Mruz v. Caring, Inc.*, 991 F. Supp. 701 (D.N.J. 1998) (Orlofsky, J.). In that case, the district court refused to dismiss a whistleblower retaliation claim, where there was a "factual question whether [the individual defendant] was Plaintiffs' *de facto* employer as she is alleged to have dominated and dictated the actions of the [defendant] Corporations and their boards, and to have been conducting the affairs of the [defendant] Corporations in a way which benefitted her, *inter alia*, personally." *Id*. at 710.

Given the weight of authority to the contrary, this Court declines to follow what appears to be a novel interpretation by the *Mruz* court. If Congress had intended to provide a remedy against managers who effectively control the operation of an employer, they could have readily done so. *See Orell v. Umass Mem'l Med. Ctr., Inc.*, 203 F. Supp. 2d 52, 66 (D. Mass. 2002). Because Congress did not so provide, the Court declines to create a "*de facto* employer" status under § 3730(h).

15

Finally, relators argue that defendants Hicks and Moseley can be considered to be employers under an "alter ego" or "corporate veil piercing" theory. Relators do not point to any binding or persuasive authority that these common law doctrines can give rise to liability when the relevant statute does not do so.[4]

For the above reasons, defendants Hicks and Moseley's Motions to Dismiss Counts II and III are **GRANTED**. Because relators' theory of liability against defendants Hicks and Moseley is not available as a matter of law, any amendment would be futile and Counts II and III shall be **DISMISSED with prejudice**. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001)("A district court need not, however, allow an amendment...where amendment would be futile.").

E. <u>Breach of Contract Claim</u>

In Count IV, relator Kennedy alleges that defendants breached a contract to provide certain employment benefits. In her response to the defendants' motions to dismiss, however, she focuses only on defendant Hicks' conduct and offers no basis for imputing liability on this claim to defendant Moseley. Accordingly, the Court infers

---

[4] Typically, the import of piercing the corporate veil, and thereby deeming an individual to be the alter ego of a corporation, is that the individual is required to cover any damages assessed against the corporation. Accordingly, if the defendants were the alter ego of the corporations, this would mean that they would be jointly liable as to any damages against that entity. At this juncture, however, relators have pled no allegations to suggest that either defendant is an alter ego.

AO 72A
(Rev.8/82)

that relator Kennedy is pursuing her breach of contract claim against defendant Hicks, only. For this reason, defendant Moseley's motion to dismiss as to this claim is **GRANTED**.[5]

Focusing then only on defendant Hicks, the elements of a breach of contract action are (1) a valid contract, (2) breach of that contract, and (3) damage caused by the breach. *Budget Rent-A-Car of Atlanta, Inc. v. Webb*, 220 Ga. App. 278, 279 (1996). Under Georgia law, an employee cannot sue to enforce future performance of an at-will employment contract and cannot seek damages for breach of that contract. Nevertheless, even with only an oral contract, an at-will employee may sue for any compensation that is due her based on services actually performed up to the time of discharge. *Livernois v. Med. Disposables, Inc.*, 837 F.2d 1018, 1023 (11th Cir. 1988)(citations omitted).

Defendant Hicks allegedly promised Kennedy a promotion, an increase in her compensation, an award of sales options, and bonuses to prevent her from leaving HAM for SunTrust. (Compl. [1] at ¶¶ 141-42.) He allegedly breached the employment contract because relator Kennedy was never paid bonuses (despite being acknowledged as due her) and never awarded sales options. (*Id.* at ¶¶ 44-45.)

_____

[5] If the Court's assumption regarding Moseley is in error, relator will need to do a better job in an amended complaint setting out the grounds for liability of Moseley on this claim.

17

Defendant Hicks argues that he was not relator Kennedy's employer and therefore cannot be charged with breaching any contract tied to additional compensation and bonuses. (Reply Br. [73] at 5.) Relator Kennedy contends that her relationship to HAM or TBW is irrelevant, because Hicks "personally made an agreement with Kennedy to pay her various bonuses if she stayed." (Resp. Br. [72] at 12.)

On a motion to dismiss, the Court is required to construe all facts in the light most favorable to the plaintiff. Here, the complaint alleges that Hicks made certain promises to relator Kennedy, which were not fulfilled. While it may later prove to be true that defendant Hicks lacked the authority to make such promises, and that he was merely an agent of HAM or TBW with respect to employment benefits, taking the facts in the light most favorable to relator Kennedy, she has adequately pled a breach of contract claim. Thus, defendant Hicks' Motion to Dismiss as to Count IV is **DENIED**.

## II.  **DEFENDANTS' CONCURRENT REPRESENTATION**

Relators move this Court to disqualify attorney Wilmer "Buddy" Parker from his concurrent representation of defendants Wright, Hicks, and Moseley, arguing that Mr. Parker labors under an unwaivable conflict of interest that is prohibited by ethical rules governing the conduct of Georgia lawyers. Attorneys practicing before the Northern District of Georgia are bound by the Rules and Regulations of the State Bar of Georgia, together with judicial

18

decisions interpreting these rules and standards. *Herrmann v.*
*Gutterguard, Inc.*, 199 Fed. App'x 745, 752 (11th Cir. 2006)(per
curiam); LR 83.1(C), NDGa.

Under Rule 1.7 of the Georgia Rules of Professional Conduct, a
lawyer is prohibited from representing a client if there is a
"significant risk that the lawyer's own interests or the lawyer's
duties to another client...will materially and adversely affect the
representation of the client." GA. RULES PROF'L CONDUCT, R. 1.7(a).
Nevertheless, a conflict arising out of the simultaneous
representation of civil co-defendants by one attorney can potentially
be waived, particularly when the represented clients have similar
interests, the risk of adverse effect is minimal, and the clients
have given informed consent to the representation. *Id.* at R. 1.7(b),
Comment [7]; *Keohane v. Kenne*, No. 1:06-CV-0034-RWS, 2006 WL 1275056
(N.D. Ga. May 8, 2006)(Story, J.)(describing simultaneous
representation of defendants in a civil action as a "waivable"
conflict).

As an initial matter, the relators must demonstrate that they
have standing to seek Mr. Parker's disqualification. *See Bernocchi
v. Forcucci*, 279 Ga. 460 (2005)(remanding disqualification issue to
trial court for initial determination of whether opposing counsel had
standing to raise conflict); *Herrmann*, 199 Fed. App'x at 752 (the
party moving to disqualify bears the burden of proving the grounds

19

for disqualification.). Ordinarily, it is up to the lawyer undertaking the representation to determine whether a conflict exists. GA. RULES OF PROF'L CONDUCT, R. 1.7, Comment [15]. An opposing party may nonetheless assert a conflict of interest, "where the conflict is such as clearly to call into question the fair or efficient administration of justice." *Id.* This requirement acts as a check on the filing of disruptive disqualification motions. Therefore, an objection to an opposing party's representation "should be viewed with caution...for it can be misused as a technique of harassment." *Id*.

Indeed, as a general matter, motions to disqualify opposing counsel are disfavored. *Keohane*, 2006 WL 1275056, at *1. This disinclination to disqualify an attorney arises out of an awareness that motions to disqualify are often tactically motivated, will deprive a litigant of his choice of counsel, can cause needless delay, and are otherwise disruptive to the litigation process. *Id. Accord Adkins v. Hosp. Auth. of Houston Cnty.*, No. 5:04-CV-80 (CAR), 2009 WL 3428788, at *6 (M.D. Ga. Oct. 20, 2009). *See Herrmann*, 199 Fed. App'x at 752 ("Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if 'compelling reasons' exist."). In short, a disqualification order is a "harsh sanction" and should therefore "be resorted to sparingly." *Id*.

20

The Court has substantial doubts that the alleged conflict here is "such as clearly to call into question the fair or efficient administration of justice." Mr. Parker benefits from the presumption that members of the State Bar have complied with the relevant ethical directory and disciplinary rules in the absence of contrary evidence. *Gene Thompson Lumber Co., Inc. v. Davis Parmer Lumber Co., Inc.*, 189 Ga. App. 573, 574-75 (1988). Moreover, Mr. Parker indicates that he has discerned no conflict in the various defendants' positions.

Thus, relators' suggestion of a mere *possibility* of a conflict, despite counsel's averment that co-defendants' interests are not adverse, weighs against an inference of standing by the relators to raise the issue of joint representation. *Cf. In re Odum*, Bankr. No. 07-72241, Adversary No. 07-9048, 2008 WL 7874259, at *2 (N.D. Ga. Bankr. May 28, 2008)(opposing party lacked standing to assert conflict of interest because they did not identify how ethical rule was violated, and only offered speculation about *potential* future conflicts); *Doe v. Lee*, 178 F. Supp. 2d 1239, 1243-44 (M.D. Ala. 2001)(plaintiff lacked constitutional standing to seek disqualification of defendant's attorney because she could not demonstrate a cognizable or redressable injury in alleged conflict). *See also Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 145 (4th Cir. 1992)("disqualification of a litigant's chosen counsel for violation of an ethical canon...may not be rested on mere speculation that a

21

chain of events whose occurrence theoretically could lead counsel to act counter to his client's interests might in fact occur.")

Assuming, for the moment, standing on relators' part, it is true that representation of these three co-defendants creates some risk of a divergence of interests that could limit counsel's ability to adequately represent each client. For example, given the potential for finger-pointing by the defendants, simultaneous representation could preclude a defendant from reaching a settlement agreement with the relator that would absolve the defendant from liability in return for cooperation with the relator. *See* GA. RULES OF PROF'L CONDUCT, R. 1.7, Comment [7] ("An impermissible conflict may exist by reason of...the fact that there are substantially different possibilities of settlement of the claims or liabilities in question.")  That this dynamic may harm the relators' ability to prove their case through a "divide and conquer" strategy is not a proper consideration in determining the propriety of the joint representation, but is relevant to the extent that a particular defendant's position might be undermined.[6]

---

[6] Defense counsel appears to acknowledge the potential for some conflict between the defendants in negotiating a settlement, because he offers up the possibility of having defendant Moseley consult with independent counsel on the limited matter of settlement.  (Resp. Br. [83] at 13, 15.)  Defense counsel does not spell out the timing of this consultation.  Further, the Court is unclear whether there is other counsel waiting in the wings for this limited representation.

22

Nevertheless, such conflicts may be waived by the client unless the circumstances render it "reasonably unlikely that the lawyer will be able to provide adequate representation to one or more of the affected clients." GA. RULES OF PROF'L CONDUCT, R. 1.7(c)(3).[7] Relators have offered no persuasive argument that the above circumstances exist in this case. The Court therefore concludes that any potential conflict is waivable here. To do so, the defendants/clients must provide informed consent, as set out in Rule 1.7(b). Rule 1.7(b) requires that each client "consent, confirmed in writing, to the representation after: (1) consultation with the lawyer,...(2) having received in writing reasonable and adequate information about the material risks of...the representation, and (3) having been given the opportunity to consult with independent counsel."

Because relators' standing to raise the conflict issue is in doubt, disqualification is disfavored, and defendants have a strong interest in counsel of their choice, the Court **DENIES** Relators' Motion regarding Concurrent Representation [81]. Instead, the Court takes a middle-ground position and directs defense counsel to obtain the written consent of his clients for his continued joint

---

[7] Client consent is also not permissible under Rule 1.7(c) if the representation: "(1) is prohibited by law or these [professional] rules" or "(2) includes the assertion of a claim by one client against another client represented by the lawyer in the same or substantially related proceeding[.]"

23

representation. *See Lee v. Hutson*, 600 F. Supp. 957, 959 (N.D. Ga. 1984)(Forrester, J.)(directing defense counsel to obtain informed consent before continuing representation of multiple defendants). Mr. Parker shall comply with Rule 1.7 by explaining to each of the defendants the implications of the common representation, as well as the advantages and risks involved. The defendants should be advised that consultation with independent counsel might be advisable. If the defendants continue to consent to joint representation, then their consent shall be obtained in writing and filed with the court. If the clients express a desire for separate counsel, the Court will permit a reasonable period of time for them to obtain new representation. Defendants shall file a notice that complies with the above by **April 30, 2012.**

## CONCLUSION

For the above reasons, defendant Wright's Motion to Dismiss [66] is **DENIED without prejudice** to permit relators an opportunity to amend their complaint, defendant Hicks' Motion to Dismiss [67] is **GRANTED in part** and **DENIED in part**, and defendant Moseley's Motion to Dismiss [68] is **GRANTED.** Relators' Motion regarding Concurrent Representation [81] is **DENIED.**

24

Further, as relators may be filing an amended complaint and as discovery has not yet concluded, relators' Motion for Summary Judgment [101] should be **DENIED without prejudice.**

Relators shall file an amended complaint by **April 23, 2012.** Defense counsel shall confer with defendants regarding joint representation, as explained above, and shall file a notice indicating the defendants' decisions--as well as written consent, if consent is given--by **April 30, 2012.**

SO ORDERED, this 27th day of March, 2012.

/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)