# U.S. ex rel. Friddle, et al v. Taylor, Bean & Whitaker Mortgage Corp. et al

## Case No. 1:06-cv-03023-JEC

## Index of Exhibits

| Exhibit | Description |
|---------|-------------|
| A | Disk of HUD files (FILED UNDER SEAL) |
| B | U.S. Proof of Claim in Home America Bankruptcy, Case No. 3:09-bk-10023-JAF |
| C | U.S. Proof of Claim in Taylor Bean Bankruptcy, Case No. 3:09-bk-07047-JAF |
| D | Declaration of Allison Olson |
| E | October 4, 2013 Declaration of Stephanie Kennedy |
| F | October 4, 2013 Declaration of Comfort Friddle |
| G | Hicks Responses to Third Requests for Admission |
| H | Hicks Responses to Second Interrogatories |
| I | Declaration of Joel Foreman |
| J | Deposition Transcript of Dennis Moseley |
| K | HUD Handbook 4155.1 Rev-5 |
| L | HUD/VA Addendum to Uniform Residential Loan Applications (HUD006635-HUD006638) |
| M | Home America 2005-2007 Balance Sheets |
| N | Home America Audit Certifications |
| O | March 6, 2007 Letter from Greg Hicks |
| P | Hicks 2005 Personal Tax Return |
| Q | Home America 2008 Balance Sheet |
| R | Home America Property Listings |
| S | 2006 W-2 of Desirae Hicks |
| T | Greg Hicks' Answer to Second Amended Complaint, 3:11-ap-00674-JAF (M.D. Fla. Bank.) (Second Amended Complaint included for context) |
| U | Form HUD 54118-MCR |
| V | Mortgage Finance Fraud Warning Signals (HUD005589) |
| W | FHA TOTAL Mortgage Scorecard User Guide |
| X | Deposition Transcript of James Gregory Hicks |

# EXHIBIT A

Disk of HUD Files

Subject to Protective Order Pursuant to Order Dkt #104

FILED UNDER SEAL

# EXHIBIT B

B 10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT     Middle District of Florida | | PROOF OF CLAIM |
|---|---|---|
| Name of Debtor:<br>Home America Mortgage, Inc. | | Case Number:<br>3:09-bk-10023 |

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>The United States of America | ☐ Check this box to indicate that this claim amends a previously filed claim.<br>CLERK, U.S. BANKRUPTCY COURT |
| Name and address where notices should be sent:<br>The U.S. Department of Justice on behalf of the U.S. Department of Housing and Urban Development; Glenn D. Gillett, U.S. Department of Justice, Civil Division; 1100 L St., N.W., Room 10018; Washington, DC 20005 | Court Claim Number: JAN 1 2010<br>*(If known)*<br><br>MIDDLE DISTRICT OF FLORIDA<br>Filed on: JACKSONVILLE DIVISION |
| Telephone number:<br>(202) 514-7162 | |
| Name and address where payment should be sent (if different from above): | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
| Telephone number: | ☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| 1. Amount of Claim as of Date Case Filed:          $          131,081,676.72<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.<br><br>Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| 2. Basis for Claim:    See attached.<br>(See instruction #2 on reverse side.) | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's |
| 3.  Last four digits of any number by which creditor identifies debtor: _____<br><br>3a.  Debtor may have scheduled account as: _____<br>(See instruction #3a on reverse side.) | business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| 4. Secured Claim (See instruction #4 on reverse side.)<br>· Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>Nature of property or right of setoff:  ☐ Real Estate    ☐ Motor Vehicle    ☐ Other<br>Describe:<br><br>Value of Property: $_____ Annual Interest Rate _____%<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br><br>if any: $_____    Basis for perfection: _____<br><br>Amount of Secured Claim: $_____    Amount Unsecured: $_____ | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). |
| 6.  Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___). |
| 7.  Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | Amount entitled to priority:<br><br>$_____<br><br>*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |
| Date: 5/20/10    Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. *Glenn D. Gillett, by RAS-auth permission*<br><br>Glenn D. Gillett, Trial Attorney, Commercial Litigation, Civil Division, U.S. Department of Justice | FOR COURT USE ONLY |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 and 3571.

B 10 (Official Form 10) (12/08) -- Cont.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the trustee or another party in interest files an objection to your claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

### DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity owed a debt by the debtor that arose on or before the date of the bankruptcy filing. See 11 U.S.C. §101 (10)

**Claim**
A claim is the creditor's right to receive payment on a debt owed by the debtor that arose on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

### INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

FILED UNDER SEAL

**Attachment to Proof of Claim of United States of America**
**In In re Home America Mortgage, Inc., Case no. 3:09-bk-10023 (Bankr. M.D. Fla.)**

Name and Address of Creditor:

    United States of America
    United States Department of Justice on behalf of the U.S. Department of Housing and
    Urban Development

    GLENN D. GILLETT
    Civil Division
    U.S. Department of Justice
    1100 L St., NW, Room 10018
    Washington, D.C. 20005

    Attorney for the United States
    Telephone Number: (202) 514-7162

ITEM 2 - Basis for Claim:

    Debtor is liable for civil, monetary and administrative claims under the False Claims Act,
31 U.S.C. §§ 3729-3733, for causing to be presented false or fraudulent claims; making, using or
causing to be made false statements to get a false or fraudulent claim paid; and/or conspiring to
defraud the government by getting false or fraudulent claims allowed or paid; or otherwise
violating the False Claims Act ("FCA"), the Program Fraud Civil Remedies Act, 31 U.S.C. §§
3801-3812, and/or is liable under common law doctrines of payment by mistake, unjust
enrichment, and/or fraud.

    Debtor is a mortgage lender approved by the Federal Housing Administration ("FHA") to
originate mortgage loans for insurance by FHA. Upon information and belief, Debtor originated
at least 415 mortgage loans that violated FHA rules, regulations or guidance in one or more of
the three following ways. First, Debtor and/or its employees originated loans in which they
knew or acted in reckless disregard of the fact that the loan was supported by false, fictitious or
fraudulent documents, including, but not limited to, employment and income documents such as
paystubs and W-2 forms, Verifications of Employment, bank statements, gift letters, social
security cards and other documentation of borrowers' social security numbers, documents
representing that borrowers were the beneficiaries of agreements to partially prepay interest
payments, and HUD-1 settlement statements containing false information and false certifications.
Upon information and belief, these documents were submitted in order to induce the FHA to
endorse the mortgages for insurance. Second, Debtor agreed to use the services of an entity to
provide gift funds to borrowers in exchange for the payment of a $100 kickback per loan, which
caused the underwriting lender to falsely certify that the loans were eligible for insurance. Third,
Debtor originated loans in which it knew or had reason to know that entities who represented that
they were providing charitable gifts to borrowers did not provide the purported gifts. Upon
information and belief, Debtor's employees knew or acted in reckless disregard of the fact that

1

**FILED UNDER SEAL**

the alleged gifts were false and that the purported gifts were documented with fraudulent or false records or statements.

On each of these 415 loans, FHA endorsed the mortgage, the borrower(s) defaulted, the mortgage holder made claim(s) for insurance benefits to FHA, and FHA paid insurance benefits on the loans. FHA would not have endorsed the mortgages for insurance had it known of the fraudulence or falsity of the claims and/or the false information submitted to FHA that supported or otherwise was used go get the claims for mortgage insurance paid. A spreadsheet is appended hereto identifying the claims at issue and the mortgage loans that support those claims by their FHA number.

The United States is entitled to treble damages under the FCA and a civil penalty of $5,500 to $11,000 for each false or fraudulent claim. The appended spreadsheet calculates each component of the claims for insurance benefits and subsequent damages, trebles the damages, subtracts any amounts in mitigation received by FHA as of May 1, 2010, and adds a $11,000 penalty per false or fraudulent claim to arrive at a judgment amount of not less than $131,081,676.72 to which the United States is entitled.

*In re Home America Mortgage, Case no. 3:09-bk-10023-JAF (Bankr. M.D. Fla.)*
**Filed Under Seal**

| FHA no. | gross claim | 3xgross claim-sales price-indemnification | 3x gross claim-mitigation+penalty |
|---|---|---|---|
| 105-1823986 | $167,697.74 | $376,093.22 | $387,093.22 |
| 105-1114601 | $125,787.26 | $273,454.94 | $284,454.94 |
| 105-2241770 | $76,028.00 | $168,084.00 | $179,084.00 |
| 105-0507780 | $45,819.97 | $112,459.91 | $123,459.91 |
| 105-0682697 | $167,217.62 | $351,652.86 | $362,652.86 |
| 105-1420680 | $96,607.33 | $234,821.99 | $245,821.99 |
| 105-2403196 | $216,763.69 | $509,741.07 | $520,741.07 |
| 105-1257196 | $96,602.09 | $237,206.27 | $248,206.27 |
| 105-1754606 | $74,740.88 | $174,222.64 | $185,222.64 |
| 105-1685421 | $127,403.47 | $268,010.41 | $279,010.41 |
| 105-1581009 | $112,038.83 | $336,116.49 | $347,116.49 |
| 105-2459694 | $188,259.48 | $441,778.44 | $452,778.44 |
| 105-0338888 | $109,537.05 | $259,279.15 | $270,279.15 |
| 105-0384824 | $121,058.32 | $259,174.96 | $270,174.96 |
| 105-1984152 | $110,579.21 | $252,937.63 | $263,937.63 |
| 011-5166780 | $87,227.16 | $227,481.48 | $238,481.48 |
| 011-5166847 | $109,186.81 | $285,560.43 | $296,560.43 |
| 011-5203095 | $68,681.08 | $174,593.24 | $185,593.24 |
| 011-5263115 | $72,851.09 | $193,553.27 | $204,553.27 |
| 011-5271513 | $108,440.82 | $270,322.46 | $281,322.46 |
| 011-5287898 | $123,606.81 | $295,820.43 | $306,820.43 |
| 011-5287933 | $110,882.32 | $286,646.96 | $297,646.96 |
| 011-5433937 | $97,166.32 | $239,948.96 | $250,948.96 |
| 105-0903826 | $139,991.92 | $324,975.76 | $335,975.76 |
| 105-2202987 | $93,494.08 | $280,482.24 | $291,482.24 |
| 105-1036548 | $104,263.39 | $220,790.17 | $231,790.17 |
| 105-1321344 | $114,763.23 | $267,788.69 | $278,788.69 |
| 105-2172101 | $171,819.10 | $388,957.30 | $399,957.30 |
| 105-1696736 | $159,950.65 | $354,351.95 | $365,351.95 |
| 105-1843808 | $173,516.47 | $437,741.41 | $448,741.41 |
| 105-0497920 | $143,739.51 | $320,918.53 | $331,918.53 |
| 105-0683476 | $175,520.28 | $403,459.84 | $414,459.84 |
| 105-0792173 | $91,118.13 | $248,854.39 | $259,854.39 |
| 105-1354893 | $127,439.27 | $315,317.81 | $326,317.81 |
| 105-0099219 | $140,292.39 | $326,677.17 | $337,677.17 |
| 105-0564418 | $109,138.45 | $262,814.35 | $273,814.35 |
| 105-0653786 | $140,099.94 | $337,599.82 | $348,599.82 |
| 105-0715612 | $115,145.74 | $255,437.22 | $266,437.22 |
| 105-1028435 | $115,800.11 | $276,949.33 | $287,949.33 |
| 105-1032808 | $163,858.72 | $365,576.16 | $376,576.16 |
| 105-1126356 | $112,494.65 | $292,383.95 | $303,383.95 |
| 105-1218706 | $107,259.84 | $236,779.52 | $247,779.52 |
| 105-1610186 | $117,272.16 | $278,816.48 | $289,816.48 |

*In re Home America Mortgage, Case no. 3:09-bk-10023-JAF (Bankr. M.D. Fla.)*
**Filed Under Seal**

| | | | |
|---|---|---|---|
| 105-1675686 | $130,249.50 | $299,748.50 | $310,748.50 |
| 105-2217503 | $133,092.69 | $343,148.07 | $354,148.07 |
| 105-1064318 | $150,703.89 | $384,111.67 | $395,111.67 |
| 105-0661940 | $53,351.57 | $145,554.71 | $156,554.71 |
| 105-1006729 | $85,777.34 | $231,332.02 | $242,332.02 |
| 105-0190971 | $141,616.08 | $317,535.24 | $328,535.24 |
| 105-0632019 | $127,499.74 | $327,499.22 | $338,499.22 |
| 105-1552973 | $126,887.54 | $293,949.62 | $304,949.62 |
| 105-2243686 | $127,092.28 | $339,675.84 | $350,675.84 |
| 105-2334213 | $74,406.70 | $223,220.10 | $234,220.10 |
| 105-0622135 | $5,070.07 | $15,210.21 | $26,210.21 |
| 105-0662728 | $161,426.56 | $368,279.68 | $379,279.68 |
| 105-2076306 | $138,791.11 | $299,873.33 | $310,873.33 |
| 105-0197730 | $121,952.64 | $275,857.92 | $286,857.92 |
| 105-0903849 | $178,740.49 | $414,706.47 | $425,706.47 |
| 105-2288335 | $190,695.49 | $476,486.47 | $487,486.47 |
| 105-1569197 | $155,027.13 | $331,081.39 | $342,081.39 |
| 105-1592126 | $89,048.83 | $188,834.93 | $199,834.93 |
| 105-1588410 | $14,347.77 | $43,043.31 | $54,043.31 |
| 105-2159003 | $153,278.61 | $374,335.83 | $385,335.83 |
| 105-0553228 | $173,304.56 | $369,513.68 | $380,513.68 |
| 105-0506148 | $187,540.85 | $435,008.55 | $446,008.55 |
| 105-0794428 | $170,061.72 | $368,276.16 | $379,276.16 |
| 105-0859196 | $168,050.37 | $371,551.11 | $382,551.11 |
| 105-0917752 | $171,799.39 | $389,185.17 | $400,185.17 |
| 105-0919776 | $138,548.62 | $353,895.86 | $364,895.86 |
| 105-0963813 | $137,343.08 | $307,216.11 | $318,216.11 |
| 105-0984104 | $213,008.33 | $489,024.99 | $500,024.99 |
| 105-1004894 | $136,515.61 | $349,546.83 | $360,546.83 |
| 105-1026927 | $182,435.83 | $406,309.49 | $417,309.49 |
| 105-1035719 | $165,060.40 | $355,681.20 | $366,681.20 |
| 105-1062034 | $171,442.21 | $388,226.63 | $399,226.63 |
| 105-1148578 | $158,476.64 | $360,429.92 | $371,429.92 |
| 105-1161000 | $141,523.64 | $311,870.92 | $322,870.92 |
| 105-1208035 | $170,814.96 | $365,444.88 | $376,444.88 |
| 105-1231731 | $179,653.16 | $401,182.48 | $412,182.48 |
| 105-1310154 | $97,556.28 | $275,567.84 | $286,567.84 |
| 105-1330789 | $212,915.92 | $486,634.76 | $497,634.76 |
| 105-1387284 | $14,642.56 | | $11,000.00 |
| 105-1395399 | $183,278.69 | $396,936.07 | $407,936.07 |
| 105-1567824 | $145,971.66 | $301,914.98 | $312,914.98 |
| 105-1640086 | $138,585.62 | $295,756.86 | $306,756.86 |
| 105-1640918 | $154,923.94 | $350,471.82 | $361,471.82 |
| 105-1674225 | $191,288.35 | $473,865.05 | $484,865.05 |
| 105-1697760 | $159,554.28 | $349,662.84 | $360,662.84 |
| 105-1704429 | $170,180.87 | $340,361.74 | $351,361.74 |
| 105-1709399 | $225,105.32 | $504,815.96 | $515,815.96 |

*In re Home America Mortgage, Case no. 3:09-bk-10023-JAF (Bankr. M.D. Fla.)*
**Filed Under Seal**

| | | | |
|---|---|---|---|
| 105-1754136 | $158,251.70 | $343,255.10 | $354,255.10 |
| 105-1793067 | $191,892.21 | $438,076.63 | $449,076.63 |
| 105-1840847 | $148,313.10 | $349,939.30 | $360,939.30 |
| 105-1861847 | $123,626.27 | $247,252.54 | $258,252.54 |
| 105-1887164 | $166,782.44 | $378,347.32 | $389,347.32 |
| 105-1912853 | $152,090.05 | $392,270.15 | $403,270.15 |
| 105-1926137 | $191,403.81 | $409,211.43 | $420,211.43 |
| 105-1962373 | $122,158.47 | $279,975.41 | $290,975.41 |
| 105-2088855 | $179,340.98 | $434,522.94 | $445,522.94 |
| 105-2094476 | $182,516.81 | $454,050.43 | $465,050.43 |
| 105-2099995 | $187,411.37 | $425,434.11 | $436,434.11 |
| 105-2116201 | $151,147.82 | $353,443.46 | $364,443.46 |
| 105-2124345 | $151,697.07 | $345,091.21 | $356,091.21 |
| 103-2181779 | $156,657.05 | $359,971.15 | $370,971.15 |
| 105-2234179 | $194,374.46 | $473,973.38 | $484,973.38 |
| 105-2237327 | $106,156.21 | $261,468.63 | $272,468.63 |
| 105-2282276 | $208,723.51 | $510,170.53 | $521,170.53 |
| 105-2284782 | $185,482.93 | $433,448.79 | $444,448.79 |
| 105-2292288 | $176,000.61 | $403,001.83 | $414,001.83 |
| 105-2309799 | $173,296.41 | $411,889.23 | $422,889.23 |
| 105-2326281 | $158,495.51 | $358,486.53 | $369,486.53 |
| 105-2328723 | $151,193.97 | $350,581.91 | $361,581.91 |
| 105-2102799 | $155,620.33 | $342,860.99 | $353,860.99 |
| 105-0736250 | $172,062.89 | $411,188.67 | $422,188.67 |
| 105-1674537 | $75,850.71 | $196,352.13 | $207,352.13 |
| 105-1799234 | $176,751.40 | $400,254.20 | $411,254.20 |
| 105-1663166 | $207,691.37 | $415,382.74 | $426,382.74 |
| 105-0229372 | $71,861.06 | $189,078.18 | $200,078.18 |
| 105-0297328 | $95,195.35 | $214,086.05 | $225,086.05 |
| 105-0597416 | $77,496.07 | $189,488.21 | $200,488.21 |
| 105-1510728 | $82,646.04 | $205,138.12 | $216,138.12 |
| 105-1810766 | $108,464.43 | $269,318.29 | $280,318.29 |
| 105-1841921 | $240,802.23 | $596,789.69 | $607,789.69 |
| 105-0985008 | $143,014.97 | $324,044.91 | $335,044.91 |
| 011-4913766 | $73,076.72 | $195,230.16 | $206,230.16 |
| 011-4962245 | $107,027.43 | $268,082.29 | $279,082.29 |
| 105-0931993 | $51,979.43 | $135,438.29 | $146,438.29 |
| 105-1667681 | $97,028.80 | $210,086.40 | $221,086.40 |
| 105-1331437 | $196,897.12 | $506,691.36 | $517,691.36 |
| 105-1919556 | $178,516.11 | $377,548.33 | $388,548.33 |
| 105-2020415 | $186,044.93 | $453,134.79 | $464,134.79 |
| 105-1668452 | $167,805.65 | $413,416.95 | $424,416.95 |
| 105-0607523 | $85,054.15 | $255,162.45 | $266,162.45 |
| 105-1932134 | $130,966.51 | $327,499.53 | $338,499.53 |
| 105-0678532 | $124,674.44 | $295,642.32 | $306,642.32 |
| 105-0995136 | $113,302.55 | $258,802.65 | $269,802.65 |
| 105-1639797 | $125,428.65 | $286,285.95 | $297,285.95 |

*In re Home America Mortgage, Case no. 3:09-bk-10023-JAF (Bankr. M.D. Fla.)*
**Filed Under Seal**

| | | | |
|---|---|---|---|
| 105-2291009 | $188,409.79 | $434,098.37 | $445,098.37 |
| 105-2296121 | $168,803.24 | $361,409.72 | $372,409.72 |
| 105-2399561 | $174,720.65 | $418,041.95 | $429,041.95 |
| 105-0998806 | $166,474.86 | $364,424.58 | $375,424.58 |
| 105-1738451 | $101,301.81 | $268,905.43 | $279,905.43 |
| 105-1405030 | $126,473.63 | $321,920.89 | $332,920.89 |
| 105-1696289 | $216,776.09 | $481,217.27 | $492,217.27 |
| 105-1833620 | $93,690.14 | $238,470.42 | $249,470.42 |
| 105-1850447 | $89,613.41 | $220,140.23 | $231,140.23 |
| 105-0720491 | $140,665.06 | $318,995.18 | $329,995.18 |
| 105-1212942 | $169,376.83 | $389,130.49 | $400,130.49 |
| 105-1635159 | $33,917.28 | $101,751.84 | $112,751.84 |
| 105-1787560 | $90,636.14 | $241,992.42 | $252,992.42 |
| 105-1822997 | $147,762.46 | $385,984.38 | $396,984.38 |
| 105-1439280 | $101,911.83 | $255,835.49 | $266,835.49 |
| 105-1788622 | $127,163.52 | $266,490.56 | $277,490.56 |
| 105-1762067 | $118,424.94 | $285,274.82 | $296,274.82 |
| 105-1609966 | $187,538.42 | $457,615.26 | $468,615.26 |
| 105-2302341 | $84,723.64 | $214,170.92 | $225,170.92 |
| 105-2310462 | $86,132.14 | $210,396.42 | $221,396.42 |
| 105-2326196 | $58,700.67 | $155,102.01 | $166,102.01 |
| 105-1879361 | $193,712.36 | $473,137.08 | $484,137.08 |
| 105-1913813 | $118,656.04 | $337,368.12 | $348,368.12 |
| 105-2125074 | $83,907.12 | $200,721.36 | $211,721.36 |
| 105-1710193 | $200,509.29 | $499,827.87 | $510,827.87 |
| 105-0660627 | $123,334.99 | $288,504.97 | $299,504.97 |
| 011-4999709 | $81,567.54 | $212,102.62 | $223,102.62 |
| 011-5030444 | $59,894.49 | $156,845.47 | $167,845.47 |
| 011-5151241 | $74,599.23 | $176,797.69 | $187,797.69 |
| 105-0022652 | $105,610.84 | $283,832.52 | $294,832.52 |
| 105-0123919 | $215,027.64 | $468,082.92 | $479,082.92 |
| 105-0507867 | $196,722.15 | $493,665.45 | $504,665.45 |
| 105-0512115 | $72,271.25 | $189,813.75 | $200,813.75 |
| 105-0523509 | $188,693.45 | $441,080.35 | $452,080.35 |
| 105-0534474 | $161,093.39 | $381,780.17 | $392,780.17 |
| 105-0544203 | $114,787.89 | $276,663.67 | $287,663.67 |
| 105-0647150 | $147,296.10 | $341,888.30 | $352,888.30 |
| 105-0774604 | $144,605.92 | $335,317.76 | $346,317.76 |
| 105-0780299 | $180,702.01 | $401,106.03 | $412,106.03 |
| 105-0783005 | $28,800.03 | $86,400.09 | $97,400.09 |
| 105-0783142 | $136,844.28 | $319,032.84 | $330,032.84 |
| 105-0787013 | $68,893.00 | $181,079.00 | $192,079.00 |
| 105-0789089 | $172,479.39 | $389,661.17 | $400,661.17 |
| 105-0799300 | $179,179.53 | $413,038.59 | $424,038.59 |
| 105-0802389 | $94,600.53 | $249,801.59 | $260,801.59 |
| 105-0803825 | $17,389.74 | $52,169.22 | $63,169.22 |
| 105-0806243 | $186,343.07 | $412,029.21 | $423,029.21 |

*In re Home America Mortgage, Case no. 3:09-bk-10023-JAF (Bankr. M.D. Fla.)*
**Filed Under Seal**

| | | | |
|---|---|---|---|
| 105-0895771 | $151,626.14 | $358,878.42 | $369,878.42 |
| 105-1020142 | $152,728.68 | $409,935.04 | $420,935.04 |
| 105-1025031 | $188,590.97 | $565,772.91 | $576,772.91 |
| 105-1128328 | $165,070.44 | $330,140.88 | $341,140.88 |
| 105-1280545 | $120,979.71 | $275,639.13 | $286,639.13 |
| 105-1305726 | $166,866.87 | $369,600.61 | $380,600.61 |
| 105-1395347 | $195,187.83 | $421,763.49 | $432,763.49 |
| 105-1661839 | $96,632.91 | $249,898.73 | $260,898.73 |
| 105-1806828 | $160,288.50 | $320,577.00 | $331,577.00 |
| 105-1865776 | $143,019.80 | $325,359.40 | $336,359.40 |
| 105-1584460 | $143,939.21 | $349,817.63 | $360,817.63 |
| 105-1687842 | $180,090.21 | $377,755.63 | $388,755.63 |
| 105-1688883 | $134,046.51 | $342,139.53 | $353,139.53 |
| 105-2255355 | $124,447.62 | $303,942.86 | $314,942.86 |
| 105-0680463 | $85,152.04 | $216,456.12 | $227,456.12 |
| 105-1124411 | $80,462.22 | $241,386.66 | $252,386.66 |
| 105-1608623 | $157,853.92 | $364,561.76 | $375,561.76 |
| 105-1620306 | $141,736.59 | $306,209.77 | $317,209.77 |
| 105-1626134 | $88,720.18 | $201,160.54 | $212,160.54 |
| 105-1505497 | $139,917.71 | $326,753.13 | $337,753.13 |
| 105-0626978 | $164,515.05 | $363,545.15 | $374,545.15 |
| 105-0652410 | $164,953.98 | $367,861.94 | $378,861.94 |
| 105-0634452 | $6,984.99 | $20,954.97 | $31,954.97 |
| 105-0652716 | $145,983.92 | $327,951.76 | $338,951.76 |
| 105-0721364 | $19,888.18 | $59,664.54 | $70,664.54 |
| 105-0695813 | $48,248.64 | $125,745.92 | $136,745.92 |
| 105-0713952 | $123,393.16 | $272,379.48 | $283,379.48 |
| 105-1475212 | $116,347.04 | $274,041.12 | $285,041.12 |
| 105-1469013 | $187,720.53 | $413,350.59 | $424,350.59 |
| 105-1486720 | $118,200.45 | $252,379.26 | $263,379.26 |
| 105-1388159 | $18,787.93 | $56,363.79 | $67,363.79 |
| 105-1228574 | $125,256.47 | $276,612.86 | $287,612.86 |
| 105-1704009 | $156,658.23 | $355,874.69 | $366,874.69 |
| 011-5285593 | $94,347.40 | $219,542.20 | $230,542.20 |
| 105-1959316 | $151,545.43 | $361,636.29 | $372,636.29 |
| 011-5303849 | $81,729.47 | $196,588.41 | $207,588.41 |
| 105-2005713 | $116,079.99 | $263,239.97 | $274,239.97 |
| 105-2046878 | $38,227.19 | $114,681.57 | $125,681.57 |
| 011-5342690 | $71,547.42 | $172,642.25 | $183,642.26 |
| 105-2278895 | $79,887.24 | $223,061.72 | $234,061.72 |
| 105-2317897 | $98,875.66 | $268,726.98 | $279,726.98 |
| 011-5390854 | $83,040.05 | $221,120.15 | $232,120.15 |
| 105-2447276 | $84,139.11 | $214,417.33 | $225,417.33 |
| 011-5509685 | $83,750.33 | $219,750.99 | $230,750.99 |
| 011-5512518 | $102,733.67 | $262,201.01 | $273,201.01 |
| 101-9667093 | $113,653.54 | $268,960.62 | $279,960.62 |
| 101-9723137 | $117,888.92 | $260,666.76 | $271,666.76 |

*In re Home Americo Mortgage, Case no. 3:09-bk-10023-JAF (Bankr. M.D. Fla.)*
**Filed Under Seal**

| | | | |
|---|---|---|---|
| 101-9909461 | $138,380.74 | $319,142.22 | $330,142.22 |
| 101-9923897 | $64,108.60 | $168,125.80 | $179,125.80 |
| 105-0551516 | $122,467.31 | $266,414.93 | $277,414.93 |
| 105-0849465 | $136,914.47 | $344,643.41 | $355,643.41 |
| 105-0840928 | $167,418.24 | $360,116.72 | $371,116.72 |
| 105-0897772 | $122,159.68 | $275,279.04 | $286,279.04 |
| 105-1064852 | $124,022.90 | $337,068.70 | $348,068.70 |
| 105-1720149 | $203,782.36 | $441,347.08 | $452,347.08 |
| 105-1716768 | $180,994.51 | $421,983.53 | $432,983.53 |
| 105-1735382 | $108,802.23 | $299,306.69 | $310,306.69 |
| 105-1737876 | $139,893.52 | $311,680.56 | $322,680.56 |
| 105-1745265 | $99,439.87 | $241,319.61 | $252,319.61 |
| 105-1745373 | $18,266.75 | $54,800.25 | $65,800.25 |
| 105-1743967 | $150,624.59 | $366,873.77 | $377,873.77 |
| 105-1905137 | $165,188.02 | $415,564.06 | $426,564.06 |
| 105-1908212 | $198,590.89 | $464,772.67 | $475,772.67 |
| 105-1891084 | $198,838.05 | $472,514.15 | $483,514.15 |
| 105-1901214 | $87,078.74 | $214,936.22 | $225,936.22 |
| 011-5314631 | $107,537.30 | $257,611.90 | $268,611.90 |
| 105-2027199 | $201,590.67 | $494,772.01 | $505,772.01 |
| 105-1917316 | $121,804.06 | $308,412.18 | $319,412.18 |
| 105-1317096 | $148,761.67 | $316,165.40 | $327,165.40 |
| 105-1898462 | $184,808.99 | $429,926.97 | $440,926.97 |
| 105-0826747 | $129,771.35 | $339,324.05 | $350,324.05 |
| 105-2040665 | $108,030.46 | $299,091.38 | $310,091.38 |
| 105-0365621 | $137,719.90 | $303,159.70 | $314,159.70 |
| 105-1844878 | $154,879.24 | $365,637.72 | $376,637.72 |
| 105-2044927 | $186,316.76 | $445,950.28 | $456,950.28 |
| 105-2109377 | $180,994.30 | $412,982.90 | $423,982.90 |
| 105-2116355 | $126,667.04 | $330,000.12 | $341,000.12 |
| 011-5119695 | $108,874.72 | $246,624.16 | $257,624.16 |
| 105-1440735 | $99,959.21 | $239,877.63 | $250,877.63 |
| 105-1845726 | $95,750.54 | $287,251.62 | $298,251.62 |
| 105-2137180 | $100,733.14 | $261,629.42 | $272,629.42 |
| 011-5201456 | $72,100.39 | $192,901.17 | $203,901.17 |
| 011-5283694 | $77,208.41 | $193,825.23 | $204,825.23 |
| 105-0918396 | $97,044.03 | $230,601.09 | $241,601.09 |
| 105-1028668 | $98,398.57 | $243,195.71 | $254,195.71 |
| 105-2380621 | $67,229.52 | $180,188.56 | $191,188.56 |
| 105-1110616 | $136,128.34 | $321,385.02 | $332,385.02 |
| 105-1110878 | $158,131.76 | $365,382.28 | $376,382.28 |
| 105-2147772 | $200,292.82 | $496,873.46 | $507,873.46 |
| 011-5019665 | $87,915.95 | $225,247.85 | $236,247.85 |
| 105-2074777 | $234,451.68 | $565,974.04 | $576,974.04 |
| 105-2111364 | $14,765.09 | $44,295.27 | $55,295.27 |
| 105-2105107 | $111,750.11 | $274,750.33 | $285,750.33 |
| 101-9696293 | $196,321.84 | $497,737.52 | $508,737.52 |

| 105-1129086 | $168,037.39 | $371,112.17 | $382,112.17 |
| 105-0970213 | $87,294.16 | $219,242.24 | $230,242.24 |
| 105-1776437 | $53,624.64 | $132,873.92 | $143,873.92 |
| 105-1829415 | $96,630.16 | $247,690.48 | $258,690.48 |
| 105-1889238 | $109,428.12 | $284,284.36 | $295,284.36 |
| 105-1902636 | $104,568.77 | $270,206.31 | $281,206.31 |
| 105-1913530 | $74,629.91 | $193,689.73 | $204,689.73 |
| 105-1931330 | $106,108.50 | $273,315.50 | $284,315.50 |
| 105-2029699 | $98,321.41 | $255,964.23 | $266,964.23 |
| 105-2341821 | $82,481.52 | $221,324.56 | $232,324.56 |
| 105-2368657 | $100,595.56 | $271,586.68 | $282,586.68 |
| 105-2231108 | $181,146.60 | $479,791.80 | $490,791.80 |
| 105-2059582 | $106,391.09 | $253,173.27 | $264,173.27 |
| 105-0980262 | $169,157.88 | $375,893.54 | $386,893.54 |
| 105-1282273 | $129,590.17 | $290,570.51 | $301,570.51 |
| 105-1566829 | $46,190.73 | $138,572.19 | $149,572.19 |
| 105-1710345 | $49,755.73 | $149,267.19 | $160,267.19 |
| 105-1519286 | $177,920.62 | $438,761.86 | $449,761.86 |
| 105-1064297 | $96,665.68 | $255,997.04 | $266,997.04 |
| 105-1406955 | $95,021.81 | $240,565.43 | $251,565.43 |
| 105-1730379 | $69,108.89 | $207,326.67 | $218,326.67 |
| 105-2197500 | $98,004.33 | $249,012.99 | $260,012.99 |
| 105-2295858 | $109,751.69 | $294,255.07 | $305,255.07 |
| 105-2345881 | $69,145.47 | $178,936.41 | $189,936.41 |
| 105-0639279 | $119,148.58 | $294,713.74 | $305,713.74 |
| 105-1537086 | $126,730.56 | $270,191.68 | $281,191.68 |
| 105-1795363 | $119,750.59 | $285,251.77 | $296,251.77 |
| 105-1884014 | $108,281.54 | $259,594.62 | $270,594.62 |
| 105-1925840 | $124,039.09 | $340,217.27 | $351,217.27 |
| 105-1091864 | $140,787.66 | $327,322.98 | $338,322.98 |
| 105-1266680 | $130,713.89 | $317,141.67 | $328,141.67 |
| 105-2410956 | $203,770.80 | $511,312.40 | $522,312.40 |
| 105-2473180 | $144,559.05 | $366,677.15 | $377,677.15 |
| 105-1925601 | $188,205.38 | $469,416.14 | $480,416.14 |
| 105-2016065 | $132,956.52 | $296,369.56 | $307,369.56 |
| 105-1749868 | $132,473.07 | $354,643.21 | $365,643.21 |
| 105-1750939 | $137,172.12 | $299,616.36 | $310,616.36 |
| 105-1875586 | $68,688.58 | $161,065.74 | $172,065.74 |
| 105-2246682 | $98,882.02 | $255,146.06 | $266,146.06 |
| 105-1331489 | $93,136.20 | $236,408.60 | $247,408.60 |
| 105-2030391 | $141,255.28 | $342,765.84 | $353,765.84 |
| 105-2063237 | $110,951.19 | $253,853.57 | $264,853.57 |
| 105-2743651 | $202,214.42 | $514,793.26 | $525,793.26 |
| 105-1051684 | $215,583.38 | $507,455.14 | $518,455.14 |
| 105-0953901 | $154,968.75 | $374,906.25 | $385,906.25 |
| 105-2127335 | $67,590.99 | $180,272.97 | $191,272.97 |
| 105-0615106 | $187,996.23 | $440,988.69 | $451,988.69 |

*In re Home America Mortgage, Case no. 3:09-bk-10023-JAF (Bankr. M.D. Fla.)*
**Filed Under Seal**

| | | | |
|---|---|---|---|
| 105-0810747 | $160,159.51 | $365,478.53 | $376,478.53 |
| 105-0866390 | $115,683.28 | $279,049.84 | $290,049.84 |
| 105-1757575 | $62,985.40 | $157,456.20 | $168,456.20 |
| 105-1569542 | $79,942.92 | $214,328.76 | $225,328.76 |
| 011-5578878 | $90,135.36 | $245,406.08 | $256,406.08 |
| 105-0758597 | $114,249.52 | $273,748.56 | $284,748.56 |
| 105-0916728 | $136,821.39 | $385,749.17 | $396,749.17 |
| 105-0960399 | $140,345.43 | $326,036.29 | $337,036.29 |
| 105-1084358 | $26,028.30 | $78,084.90 | $89,084.90 |
| 105-1120511 | $29,944.81 | $59,889.62 | $70,889.62 |
| 105-1168298 | $127,367.76 | $290,953.28 | $301,953.28 |
| 105-1207291 | $132,355.87 | $329,966.61 | $340,966.61 |
| 105-1302584 | $101,568.32 | $237,704.96 | $248,704.96 |
| 105-1311671 | $95,557.85 | $248,673.55 | $259,673.55 |
| 105-1520544 | $199,677.45 | $441,032.35 | $452,032.35 |
| 105-1588252 | $41,132.80 | $123,398.40 | $134,398.40 |
| 105-1934626 | $182,115.31 | $426,345.93 | $437,345.93 |
| 105-2320004 | $97,351.57 | $247,054.71 | $258,054.71 |
| 105-1449734 | $166,427.95 | $384,283.85 | $395,283.85 |
| 101-9761952 | $112,994.10 | $263,982.30 | $274,982.30 |
| 105-0956517 | $165,398.05 | $385,484.15 | $396,484.15 |
| 105-1691955 | $157,883.45 | $368,600.35 | $379,600.35 |
| 105-1692353 | $83,133.13 | $183,899.39 | $194,899.39 |
| 105-1717562 | $106,128.74 | $267,386.22 | $278,386.22 |
| 105-1698897 | $142,934.85 | $320,804.55 | $331,804.55 |
| 105-1723168 | $144,167.06 | $380,501.18 | $391,501.18 |
| 105-1985736 | $161,646.03 | $395,938.09 | $406,938.09 |
| 105-2221803 | $142,050.73 | $336,152.19 | $347,152.19 |
| 105-2672272 | $109,418.16 | $259,254.48 | $270,254.48 |
| 105-2034568 | $165,880.36 | $427,641.08 | $438,641.08 |
| 105-2320135 | $58,257.31 | $174,771.93 | $185,771.93 |
| 105-2419689 | $97,496.89 | $252,890.67 | $263,890.67 |
| 105-1901309 | $139,640.49 | $362,321.47 | $373,321.47 |
| 105-2214326 | $168,147.99 | $369,443.97 | $380,443.97 |
| 105-0608916 | $75,655.46 | $189,666.38 | $200,666.38 |
| 105-2509256 | $93,505.34 | $265,516.02 | $276,516.02 |
| 105-1714403 | $110,286.22 | $274,858.66 | $285,858.66 |
| 105-1450075 | $142,096.32 | $306,188.96 | $317,188.96 |
| 461-3891422 | $141,088.13 | $332,600.39 | $343,600.39 |
| 105-2815832 | $68,424.50 | $205,273.50 | $216,273.50 |
| 105-2281983 | $87,090.84 | $226,272.52 | $237,272.52 |
| 105-1903963 | $144,832.21 | $363,260.63 | $374,260.63 |
| 105-0197356 | $127,316.88 | $319,950.64 | $330,950.64 |
| 105-0457395 | $105,040.73 | $260,122.19 | $271,122.19 |
| 105-0730836 | $162,395.11 | $386,185.33 | $397,185.33 |
| 105-0949052 | $110,225.95 | $248,698.85 | $259,698.85 |

*In re Home Americo Mortgage, Case no. 3:09-bk-10023-JAF (Bankr. M.D. Fla.)*
**Filed Under Seal**

| | | | |
|---|---|---|---|
| 105-1055946 | $110,771.15 | $307,312.45 | $318,312.45 |
| 105-1613328 | $125,620.65 | $298,861.95 | $309,861.95 |
| 105-1620971 | $151,417.80 | $339,503.40 | $350,503.40 |
| 105-1631793 | $79,682.40 | $192,947.20 | $203,947.20 |
| 105-1635800 | $13,851.74 | $41,555.22 | $52,555.22 |
| 105-1646594 | $90,640.80 | $248,121.40 | $259,121.40 |
| 105-1659155 | $125,325.29 | $315,975.87 | $326,975.87 |
| 105-1850453 | $84,066.52 | $181,899.56 | $192,899.56 |
| 105-1860030 | $214,345.84 | $537,037.52 | $548,037.52 |
| 105-1888760 | $139,509.01 | $345,027.03 | $356,027.03 |
| 105-1936084 | $91,867.84 | $244,603.52 | $255,603.52 |
| 105-2032862 | $102,068.52 | $258,700.56 | $269,700.56 |
| 105-2072391 | $166,286.55 | $417,859.65 | $428,859.65 |
| 105-2181648 | $80,748.08 | $190,244.24 | $201,244.24 |
| 105-2210093 | $191,498.03 | $424,494.09 | $435,494.09 |
| 105-2237928 | $220,610.23 | $531,830.69 | $542,830.69 |
| 105-2249433 | $100,527.61 | $267,157.83 | $278,157.83 |
| 105-2249529 | $101,920.79 | $274,962.37 | $285,962.37 |
| 105-2285850 | $22,470.03 | $67,410.09 | $78,410.09 |
| 105-2285998 | $100,518.51 | $276,555.53 | $287,555.53 |
| 105-2327568 | $97,818.83 | $247,456.49 | $258,456.49 |
| 105-2329481 | $167,074.45 | $396,223.35 | $407,223.35 |
| 105-2338693 | $241,473.15 | $560,419.45 | $571,419.45 |
| 105-2344443 | $140,180.28 | $324,529.84 | $335,529.84 |
| 105-2433254 | $104,932.32 | $277,796.96 | $288,796.96 |
| 421-3830345 | $70,892.73 | $160,178.19 | $171,178.19 |
| 105-2375860 | $37,888.18 | $113,664.54 | $124,664.54 |
| 105-0396419 | $22,074.27 | $66,222.81 | $77,222.81 |
| 105-0437985 | $112,187.22 | $285,561.66 | $296,561.66 |
| 105-0462264 | $79,275.20 | $183,325.60 | $194,325.60 |
| 105-0686516 | $109,449.42 | $265,348.26 | $276,348.26 |
| 105-0313863 | $144,524.52 | $337,303.56 | $348,303.56 |
| 105-0395669 | $157,280.01 | $356,396.03 | $367,396.03 |
| 105-0410693 | $178,513.75 | $410,041.25 | $421,041.25 |
| 105-0422599 | $168,147.37 | $369,442.11 | $380,442.11 |
| 105-1055946 | $110,771.15 | $307,312.45 | $318,312.45 |
| 105-1441963 | $117,377.77 | $260,862.71 | $271,862.71 |
| 105-1096680 | $147,315.09 | $348,945.27 | $359,945.27 |
| 105-0453539 | $93,707.74 | $219,621.22 | $230,621.22 |
| 105-1052507 | $112,886.33 | $290,658.99 | $301,658.99 |
| 011-5027859 | $80,531.96 | $191,595.88 | $202,595.88 |
| 105-1150927 | $184,718.13 | $403,154.39 | $414,154.39 |
| 105-0976534 | $130,559.69 | $323,679.07 | $334,679.07 |
| 105-1215404 | $123,067.39 | $299,202.17 | $310,202.17 |
| | | | |
| Totals: | $52,836,368.46 | $126,516,676.72 | $131,081,676.72 |

# EXHIBIT C

B 10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT    Middle District of Florida | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>Taylor, Bean & Whitaker Mortgage Corp. | Case Number:<br>3:09-bk-07047 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>The United States of America | ☐ Check this box to indicate that this claim amends a previously filed claim.<br>**RECEIVED**<br>CLERK, U.S. BANKRUPTCY COURT<br>Court Claim Number:_____<br>*(If known)* MAY 2 1 2010 |
| Name and address where notices should be sent:<br>The U.S. Department of Justice on behalf of the U.S. Department of Housing and Urban Development; Glenn D. Gillett, U.S. Department of Justice, Civil Division; 1100 L St., N.W., Room 10018; Washington, DC 20005 | |
| Telephone number:<br>(202) 514-7162 | Filed on:<br>MIDDLE DISTRICT OF FLORIDA |
| Name and address where payment should be sent (if different from above):<br><br>. | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
| Telephone number: | ☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| 1. Amount of Claim as of Date Case Filed:       $      176,912,539.09 | 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount. |
| If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4. | |
| If all or part of your claim is entitled to priority, complete item 5. | |
| ☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | Specify the priority of the claim.<br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| 2. Basis for Claim:   See attached.<br>(See instruction #2 on reverse side.) | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| 3. Last four digits of any number by which creditor identifies debtor: _____<br><br>3a. Debtor may have scheduled account as: _____<br>(See instruction #3a on reverse side.) | |
| 4. Secured Claim (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information. | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5). |
| Nature of property or right of setoff:  ☐ Real Estate   ☐ Motor Vehicle   ☐ Other<br>Describe: | ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7). |
| Value of Property:$_____  Annual Interest Rate_____%<br><br>Amount of arrearage and other charges as of time case filed included in secured claim, | |
| If any: $_____   Basis for perfection: _____ | ☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). |
| Amount of Secured Claim: $_____   Amount Unsecured: $_____ | |
| 6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__). |
| 7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*) | Amount entitled to priority:<br>$_____ |
| DO NOT SEND ORIGINAL DOCUMENTS.   ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING. | *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |
| If the documents are not available, please explain: | |

| | | |
|---|---|---|
| Date: 5/20/10 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.  *Glenn D. Gillett*  by Rita with permission | FOR COURT USE ONLY |
| Glenn D. Gillett, Trial Attorney, Commercial Litigation, Civil Division, U.S. Department of Justice | | |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

B 10 (Official Form 10) (12/08) – Cont.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the trustee or another party in interest files an objection to your claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

### DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity owed a debt by the debtor that arose on or before the date of the bankruptcy filing. See 11 U.S.C. §101 (10)

**Claim**
A claim is the creditor's right to receive payment on a debt owed by the debtor that arose on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

### INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

**FILED UNDER SEAL**

## Attachment to Proof of Claim of United States of America
### In In re Taylor, Bean & Whitaker Mortgage Corp.,
Case no. 3:09-bk-07047 (Bankr. M.D. Fla.)

Name and Address of Creditor:

United States of America
United States Department of Justice on behalf of the U.S. Department of Housing and
Urban Development

GLENN D. GILLETT
Civil Division
U.S. Department of Justice
1100 L St., NW, Room 10018
Washington, D.C. 20005

Attorney for the United States
Telephone Number: (202) 514-7162

ITEM 2 - Basis for Claim:

Debtor is liable for civil, monetary and administrative claims under the False Claims Act,
31 U.S.C. §§ 3729-3733, for causing to be presented false or fraudulent claims; making, using or
causing to be made false statements to get a false or fraudulent claim paid; and/or conspiring to
defraud the government by getting false or fraudulent claims allowed or paid; or otherwise
violating the False Claims Act ("FCA"), the Program Fraud Civil Remedies Act, 31 U.S.C. §§
3801-3812, and/or is liable under common law doctrines of payment by mistake, unjust
enrichment, and/or fraud.

Debtor is a mortgage lender approved by the Federal Housing Administration ("FHA") to
originate and underwrite mortgage loans for insurance by FHA. Upon information and belief,
Debtor underwrote approximately 556 mortgage loans[1] that violated FHA rules, regulations,
guidance, and/or other underwriting requirements in one or more of the following ways. Debtor
failed to properly verify or calculate borrowers' employment histories, income, debt-to-income
ratios, assets, and/or funds to close; failed to properly evaluate appraisals and borrowers' credit
histories; failed to ensure that borrowers invested the minimum required amount; and failed to
require the resolution of conflicting information and indicia of fraud in loan applications and
associated documentation. Debtor also permitted transactions in which purported gifts from

---

[1] The 556 mortgage loans that form the basis of the U.S. Department of Housing and Urban
Development's ("HUD's") claim include a category of reviewed loans and a category of sampled
loans. Of the total, 502 loans were reviewed by HUD and were found to have contained
violations of FHA requirements identified above. HUD conducted a sample of the remaining
158 loans and determined that 34.38% of the sampled loans contained violations of FHA
requirements identified above. Applying the findings to the universe of sampled loans, HUD has
estimated that 54 of the 158 loans contain violations of FHA requirements identified above.

1

**FILED UNDER SEAL**

charities to borrowers were not actually made by those charities, and permitted transactions in which the seller had raised the contract amount by the amount of a purported charitable gift, so that the borrower(s) financed their investment in the property in violation of FHA requirements. Upon information and belief, Debtor further permitted transactions involving agreements to prepay interest that violated FHA requirements. Upon information and belief, Debtor submitted all of the loans to FHA for insurance with actual knowledge or in reckless disregard of the fact that, as a result of the above failures, the loan applications were supported by false or fraudulent documents or documents containing false or fraudulent statements made to induce FHA to insure the mortgages.

FHA endorsed each of these mortgages, the borrowers defaulted, the mortgage holders made claims for insurance benefits to FHA, and FHA paid insurance benefits on the loans. FHA would not have endorsed the mortgages for insurance had it known of the fraudulence or falsity of the subsequent claims and/or the false information submitted to FHA that supported or otherwise was used go get the claims for mortgage insurance paid. A spreadsheet ("Exhibit A") is appended hereto identifying 502 of the claims at issue and the mortgage loans that support those claims by their FHA number. A second spreadsheet ("Exhibit B") identifies the remaining 158 loans from which HUD's sample was drawn.

The United States is entitled to treble damages under the FCA and a civil penalty of $5,500 to $11,000 for each false or fraudulent claim. The appended spreadsheets calculate each component of the claims for insurance benefits and subsequent damages, trebles the damages, subtracts any amounts in mitigation received by FHA as of May 1, 2010, and adds a $11,000 penalty per false or fraudulent claim to arrive at a judgment amount of not less than $178,912,539.09[2] to which the United States is entitled.

---

[2] Of this amount, $161,585,097.03 are damages and civil penalties from the 502 reviewed loans set forth in Exhibit A, and $17,327,441.06 are damages and civil penalties reflecting 34.38% of the $50,399,770.39 total set forth in Exhibit B.

*In re Taylor, Bean Whitaker Mortgage Corp., Case no. 3:09-bk-07047-JAF*
Exhibit A
Filed Under Seal

| FHA no. | gross claim | 3x gross claim-sales price+penalty |
|---|---|---|
| 105-1776437 | $53,624.64 | $143,873.92 |
| 105-1889238 | $109,428.12 | $295,284.36 |
| 105-1913530 | $74,629.91 | $204,689.73 |
| 105-1931330 | $106,108.50 | $284,315.50 |
| 105-2281983 | $87,090.84 | $237,272.52 |
| 105-2320004 | $97,351.57 | $258,054.71 |
| 105-2419689 | $97,496.89 | $263,890.67 |
| 105-1558431 | $86,213.12 | $207,314.90 |
| 105-1947399 | $257,060.61 | $620,181.83 |
| 105-0666836 | $143,781.66 | $372,344.98 |
| 105-1691955 | $157,883.45 | $379,600.35 |
| 105-1692353 | $83,133.13 | $194,899.39 |
| 105-1685421 | $127,403.47 | $279,010.41 |
| 105-1581009 | $118,138.83 | $365,416.49 |
| 105-1745265 | $99,439.87 | $252,319.61 |
| 105-0949052 | $110,225.95 | $259,698.85 |
| 105-1428497 | $172,828.42 | $384,184.26 |
| 105-1461808 | $38,736.87 | $127,210.61 |
| 105-2387006 | $186,054.15 | $454,162.45 |
| 105-2454608 | $247,050.05 | $597,150.15 |
| 105-2459694 | $188,259.48 | $452,778.44 |
| 105-0384824 | $121,058.32 | $270,174.96 |
| 105-0658182 | $163,462.41 | $399,327.23 |
| 105-0665075 | $160,009.60 | $406,028.80 |
| 105-0883382 | $141,344.28 | $316,997.86 |
| 105-2054107 | $109,258.92 | $304,276.76 |
| 105-1496389 | $103,508.71 | $238,526.13 |
| 011-5165780 | $87,227.16 | $238,481.48 |
| 011-5203095 | $68,681.08 | $185,593.24 |
| 011-5285593 | $94,347.40 | $230,542.20 |
| 011-5426306 | $102,364.15 | $274,092.45 |
| 105-0344962 | $182,853.45 | $421,060.35 |
| 105-0659851 | $119,063.19 | $282,689.57 |
| 105-1474913 | $109,566.93 | $275,100.79 |
| 105-1901214 | $87,078.74 | $225,936.22 |
| 105-2059582 | $106,391.09 | $264,173.27 |
| 105-0223916 | $130,210.53 | $311,231.59 |
| 105-0324548 | $166,628.53 | $385,885.59 |
| 105-2202987 | $93,494.08 | $291,482.24 |
| 105-2172101 | $171,519.10 | $399,957.30 |
| 105-1843808 | $173,516.47 | $448,741.41 |
| 105-0329489 | $134,625.98 | $357,977.94 |
| 105-0497920 | $143,739.51 | $331,918.53 |
| 105-0565101 | $128,053.21 | $343,159.63 |
| 105-0608916 | $75,655.46 | $200,666.38 |
| 105-0609905 | $123,826.22 | $315,278.66 |
| 105-0683476 | $175,520.28 | $414,459.84 |
| 105-1566829 | $46,190.73 | $149,572.19 |
| 105-1584918 | $130,838.34 | $319,015.02 |
| 105-1608623 | $157,853.92 | $375,561.76 |
| 105-1673843 | $142,295.74 | $402,737.22 |
| 105-1710345 | $49,755.73 | $160,267.19 |

*In re Taylor, Bean Whitaker Mortgage Corp., Case no. 3:09-bk-07047-JAF*

Exhibit A

Filed Under Seal

| | | |
|---|---|---|
| 105-2077902 | $143,539.60 | $364,618.80 |
| 105-0197356 | $127,316.88 | $330,950.64 |
| 105-0099219 | $140,292.39 | $337,677.17 |
| 105-0353340 | $108,144.03 | $287,432.09 |
| 105-0396419 | $22,074.27 | $77,222.81 |
| 105-0437985 | $112,187.22 | $296,561.66 |
| 105-0462264 | $79,275.20 | $194,325.60 |
| 105-0564418 | $109,138.45 | $273,814.35 |
| 105-0652716 | $145,983.92 | $338,951.76 |
| 105-0682697 | $167,217.62 | $362,652.86 |
| 105-0715612 | $115,145.74 | $266,437.22 |
| 105-0897772 | $122,159.68 | $286,279.04 |
| 105-1475212 | $116,347.04 | $285,041.12 |
| 105-1519286 | $177,920.62 | $449,761.86 |
| 105-1524995 | $136,235.08 | $307,705.24 |
| 105-1589048 | $174,499.21 | $395,997.63 |
| 105-1613328 | $125,620.65 | $309,861.95 |
| 105-1635800 | $13,851.74 | $52,555.22 |
| 105-1675686 | $130,249.50 | $310,748.50 |
| 105-1698897 | $142,934.85 | $331,804.55 |
| 105-1716768 | $180,994.51 | $432,983.53 |
| 105-1723168 | $144,167.06 | $391,501.18 |
| 105-1774792 | $191,497.05 | $493,491.15 |
| 105-1886327 | $101,774.02 | $214,548.04 |
| 105-1893583 | $185,145.27 | $466,435.81 |
| 105-1937169 | $168,252.01 | $387,256.03 |
| 105-1981270 | $37,543.50 | $123,630.50 |
| 105-1985736 | $161,646.03 | $406,938.09 |
| 105-2067718 | $175,420.67 | $402,262.01 |
| 105-2077382 | $90,063.54 | $222,690.62 |
| 105-2083307 | $121,197.34 | $268,592.02 |
| 105-2133216 | $118,047.31 | $304,041.93 |
| 105-2140115 | $163,541.78 | $378,625.34 |
| 105-2221803 | $142,050.73 | $347,152.19 |
| 105-2672272 | $109,418.16 | $270,254.48 |
| 105-1064818 | $150,703.89 | $395,111.67 |
| 105-1064852 | $124,022.90 | $348,068.70 |
| 105-0155458 | $162,396.84 | $370,190.52 |
| 105-0379121 | $199,717.84 | $449,653.52 |
| 105-1791717 | $137,978.20 | $349,934.60 |
| 105-0613350 | $106,946.73 | $271,840.19 |
| 105-1730379 | $69,108.89 | $218,326.67 |
| 105-2070072 | $100,740.92 | $284,722.76 |
| 105-2197500 | $98,004.33 | $260,012.99 |
| 105-0632019 | $127,499.74 | $338,499.22 |
| 105-2065781 | $168,142.57 | $408,327.71 |
| 105-2258730 | $138,419.41 | $330,678.23 |
| 105-0490787 | $94,436.61 | $274,309.83 |
| 105-0639279 | $119,148.58 | $305,713.74 |
| 105-1537086 | $126,730.56 | $281,191.68 |
| 105-1552973 | $126,887.54 | $304,949.62 |
| 105-1992028 | $121,610.09 | $315,830.27 |
| 105-1860030 | $214,345.84 | $548,037.52 |
| 105-2316827 | $115,543.62 | $317,630.86 |
| 105-2334213 | $75,805.76 | $223,417.28 |

| | | |
|---|---|---|
| 105-1850923 | $179,859.69 | $441,579.07 |
| 105-0622136 | $5,070.07 | $26,210.21 |
| 105-0662728 | $161,426.56 | $379,279.68 |
| 105-2410956 | $203,770.80 | $522,312.40 |
| 105-2473180 | $144,559.05 | $377,677.15 |
| 105-0751828 | $196,573.74 | $441,721.22 |
| 105-2211746 | $118,260.87 | $365,782.61 |
| 105-2288335 | $190,695.49 | $487,486.47 |
| 105-0634452 | $6,984.99 | $31,954.97 |
| 105-1569197 | $155,027.13 | $342,081.39 |
| 105-1620906 | $141,736.59 | $317,209.77 |
| 105-1592126 | $89,048.83 | $199,834.93 |
| 105-2214326 | $168,147.99 | $380,443.97 |
| 101-9696293 | $196,321.84 | $508,737.52 |
| 105-0365621 | $137,719.90 | $314,159.70 |
| 105-0553228 | $173,304.56 | $380,513.68 |
| 105-0652410 | $164,953.98 | $378,861.94 |
| 105-0671579 | $179,669.46 | $401,808.38 |
| 105-0686516 | $109,449.42 | $276,348.26 |
| 105-0721364 | $19,888.18 | $70,664.54 |
| 105-0794428 | $170,061.72 | $379,276.16 |
| 105-0919776 | $138,548.62 | $364,895.85 |
| 105-1030343 | $168,983.76 | $360,751.28 |
| 105-1228574 | $125,256.47 | $287,612.86 |
| 105-1469121 | $172,949.42 | $427,848.26 |
| 105-1567824 | $145,971.66 | $312,914.98 |
| 105-1584460 | $143,939.21 | $360,817.63 |
| 105-1588564 | $163,064.47 | $368,116.07 |
| 105-1640086 | $138,585.62 | $306,756.86 |
| 105-1640918 | $154,923.94 | $361,471.82 |
| 105-1674225 | $191,288.35 | $484,865.05 |
| 105-1687842 | $180,090.21 | $388,755.63 |
| 105-1688883 | $134,046.51 | $353,139.53 |
| 105-1697760 | $159,554.28 | $360,662.84 |
| 105-1704429 | $170,180.87 | $351,361.74 |
| 105-1709399 | $225,105.32 | $515,815.96 |
| 105-1749868 | $192,473.07 | $365,643.21 |
| 105-1750939 | $137,172.12 | $310,616.36 |
| 105-1754136 | $158,251.70 | $354,255.10 |
| 105-1793067 | $191,892.21 | $449,076.63 |
| 105-1840847 | $148,313.10 | $360,939.30 |
| 105-1844878 | $154,879.24 | $376,637.72 |
| 105-1861847 | $123,626.27 | $258,252.54 |
| 105-1887164 | $166,782.44 | $389,347.32 |
| 105-1903963 | $144,832.21 | $374,260.63 |
| 105-1912853 | $152,090.05 | $403,270.15 |
| 105-1962373 | $122,158.47 | $290,975.41 |
| 105-2027199 | $201,590.67 | $505,772.01 |
| 105-2032862 | $102,068.52 | $269,700.56 |
| 105-2046878 | $38,227.19 | $125,681.57 |
| 105-2094476 | $182,516.81 | $465,050.43 |
| 105-2099995 | $187,411.37 | $436,434.11 |
| 105-2109377 | $180,994.30 | $423,982.90 |
| 105-2116201 | $151,147.82 | $364,443.46 |
| 105-2116355 | $126,667.04 | $341,000.12 |

| | | |
|---|---|---|
| 105-2124345 | $151,697.07 | $356,091.21 |
| 105-2181779 | $156,657.05 | $370,971.15 |
| 105-2234179 | $194,374.46 | $484,973.38 |
| 105-2237327 | $106,156.21 | $272,468.63 |
| 105-2255355 | $124,447.62 | $314,942.86 |
| 105-2282276 | $208,723.51 | $521,170.53 |
| 105-2284782 | $185,482.93 | $444,448.79 |
| 105-2292288 | $175,000.61 | $414,001.83 |
| 105-2309799 | $173,296.41 | $422,889.23 |
| 105-2328723 | $151,133.97 | $361,581.91 |
| 105-2375860 | $37,888.18 | $124,664.54 |
| 105-2102799 | $155,620.33 | $353,860.99 |
| 105-1714403 | $110,286.22 | $285,858.66 |
| 105-1901309 | $139,640.49 | $373,321.47 |
| 105-2237928 | $220,610.23 | $542,830.69 |
| 105-0313863 | $144,524.52 | $348,303.56 |
| 105-0395669 | $157,280.01 | $367,396.03 |
| 105-0410693 | $178,513.75 | $421,041.25 |
| 105-0422599 | $168,147.37 | $380,442.11 |
| 105-0626978 | $164,515.05 | $374,545.15 |
| 105-1055946 | $110,771.15 | $318,312.45 |
| 105-1441963 | $117,377.77 | $271,862.71 |
| 105-1526582 | $192,633.25 | $452,164.75 |
| 105-1704009 | $156,658.23 | $366,874.69 |
| 105-1799234 | $176,751.40 | $411,254.20 |
| 105-1096680 | $147,315.09 | $359,945.27 |
| 105-1663166 | $207,691.37 | $426,382.74 |
| 011-5119695 | $108,874.72 | $257,624.16 |
| 105-0229372 | $71,861.06 | $200,078.18 |
| 105-0480511 | $75,803.80 | $215,812.40 |
| 105-0597416 | $77,496.07 | $200,488.21 |
| 105-0680463 | $85,152.04 | $227,456.12 |
| 105-1440735 | $99,959.21 | $250,877.63 |
| 105-1510728 | $82,646.04 | $216,138.12 |
| 105-0592953 | $125,582.76 | $317,748.28 |
| 105-2743651 | $202,214.42 | $525,793.26 |
| 105-2134654 | $231,037.22 | $520,510.66 |
| 105-1763818 | $143,782.17 | $356,235.51 |
| 105-2403196 | $216,763.69 | $520,741.07 |
| 105-1609076 | $95,074.76 | $251,224.28 |
| 105-1910363 | $131,682.31 | $321,046.93 |
| 105-1877298 | $24,402.23 | $84,206.69 |
| 105-2419360 | $198,313.62 | $455,940.86 |
| 105-0876336 | $168,027.94 | $391,083.82 |
| 011-5201456 | $72,100.39 | $203,901.17 |
| 011-5283694 | $77,208.41 | $204,825.23 |
| 105-0419033 | $78,710.48 | $196,131.44 |
| 105-1667681 | $97,028.80 | $238,086.40 |
| 105-1850453 | $84,066.52 | $192,899.56 |
| 105-1331437 | $196,897.12 | $517,691.36 |
| 105-1737876 | $139,893.52 | $322,680.56 |
| 105-1919556 | $178,516.11 | $388,548.33 |
| 105-1584635 | $132,738.18 | $354,114.54 |
| 105-0730836 | $162,395.11 | $397,185.33 |
| 105-0596036 | $152,614.44 | $363,843.32 |

*In re Taylor, Bean Whitaker Mortgage Corp., Case no. 3:09-bk-07047-JAF*
Exhibit A
Filed Under Seal

| | | |
|---|---|---|
| 105-1486720 | $118,200.45 | $263,379.26 |
| 105-2111364 | $14,765.09 | $55,295.27 |
| 105-1668452 | $167,805.65 | $424,416.95 |
| 105-1908212 | $198,590.89 | $475,772.67 |
| 105-0607523 | $85,054.15 | $266,162.45 |
| 105-2344075 | $116,390.35 | $316,671.05 |
| 105-0296713 | $171,169.22 | $377,406.66 |
| 105-0551516 | $122,467.31 | $277,414.93 |
| 105-0644761 | $164,644.98 | $364,934.94 |
| 105-0453539 | $93,707.74 | $230,621.22 |
| 105-1505497 | $139,917.71 | $337,753.13 |
| 105-1639797 | $125,428.65 | $297,285.95 |
| 105-2072391 | $166,286.55 | $428,859.65 |
| 105-2210093 | $191,498.03 | $435,494.09 |
| 105-2296121 | $168,803.24 | $372,409.72 |
| 105-1888760 | $139,509.01 | $356,027.03 |
| 105-2338693 | $241,473.15 | $571,419.45 |
| 105-1738451 | $101,301.81 | $279,905.43 |
| 105-2327568 | $97,818.83 | $258,456.49 |
| 105-1631793 | $79,682.40 | $203,947.20 |
| 105-1659829 | $109,008.77 | $303,106.31 |
| 105-1712687 | $78,129.93 | $211,389.79 |
| 105-1717562 | $106,128.74 | $278,386.22 |
| 105-1730277 | $83,591.99 | $235,775.97 |
| 105-1936084 | $91,867.84 | $255,603.52 |
| 105-2034370 | $94,644.51 | $247,133.53 |
| 105-2285998 | $100,518.51 | $287,555.53 |
| 105-2398595 | $96,535.40 | $276,606.20 |
| 105-2481257 | $109,803.33 | $322,709.99 |
| 105-2509256 | $93,505.34 | $276,516.02 |
| 105-1696289 | $216,776.09 | $492,217.27 |
| 105-0457395 | $105,040.73 | $271,122.19 |
| 105-2285850 | $22,470.03 | $78,410.09 |
| 105-1833620 | $93,690.14 | $249,470.42 |
| 105-1850447 | $89,613.41 | $231,140.23 |
| 105-0713952 | $123,393.16 | $283,379.48 |
| 105-1110616 | $136,128.34 | $332,385.02 |
| 105-1450075 | $142,096.32 | $317,188.96 |
| 105-1469013 | $187,720.53 | $424,350.59 |
| 105-1635159 | $33,917.28 | $112,751.84 |
| 105-1743967 | $150,624.59 | $377,873.77 |
| 105-1787560 | $90,636.14 | $252,992.42 |
| 105-1822997 | $147,762.46 | $396,984.38 |
| 105-1745373 | $18,266.75 | $65,800.25 |
| 105-0560147 | $100,908.40 | $251,225.20 |
| 105-1439280 | $101,911.83 | $266,835.49 |
| 105-1905137 | $165,188.02 | $426,564.06 |
| 105-1460956 | $95,895.45 | $260,585.35 |
| 105-1713017 | $110,732.04 | $297,196.12 |
| 105-1762067 | $118,424.94 | $296,274.82 |
| 105-2105107 | $111,750.11 | $285,750.33 |
| 105-2236265 | $117,017.39 | $301,002.17 |
| 105-2302341 | $84,723.64 | $225,170.92 |
| 105-2310462 | $86,132.14 | $221,396.42 |
| 105-2317897 | $98,875.66 | $279,726.98 |

*In re Taylor, Bean Whitaker Mortgage Corp., Case no. 3:09-bk-07047-JAF*
Exhibit A
Filed Under Seal

| | | |
|---|---|---|
| 105-0626512 | $150,130.62 | $334,391.86 |
| 105-1891084 | $198,838.05 | $483,514.15 |
| 105-2147772 | $200,292.82 | $507,873.46 |
| 105-1596916 | $143,454.74 | $333,364.22 |
| 011-5314631 | $107,537.30 | $268,611.90 |
| 105-2356520 | $153,613.94 | $363,461.82 |
| 105-1879361 | $193,712.36 | $484,137.08 |
| 105-2815832 | $69,708.44 | $210,025.32 |
| 105-2020149 | $116,274.59 | $294,823.77 |
| 105-1913813 | $118,656.04 | $348,368.12 |
| 105-0615106 | $187,996.23 | $451,988.69 |
| 105-1468581 | $116,694.31 | $273,082.93 |
| 105-1506378 | $155,576.48 | $412,729.44 |
| 105-2202777 | $126,707.09 | $319,666.27 |
| 105-2034568 | $165,880.36 | $438,641.08 |
| 461-3891422 | $141,088.13 | $343,600.39 |
| 105-2320135 | $58,257.31 | $185,771.93 |
| 105-0485055 | $116,669.85 | $306,009.55 |
| 105-1569542 | $79,942.92 | $225,328.76 |
| 105-0660627 | $123,334.99 | $299,504.97 |
| 101-9909461 | $138,380.74 | $330,142.22 |
| 105-0695813 | $48,248.64 | $136,745.92 |
| 105-1120511 | $29,944.81 | $70,889.62 |
| 105-1540532 | $134,951.96 | $324,689.88 |
| 105-1581616 | $38,811.21 | $127,433.63 |
| 105-1659155 | $125,325.29 | $326,975.87 |
| 105-1720149 | $203,782.36 | $452,347.08 |
| 105-1738661 | $110,766.08 | $232,532.16 |
| 105-1754901 | $152,813.69 | $374,430.07 |
| 105-1804097 | $84,237.18 | $238,711.54 |
| 105-1934626 | $182,115.31 | $437,345.93 |
| 105-2005713 | $116,079.99 | $274,239.97 |
| 105-2072934 | $178,938.23 | $449,314.69 |
| 105-2225942 | $195,173.27 | $414,519.81 |
| 105-2249433 | $100,527.61 | $278,157.83 |
| 105-2258832 | $100,538.12 | $271,614.36 |
| 105-2265652 | $152,656.36 | $349,969.08 |
| 105-2265906 | $134,014.20 | $334,887.60 |
| 105-2267834 | $193,394.23 | $488,182.69 |
| 105-2269870 | $47,755.31 | $127,765.93 |
| 105-2271483 | $95,324.00 | $263,472.00 |
| 105-2277361 | $35,461.00 | $117,383.00 |
| 105-2279248 | $28,320.52 | $95,961.56 |
| 105-2279344 | $99,718.20 | $285,554.60 |
| 105-2344443 | $140,180.28 | $335,529.84 |
| 105-2433254 | $104,932.32 | $288,796.96 |
| 421-3830345 | $70,892.73 | $171,178.19 |
| 105-2712625 | $169,446.17 | $417,338.51 |
| 105-2581411 | $218,543.52 | $526,630.56 |
| 105-2648300 | $176,187.17 | $421,561.51 |
| 105-2645849 | $181,953.83 | $483,351.49 |
| 105-2600287 | $139,077.32 | $361,639.96 |
| 105-2597460 | $212,453.15 | $510,359.45 |
| 105-2580167 | $254,419.77 | $599,259.31 |
| 105-2555822 | $151,217.99 | $411,877.97 |

| | | |
|---|---|---|
| 105-0219206 | $117,704.37 | $312,213.11 |
| 105-1823986 | $167,697.74 | $387,093.22 |
| 105-2241770 | $76,028.00 | $179,084.00 |
| 105-1114601 | $125,787.26 | $284,454.94 |
| 105-0507780 | $45,819.97 | $123,459.91 |
| 105-1420680 | $96,607.33 | $245,821.99 |
| 105-2473733 | $187,008.61 | $444,025.83 |
| 105-1257196 | $96,602.09 | $248,206.27 |
| 105-1754606 | $74,740.88 | $185,222.64 |
| 105-0338888 | $109,537.05 | $270,279.15 |
| 011-5166847 | $109,186.81 | $296,560.43 |
| 011-5263115 | $72,851.09 | $204,553.27 |
| 011-5271513 | $108,440.82 | $281,322.46 |
| 011-5287933 | $110,882.32 | $297,646.96 |
| 105-1696736 | $159,950.65 | $365,351.95 |
| 105-0653786 | $140,099.94 | $348,599.82 |
| 105-1610186 | $117,272.16 | $289,816.48 |
| 105-2217503 | $133,092.69 | $354,148.07 |
| 105-0661940 | $53,351.57 | $156,554.71 |
| 105-2243686 | $127,092.28 | $350,675.84 |
| 105-0197730 | $121,952.64 | $286,857.92 |
| 105-1588410 | $14,347.77 | $54,043.31 |
| 105-2159003 | $153,278.61 | $385,335.83 |
| 103-0606148 | $187,540.85 | $446,008.55 |
| 105-1330789 | $212,915.92 | $497,634.76 |
| 105-1926137 | $191,403.81 | $420,211.43 |
| 105-2088855 | $179,340.98 | $445,522.94 |
| 105-2326281 | $158,495.51 | $369,486.53 |
| 105-0736250 | $172,062.89 | $422,188.67 |
| 105-1674537 | $75,850.71 | $207,352.13 |
| 105-0297328 | $95,195.35 | $225,086.05 |
| 105-1810766 | $108,464.43 | $280,318.29 |
| 105-1841921 | $240,802.23 | $607,789.69 |
| 011-4913766 | $73,076.72 | $206,230.16 |
| 011-4962245 | $107,027.43 | $279,082.29 |
| 105-2020415 | $186,044.93 | $464,134.79 |
| 105-1932114 | $130,966.51 | $338,499.53 |
| 105-0678532 | $124,674.44 | $306,642.32 |
| 105-2291009 | $188,409.79 | $445,098.37 |
| 105-1788622 | $127,163.52 | $277,490.56 |
| 105-1609966 | $187,538.42 | $468,615.26 |
| 105-2326196 | $58,700.67 | $166,102.01 |
| 105-2125074 | $83,907.12 | $211,721.36 |
| 011-5151241 | $74,599.23 | $187,797.69 |
| 105-0647150 | $147,296.10 | $352,888.30 |
| 105-0789089 | $172,479.39 | $400,661.17 |
| 105-1305726 | $166,866.87 | $380,600.61 |
| 105-1865776 | $143,019.80 | $336,359.40 |
| 105-2247251 | $123,335.59 | $317,906.77 |
| 105-2262078 | $23,855.09 | $82,565.27 |
| 105-1984152 | $110,579.21 | $263,937.63 |
| 011-5287898 | $123,606.81 | $306,820.43 |
| 011-5433937 | $97,166.32 | $250,948.96 |
| 105-0792173 | $91,118.13 | $259,854.39 |
| 105-0190971 | $141,616.08 | $328,535.24 |

*In re Taylor, Bean Whitaker Mortgage Corp., Case no. 3:09-bk-07047-JAF*
Exhibit A
Filed Under Seal

| | | |
|---|---|---|
| 105-2076306 | $138,791.11 | $310,873.33 |
| 105-0903849 | $178,740.49 | $425,706.47 |
| 105-2399561 | $174,720.65 | $429,041.95 |
| 105-0720491 | $140,665.06 | $329,995.18 |
| 105-1710193 | $200,509.29 | $510,827.87 |
| 011-4999709 | $81,567.54 | $223,102.62 |
| 011-5030444 | $59,894.49 | $167,845.47 |
| 105-0022652 | $105,610.84 | $294,832.52 |
| 105-0123919 | $215,027.64 | $479,082.92 |
| 105-1806828 | $160,288.50 | $331,577.00 |
| 105-0903826 | $139,991.92 | $335,975.76 |
| 105-1036548 | $104,263.39 | $231,790.17 |
| 105-1321344 | $114,763.23 | $278,788.69 |
| 105-1354893 | $127,439.27 | $326,317.81 |
| 105-1028435 | $115,800.11 | $287,949.33 |
| 105-1032808 | $163,858.72 | $376,576.16 |
| 105-1126356 | $112,494.65 | $303,383.95 |
| 105-1218706 | $107,259.84 | $247,779.52 |
| 105-1006729 | $85,777.34 | $242,332.02 |
| 105-0859196 | $168,050.37 | $382,551.11 |
| 105-0917752 | $171,799.39 | $400,185.17 |
| 105-0963813 | $137,343.08 | $318,216.11 |
| 105-0984104 | $213,008.33 | $500,024.99 |
| 105-1004894 | $136,515.61 | $360,546.83 |
| 105-1026927 | $182,435.83 | $417,309.49 |
| 105-1035719 | $165,060.40 | $366,681.20 |
| 105-1062034 | $171,442.21 | $399,226.63 |
| 105-1148578 | $158,476.64 | $371,429.92 |
| 105-1161000 | $141,523.64 | $322,870.92 |
| 105-1208035 | $170,814.96 | $376,444.88 |
| 105-1231731 | $179,653.16 | $412,182.48 |
| 105-1310154 | $97,556.28 | $286,567.84 |
| 105-1387284 | $14,542.56 | $11,000.00 |
| 105-1395399 | $183,278.89 | $407,936.07 |
| 105-0985008 | $143,014.97 | $335,044.91 |
| 105-0931993 | $51,979.43 | $146,438.29 |
| 105-0995136 | $113,302.55 | $269,802.65 |
| 105-0998806 | $166,474.86 | $375,424.58 |
| 105-1405030 | $126,473.63 | $332,920.89 |
| 105-1212942 | $169,376.83 | $400,130.49 |
| 105-0507867 | $196,722.15 | $504,665.45 |
| 105-0512115 | $72,271.25 | $200,813.75 |
| 105-0523509 | $188,693.45 | $452,080.35 |
| 105-0534474 | $161,093.39 | $392,780.17 |
| 105-0544203 | $114,787.89 | $287,663.67 |
| 105-0774604 | $144,605.92 | $346,317.76 |
| 105-0780299 | $180,702.01 | $412,106.03 |
| 105-0783005 | $28,800.09 | $97,400.09 |
| 105-0783142 | $136,844.28 | $330,032.84 |
| 105-0787013 | $68,893.00 | $192,079.00 |
| 105-0799300 | $179,179.53 | $424,038.59 |
| 105-0802389 | $94,600.53 | $260,801.59 |
| 105-0803825 | $47,389.74 | $63,169.22 |
| 105-0806243 | $186,343.07 | $423,029.21 |
| 105-0895771 | $151,626.14 | $369,878.42 |

| | | |
|---|---|---|
| 105-1020142 | $152,728.68 | $420,935.04 |
| 105-1025031 | $200,886.64 | $473,642.92 |
| 105-1128328 | $165,070.44 | $341,140.88 |
| 105-1280545 | $120,979.71 | $286,639.13 |
| 105-1395347 | $195,187.83 | $432,763.49 |
| 105-1661839 | $96,632.91 | $260,898.73 |
| 105-2121282 | $66,774.28 | $166,322.84 |
| 105-2413736 | $150,660.98 | $405,482.94 |
| 105-2450150 | $140,324.34 | $339,973.02 |
| 105-2507051 | $93,520.00 | $246,760.00 |
| 105-2540306 | $218,858.14 | $530,574.42 |
| 105-2544031 | $126,509.90 | $341,529.70 |
| 105-2563307 | $126,779.10 | $326,337.30 |
| 105-2613353 | $86,247.98 | $233,243.94 |
| 105-2632209 | $114,761.35 | $296,284.05 |
| 105-2673827 | $108,135.40 | $279,406.20 |
| 105-2678223 | $76,939.55 | $204,618.65 |
| 105-2599058 | $101,218.19 | $242,154.57 |
| 105-1124411 | $84,335.58 | $229,806.74 |
| 105-1626134 | $88,720.18 | $212,160.54 |
| 105-1388159 | $18,787.93 | $67,363.79 |
| 105-1959316 | $151,545.43 | $372,636.29 |
| 011-5303849 | $81,729.47 | $207,588.41 |
| 011-5342690 | $71,547.42 | $183,642.26 |
| 105-2278895 | $79,887.24 | $234,061.72 |
| 105-2370840 | $82,463.44 | $228,390.32 |
| 011-5390854 | $83,040.05 | $232,120.15 |
| 105-2447276 | $84,139.11 | $225,417.33 |
| 011-5509685 | $83,750.33 | $230,750.99 |
| 011-5512518 | $102,733.67 | $273,201.01 |
| 105-2694363 | $155,475.55 | $400,426.65 |
| 105-2769364 | $151,883.45 | $419,680.35 |
| 101-9667093 | $113,653.54 | $279,960.62 |
| 101-9723137 | $117,888.92 | $271,666.76 |
| 101-9923897 | $64,108.60 | $179,125.80 |
| 105-0849465 | $136,914.47 | $355,643.41 |
| 105-0840928 | $167,418.24 | $371,116.72 |
| 105-1735382 | $108,802.23 | $310,306.69 |
| 105-1917316 | $121,804.06 | $319,412.18 |
| 105-1317096 | $148,761.67 | $327,165.40 |
| 105-1898462 | $184,808.99 | $440,926.97 |
| 105-2044927 | $186,316.76 | $456,950.28 |
| 105-2380621 | $67,229.52 | $191,188.56 |
| 011-5019665 | $87,915.95 | $236,247.85 |
| 105-2040665 | $108,030.46 | $310,091.38 |
| 105-1845726 | $95,750.54 | $298,251.62 |
| 105-2137180 | $100,733.14 | $272,629.42 |
| 105-0826747 | $129,771.35 | $350,324.05 |
| 105-0918396 | $97,044.03 | $241,601.09 |
| 105-1028668 | $98,398.57 | $254,195.71 |
| 105-1110878 | $158,131.76 | $376,382.28 |
| 105-2074777 | $234,451.68 | $576,974.04 |
| 105-2729564 | $180,173.09 | $436,519.27 |
| 105-2735258 | $137,773.29 | $356,319.87 |
| 105-2698710 | $104,218.15 | $283,554.45 |

*In re Taylor, Bean Whitaker Mortgage Corp., Case no. 3:09-bk-07047-JAF*
Exhibit A
Filed Under Seal

| | | |
|---|---|---|
| 105-1129086 | $168,037.39 | $382,112.17 |
| 105-1449734 | $166,427.95 | $395,283.85 |
| 101-9761952 | $112,994.10 | $274,982.30 |
| 105-0956517 | $165,398.05 | $396,484.15 |
| 105-0969331 | $64,196.59 | $167,144.77 |
| 105-1052507 | $112,886.33 | $301,658.99 |
| 011-5027859 | $80,531.96 | $202,595.88 |
| 105-1150927 | $184,718.13 | $414,154.39 |
| 105-0976534 | $130,559.69 | $334,679.07 |
| 105-1215404 | $123,067.39 | $310,202.17 |
| | | |
| Totals: | $65,331,232.41 | $161,585,097.03 |

In re Taylor, Bean Whitaker Mortgage Corp., Case no. 3:09-bk-07047-JAF
Exhibit B
Filed Under Seal

| FHA no. | gross claim | 3x gross claim - sales price+penalty |
|---|---|---|
| 105-0671995 | $19,256.56 | $68,769.68 |
| 105-0970213 | $87,294.16 | $230,242.24 |
| 105-1064297 | $96,665.68 | $266,997.04 |
| 105-1757575 | $62,985.40 | $168,456.20 |
| 105-0758597 | $114,249.52 | $284,748.56 |
| 105-1419075 | $184,895.80 | $425,087.40 |
| 105-1520544 | $199,677.45 | $452,032.35 |
| 105-1902636 | $104,568.77 | $281,206.31 |
| 105-2295858 | $109,751.69 | $305,255.07 |
| 105-2129053 | $195,970.19 | $502,910.57 |
| 105-1084597 | $36,959.14 | $121,877.42 |
| 105-2005106 | $154,866.57 | $363,599.71 |
| 105-1397706 | $116,870.76 | $269,637.23 |
| 105-0783159 | $188,897.83 | $462,692.49 |
| 105-1028911 | $152,983.72 | $351,701.16 |
| 105-1402708 | $158,532.80 | $386,598.40 |
| 105-2193176 | $216,665.88 | $538,997.64 |
| 105-0953901 | $154,968.75 | $385,906.25 |
| 105-2127335 | $67,590.99 | $191,272.97 |
| 105-0810747 | $160,159.51 | $376,478.53 |
| 105-0798442 | $27,150.08 | $92,450.24 |
| 105-2029699 | $98,321.41 | $266,964.23 |
| 105-2341821 | $82,481.52 | $232,324.56 |
| 105-2368657 | $100,595.56 | $282,586.68 |
| 105-2077694 | $96,071.81 | $259,215.43 |
| 105-1302584 | $101,568.32 | $248,704.96 |
| 105-1845447 | $89,149.59 | $249,948.77 |
| 105-2329481 | $167,074.45 | $407,223.35 |
| 105-1373227 | $140,110.09 | $306,330.27 |
| 105-1207291 | $132,355.87 | $340,966.61 |
| 105-1852918 | $97,310.90 | $253,432.70 |
| 105-1091394 | $19,726.72 | $70,180.16 |
| 105-2116102 | $197,712.68 | $458,338.04 |
| 105-0689903 | $118,900.38 | $269,451.14 |
| 105-1623036 | $197,888.83 | $464,366.49 |
| 105-1976270 | $148,968.68 | $392,505.04 |
| 105-1037601 | $190,493.63 | $430,380.89 |
| 105-0807702 | $157,934.29 | $367,802.87 |
| 105-2063094 | $122,547.25 | $288,641.75 |
| 105-0810589 | $140,429.19 | $305,143.57 |
| 105-0186750 | $82,321.76 | $220,165.28 |

Page 1 of 4

In re Taylor, Bean Whitaker Mortgage Corp., Case no. 3:09-bk-07047-JAF

Exhibit B

Filed Under Seal

| | | |
|---|---|---|
| 105-2231108 | $181,146.60 | $490,791.80 |
| 105-1795363 | $119,750.59 | $296,251.77 |
| 105-2182354 | $89,210.16 | $240,930.48 |
| 105-2063237 | $110,951.19 | $264,853.57 |
| 105-0290530 | $196,483.51 | $570,450.53 |
| 105-2056245 | $87,070.32 | $243,410.96 |
| 105-1884014 | $108,281.54 | $270,594.62 |
| 105-1282273 | $129,590.17 | $301,570.51 |
| 105-1829415 | $96,630.16 | $258,690.48 |
| 105-2345881 | $69,145.47 | $189,936.41 |
| 105-0279528 | $117,114.14 | $287,342.42 |
| 105-2012743 | $145,617.18 | $357,851.54 |
| 105-2030391 | $141,255.28 | $353,765.84 |
| 105-0835994 | $146,776.99 | $356,330.97 |
| 105-2007743 | $83,547.76 | $205,542.28 |
| 105-1054832 | $85,931.45 | $233,694.35 |
| 105-1215404 | $123,067.39 | $310,202.17 |
| 105-0976534 | $130,559.69 | $334,679.07 |
| 105-1103609 | $168,105.52 | $373,897.67 |
| 105-1222700 | $165,769.72 | $371,309.16 |
| 105-0674530 | $158,657.44 | $365,172.32 |
| 105-1150927 | $184,718.13 | $414,154.39 |
| 105-1171355 | $150,042.38 | $349,727.14 |
| 105-1406955 | $95,021.81 | $251,565.43 |
| 105-2104652 | $169,529.88 | $417,064.64 |
| 105-2005141 | $201,127.55 | $489,382.65 |
| 011-5027859 | $80,531.96 | $202,595.88 |
| 105-1938418 | $144,186.16 | $342,758.48 |
| 105-1091864 | $140,787.66 | $338,322.98 |
| 105-1266680 | $130,713.89 | $328,141.67 |
| 105-1168298 | $127,367.76 | $301,953.28 |
| 105-1236173 | $147,330.97 | $334,715.22 |
| 105-1080181 | $193,877.20 | $453,131.60 |
| 105-1051684 | $215,683.38 | $518,455.14 |
| 105-1052507 | $112,886.33 | $301,658.99 |
| 105-1131123 | $164,922.04 | $366,766.12 |
| 105-0509746 | $113,248.99 | $263,246.97 |
| 105-1646594 | $90,640.80 | $259,121.40 |
| 105-1311671 | $95,557.85 | $259,673.55 |
| 105-1173979 | $146,238.62 | $335,739.12 |
| 105-1464596 | $159,777.62 | $407,805.86 |
| 105-0916728 | $136,821.39 | $396,749.17 |
| 105-1331489 | $93,136.20 | $247,408.60 |
| 105-1232708 | $99,274.70 | $266,324.10 |
| 105-0980262 | $169,157.88 | $386,893.54 |
| 105-1233660 | $118,575.60 | $260,635.80 |

In re Taylor, Bean Whitaker Mortgage Corp., Case no. 3:09-bk-07047-JAF

Exhibit B

Filed Under Seal

| | | |
|---|---|---|
| 105-0847934 | $43,423.31 | $141,269.93 |
| 105-1842962 | $132,229.87 | $345,188.61 |
| 105-1938316 | $133,466.63 | $324,399.89 |
| 105-2181648 | $80,748.08 | $201,244.24 |
| 105-1856643 | $140,207.37 | $323,622.11 |
| 105-1151140 | $155,483.14 | $365,949.42 |
| 105-2087895 | $155,217.10 | $366,540.30 |
| 105-1991573 | $183,678.34 | $414,135.02 |
| 105-0866390 | $115,683.28 | $290,049.84 |
| 105-1812151 | $82,618.03 | $203,854.09 |
| 105-1704555 | $133,367.09 | $341,301.27 |
| 105-1778263 | $207,341.94 | $468,025.82 |
| 105-1597038 | $149,046.11 | $347,438.33 |
| 105-1925840 | $124,039.09 | $351,217.27 |
| 105-2016065 | $132,956.52 | $307,369.56 |
| 105-1875586 | $68,688.58 | $172,065.74 |
| 105-1925601 | $188,205.38 | $480,416.14 |
| 105-1588252 | $41,132.80 | $134,398.40 |
| 105-0960399 | $140,345.43 | $337,036.29 |
| 105-1084358 | $26,028.30 | $89,084.90 |
| 105-1922896 | $175,641.59 | $479,568.77 |
| 105-2010640 | $148,218.49 | $352,655.47 |
| 105-0019959 | $54,067.77 | $140,203.31 |
| 105-2001973 | $100,687.17 | $272,061.51 |
| 105-0181346 | $64,037.93 | $166,590.79 |
| 105-1928774 | $128,899.08 | $327,124.24 |
| 105-1959091 | $108,649.97 | $284,449.91 |
| 105-0969331 | $64,196.59 | $167,144.77 |
| 105-1612214 | $123,403.82 | $310,211.46 |
| 105-1906648 | $136,065.07 | $349,195.21 |
| 105-2578382 | $149,141.97 | $411,225.91 |
| 105-2246682 | $98,882.02 | $266,146.06 |
| 105-2605407 | $179,918.31 | $450,754.93 |
| 105-2258776 | $126,573.97 | $310,721.91 |
| 105-2252012 | $112,748.68 | $309,246.04 |
| 105-2222628 | $20,326.29 | $71,978.87 |
| 105-2529323 | $101,042.04 | $248,126.12 |
| 105-1082176 | $85,233.77 | $226,701.31 |
| 011-5578878 | $90,135.36 | $256,406.08 |
| 105-2515540 | $61,474.55 | $195,423.65 |
| 105-2531815 | $225,914.96 | $513,744.88 |
| 105-2533589 | $117,646.34 | $337,939.02 |
| 105-2542496 | $71,835.49 | $226,506.47 |
| 105-2553605 | $135,136.06 | $367,408.18 |
| 105-2560664 | $235,119.22 | $581,357.66 |
| 105-2563696 | $0.00 | $11,000.00 |

In re Taylor, Bean Whitaker Mortgage Corp., Case no. 3:09-bk-07047-JAF

Exhibit B ·

Filed Under Seal

| | | |
|---|---|---|
| 105-2577618 | $103,844.86 | $293,534.58 |
| 105-2582017 | $136,569.03 | $360,707.09 |
| 105-2617717 | $162,822.91 | $377,968.73 |
| 105-2618857 | $200,523.33 | $520,069.99 |
| 105-2648267 | $124,280.94 | $323,071.82 |
| 105-2678535 | $161,144.65 | $385,933.95 |
| 105-2705177 | $0.00 | $11,000.00 |
| 105-2714133 | $174,694.36 | $434,083.08 |
| 105-2720303 | $137,524.33 | $373,572.99 |
| 105-2729978 | $98,274.43 | $264,823.29 |
| 105-2730273 | $201,720.86 | $516,162.58 |
| 105-2753954 | $160,449.45 | $407,348.35 |
| 105-2755824 | $0.00 | $11,000.00 |
| 105-2765469 | $100,993.14 | $290,429.42 |
| 105-2800923 | $209,433.44 | $527,300.32 |
| 105-2801754 | $137,660.62 | $390,170.86 |
| 105-2803364 | $133,690.24 | $367,070.72 |
| 105-2823527 | $143,070.29 | $365,210.87 |
| 105-2830823 | $195,426.20 | $510,278.60 |
| 105-2837549 | $151,562.68 | $425,688.04 |
| 105-2845081 | $144,188.04 | $345,564.12 |
| 105-2849127 | $185,650.49 | $434,951.47 |
| 105-2857680 | $184,609.73 | $511,259.19 |
| 105-2857730 | $162,281.98 | $449,010.94 |
| 105-1023496 | $20,604.40 | $52,208.80 |
| | | |
| Totals: | $20,008,666.50 | $50,399,770.39 |

# EXHIBIT D

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex rel. COMFORT FRIDDLE<br>and STEPHANIE KENNEDY | )<br>)<br>) |
| | ) |
| Relators, | ) CIVIL ACTION NO. |
| v. | ) 1:06-CV-3023-JEC |
| | ) |
| TAYLOR, BEAN & WHITAKER<br>MORTGAGE CORPORATION;<br>HOME AMERICA MORTGAGE,<br>INC.; GREGORY HICKS; DENNIS<br>MOSELEY; CARL WRIGHT; and<br>JOHN DOE; | )<br>)<br>)<br>)<br>)<br>) |
| | ) |
| Defendants. | ) |

## DECLARATION OF ALLISON CAMPBELL OLSON

1. My name is Allison Campbell Olson. I am over the age of 21. All statements in this declaration are made based upon my personal knowledge. I suffer from no legal disabilities.

2. Home America Mortgage, Inc. ("HAM") is a now-defunct mortgage company that, prior to bankruptcy, offered conventional and non-conventional home loans in Alabama, Florida, Georgia, Kentucky, North Carolina, and Tennessee.

 Initials

3. Taylor Bean & Whitaker Mortgage Corporation ("TBW") is a now-defunct wholesale mortgage lender, which means that, prior to bankruptcy, it provided financing to mortgage companies, including HAM.

4. When I met Greg Hicks, "The Hicks Team" was a group within HAM that worked together and directly for Greg Hicks to process loans. The Team included its own loan officers (including Hicks and Dennis Moseley, who was later made President of HAM) and processors.

5. Around July 2003, I was hired by Greg Hicks to work as a dedicated underwriter for the Hicks Team at HAM.

6. I had been in the mortgage industry since about 1997.

7. After responding to an on-line advertisement seeking underwriters, I interviewed for the position with Greg Hicks and Stephanie Kennedy.

8. At that time, the Hicks Team was comprised of Greg Hicks, Dennis Moseley (loan officer), Justin Price (loan officer), Becky Wright (processor). I was hired to be the designated underwriter.

9. The team was very integrated. It was clear that Greg Hicks was involved in every aspect of the team's work and was calling the shots.

10. Within my first month, I was confronting an obvious case of mortgage fraud. I was reviewing a file from Justin Price and discovered it contained both a

 Initials

Page 2 of 9

Verification of Deposit (supposedly supplied by a bank) and a bank statement that did not match. It was obvious that Price had falsified the VOD.

11. I did not approach Hicks with this file, because it was obvious to me that Hicks was complicit in the fraud. And at that time, I was not sure whether I could trust Stephanie Kennedy either. Accordingly, I took the file to Tim Halstead, Vice President, and asked for direction. I told him that it was clear the Hicks Team was committing fraud. Mr. Halstead said that he would "handle it."

12. Mr. Halstead's way of "handling it" turned out to be to go straight to Justin Price and allow him to correct the file. It was then that I realized that Mr. Halstead was part of the problem as well.

13. There were several similar instances within the first month of my tenure on the Hicks team.

14. In another example, my questioning of an appraisal led to a "Hicks Team Meeting," in which Hicks' attitude and questioning made me feel that my job was being threatened. During that meeting, Stephanie Kennedy intervened and told Hicks that as an underwriter, I had every right and even a duty to question the appraisal. It was at that point that I realized that Stephanie was not part of the fraud.

15. Shortly after that meeting, I was moved off of the Hicks team into the general pool of underwriters, which was run by Stephanie Kennedy. I was glad to

/JD Initials

Page 3 of 9

be moved, because I knew that Kennedy (unlike Hicks) actively tried to stop fraud from occurring.

16. The fraud on the Hicks Team did not stop. On one occasion, Stephanie Kennedy showed me a FICO score that had been obviously whited out.

17. Kennedy was very upset when she saw this fraud going on and complained about it to Greg Hicks in my hearing.

18. Kennedy also complained to Tim Halstead and to Stephanie Gibbons, a TBW employee who was over all of the TBW underwriters. Kennedy was very vocal to all three people – Hicks, Halstead, and Gibbons – that the fraud was rampant and was unacceptable.

19. Kennedy also complained to Hicks in my hearing about illegal use of her login information and FHA number in order to close loans that she herself had already refused to approve. Her number had been used by Halstead and by Hicks to fraudulently approve loans.

20. Because I observed Hicks' reaction firsthand when he was confronted with fraudulent files and paperwork, there was never the slightest doubt in my mind that Hicks knew of the pervasive fraud going on in the office, particularly with the Hicks Team, and that he condoned it. In fact, as I explain below, he often went out of his way to explain how the fraud could be "improved" to avoid detection.

/𝒪𝒟 Initials

Page 4 of 9

21.     During my tenure at Home America's offices, Hicks would come in with some frequency and sit in the office I shared with Stephanie Kennedy to brag about how he could get away with fraud because he was smarter than the people who had been caught.

22.     When Hicks was shown fraudulent files that had been generated internally and "caught" by an underwriter, he would laugh and say "they should have brought this to me before they submitted it, and you would never have caught them."

23.     Hicks would then discuss the specifics of that fraud, often laughing about it, and explain why the perpetrators were "stupid" and explain how he would do it differently to avoid detection. He stated many times that he would never be caught because he was too smart.

24.     Hicks bragged to me frequently about his intelligence and laughed off the fraud on his team. He stated that he could teach a loan officer how to get a deal to work, even if that took fraud to pull it off.

25.     When specific incidents of fraud were brought to his attention, the people in question were never punished. In fact, Hicks would simply direct the fraudulent files to another underwriter to close. This happened dozens of times during my tenure.

/🐝 Initials

Page 5 of 9

26. Hicks worked actively to ensure that all loans closed. If an underwriter questioned a file, it was redirected to Ginny Poore, my replacement on the Hicks Team, for approval. Like Stephanie Kennedy, Ginny Poore had an FHA ID and could close government loans. Unlike Kennedy, Poore was willing to do whatever Hicks asked. Accordingly, Poore underwrote all files from the HAM general pool that had been denied for fraud by underwriters working for Kennedy.

27. This was common knowledge at HAM – if a government-backed loan (or any other loan) could not be closed legitimately, it would be closed by management, either by fraudulent use of Stephanie Kennedy's FHA ID or by directing the file to Ginny Poore.

28. Kennedy tried to monitor fraudulent files to make sure that they were not closed through another underwriter or through her FHA number, but it was virtually impossible to stop because the HAM electronic system did not permit Kennedy to enter any notes about a file, and because Hicks was actively trying to conceal the closings from her.

29. I was in our shared office with Kennedy when she realized that loans had been closed under her ID that she had refused to close. She was visibly upset and angry. She called Greg Hicks in my hearing and had a long argument, and told him very clearly that it was not acceptable to use her FHA number.

 Initials

Page 6 of 9

30. Dennis Moseley was also aware of and assisted in the fraud on the Hicks Team. For example, when a HAM employee, Melinda Luzier, filed for an FHA loan but was unable to qualify, Moseley personally created a new pay stub to reflect an inflated and fraudulent amount.

31. The Luzier fraud was common knowledge around the office, and I heard about it directly from Missy Hall, a Hicks Team processor, who processed the loan and had seen Moseley create the fraudulent document. In fact, when Melinda Luzier was terminated, she threatened to report the fraud to HUD.

32. During my tenure in Hick's office, I saw hundreds of loan applications that were approved, but should have been denied for reasons such as:

    a. Seller's signature obviously inconsistent within the file.

    b. Non-arm's length transactions, such as selling or listing agent who gave a verbal Verification of Employment and were also listed on the title, or having the person providing a Verification of Rent with the same last name as the selling or listing agent.

    c. Job instability and lack of assets being completely disregarded.

    d. Fraudulent Verification of Income.

    e. Fraudulent Verification of Employment and pay stubs.

    f. Files that were clearly short funds to close being approved anyway.

 Initials

g. Files closing despite an active CAIVRS claim (which should have been cleared before allowing the closing of another government loan)

h. Borrowers with obvious credit issues, divorce issues, judgments, garnishments, and liens.

i. Inspection issues

j. Fraudulent tax returns, such as siblings who filed tax returns as "married" and used those tax returns to qualify.

k. Occupancy issues.

l. Loans that appeared legitimate on their face but had been repeatedly denied at other places.

33.    Hicks had a series of affairs with various women in the office, including both "one night stands" and lengthy affairs, but I never heard any rumors of any sexual relationship of any kind between Hicks and Stephanie Kennedy until after Kennedy was fired, at which point Hicks himself attempted to start such a rumor.

34.    Although I was hired by Greg Hicks personally, and brought on to work for the "Hicks Team," my pay stub and W-2 both indicated that I was being paid by Taylor Bean & Whitaker. When I asked why this was being done, I was reassured by Hicks personally that I was a HAM employee, but that it was a "clerical necessity" that I be paid through TBW, because HAM's FHA ID and

 Initials

Page 8 of 9

FHA approval were "through TBW," which I was assured was legal and legitimate because Hicks was an owner of both entities.

I declare under penalty of perjury under the laws of the United States, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 09 day of MARCH, 2012.

Allison Campbell Olson

Initials

Page 9 of 9

# EXHIBIT E

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| ex rel. COMFORT FRIDDLE | ) | |
| and STEPHANIE KENNEDY | ) | |
| | ) | |
| Relators, | ) | CIVIL ACTION NO. |
| v. | ) | 1:06-CV-3023-JEC |
| | ) | |
| TAYLOR, BEAN & WHITAKER | ) | |
| MORTGAGE CORPORATION; | ) | |
| HOME AMERICA MORTGAGE, | ) | |
| INC.; GREGORY HICKS; DENNIS | ) | |
| MOSELEY; CARL WRIGHT; and | ) | |
| JOHN DOE; | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF STEPHANIE KENNEDY

1.      My name is Stephanie Kennedy. I am over the age of 21. All statements in this declaration are made based upon my personal knowledge. I suffer from no legal disabilities.

2.      I am a direct endorsed underwriter, which means I am endorsed by HUD and can underwrite HUD loans.

3.      Home America Mortgage, Inc. ("Home America") is a now-defunct mortgage company that, prior to bankruptcy, originated thousands of loans through various government-insured programs.


____Initials

4.      Greg Hicks owned 90% of Home America and was Home America's principal operator.

5.      Hicks also headed up "The Hicks Team," a sub-group at Home America, of whom Hicks boasted that they could "get any loan into closing."

6.      The Hicks Team was made up of loan officers, processors, and underwriters of Hicks's choosing.

7.      Although it took steps to conceal the fact that it had no underwriters of its own, Home America's loans were actually all underwritten by Taylor, Bean & Whitaker Mortgage Corporation ("Taylor Bean").

8.      In 2002, Greg Hicks hired me as a training manager for Home America employees.

9.      Two weeks after I was hired, Hicks promoted me to Manager of Operations.

10.     In September 2005, I was heavily recruited by SunTrust to join its practice. To keep me from leaving, Hicks agreed to promote me to Vice President of Operations, to increase my compensation, to award me sales options, and to pay me bonuses.

11.     I accepted these terms and refused the job at SunTrust.

12.     In September 2005, Hicks changed my title to Vice President of Operations.

 Initials

13.     Nobody, including Hicks, Home America, and Taylor Bean, ever paid me the agreed upon bonuses (although they were acknowledged by Hicks as being owed) or awarded me the sales options.

14.     In order to qualify for a HUD guarantee against default, borrowers must meet criteria established by the individual programs (such as Freddie Mac, Fannie Mae, the VA, etc.).

15.     The first step is to input a vast amount of borrower/property information into the application engine for the program to demonstrate that the loan is of sufficiently low risk to qualify for the program. For Freddie Mac loans, for example, the application engine is "Loan Prospector" or "LP." For Fannie Mae mortgages, the application engine "Desktop Underwriter" or "DU" is used.

16.     The application engine evaluates the loan based on such factors as credit score, debt-to-asset-ratio, and income stream.

17.     In some instances, Defendants circumvented this safeguard by entering false information into the application engine.

18.     After the data is entered, the application engine may provide a list of "approval conditions" that must be met before the loan can be approved for the program.

19.     In theory, the loan team would then work to meet those conditions –
such as securing evidence to support the assets claimed by the borrower or further
evidence as to employment.

20.     At Home America, these conditions were often ignored or the
necessary documentation was altered (or created whole cloth).

21.     On higher risk loans, the application engine will return a "Refer risk
class," meaning it has identified weaknesses in the borrower's credit reputation
and/or capacity to repay and has rejected the loan.

22.     In some cases, "Refer risk" class is simply due to lack of data, such as
cash-buyers without bank accounts or buyers with no credit history. In those rare
cases, the safeguards may be manually overridden within very strict guidelines, by
having an FHA Direct Endorsement underwriter analyze the entire loan application
to determine if the mortgage qualifies for FHA endorsement in accordance with the
Online HUD Handbook 4155.1/4155.2.

23.     At Home America, Hicks often ordered myself or Ginny Poore
(another FHA direct endorsement underwriter) to approve bad loans.

24.     Hicks told me that if I did not approve these loans, even if I did not
agree that the file should be submitted to HUD, I would be fired.

25.     Later, when I balked at approving loans for unqualified applicants, the
loans were shifted to Poore or Home America employees would simply forge my


Initials

Page **4** of **9**

electronic endorsement of the file by using my password without my knowledge or permission to close the loans. When I protested this behavior, my protests were ignored.

26.    When a Home America employee, Melinda Luzier, filed for an FHA loan but was unable to qualify, Home America president Dennis Moseley personally created a new pay stub to reflect an inflated and fraudulent amount.

27.    I discovered a FICO score in a Hicks Team loan file that had been "whited out" using correction fluid.

28.    I regularly complained about the fraud taking place within the Hicks Team to Greg Hicks, and also to Tim Halstead (Home America Vice President) and Stephanie Gibbons (chief credit officer at Taylor Bean).

29.    I hired Comfort Friddle as a loan processor for Home America in December 2004.

30.    In early 2005, Friddle and I took our concerns about fraudulent appraisals directly to Hicks and Moseley.

31.    We recommended an appraisal review before a particular set of loans went into closing, but Hicks and Moseley refused.

32.    In May 2006, Friddle and I raised the same concerns regarding the same loan officers to Hicks and Moseley.


Initials

Page **5** of **9**

33.     Seeing no action, I initiated an investigation and, along with Friddle and production manager Sandi Flagg, reviewed files and confirmed our concerns, which we then reported to Hicks and Moseley. Still, nothing was done.

34.     In approximately May/June of 2006, Home America received notice that Freddie Mac wanted to audit certain loan files. The audit focused on files that Friddle and I had earlier objected to closing without appraisal reviews.

35.     On July 14, 2006, Jan Kelley (Home America's Manager of Operations) and I approached Friddle, at the direction of Hicks, and told her that she was to be suspended with pay pending an investigation into certain files being audited by Freddie Mac, because Friddle had worked on those files.

36.     Friddle protested that she had raised concerns about the files in question and should not be punished.

37.     Kelley and I told Friddle that everyone knew that she had done nothing wrong, but that since she had worked on the files she could not be present during the investigation.

38.     In the middle of July 2006, Hicks told me to sign off on a loan file that I did not think was appropriate.

39.     Hicks stated that nobody was going to leave the building until I cleared the conditions for closing on the file.


Initials

Page **6** of 9

40.     When I refused because the borrower did not qualify, Hicks said that if I left without clearing the file, I would be terminated.

41.     I refused to sign off on the file and left the building.

42.     Hicks called me that night and left me a voicemail stating that I was not actually fired and asking me to return the next day.

43.     On August 4, 2006, I was working in my office at Home America on a home equity line of credit file with Allison Paul when Hicks stormed into my office and demanded to know why the file was not already closed.

44.     I attempted to tell Hicks what the problems with the file were, but Hicks told me he wanted the file in closing "now."

45.     I refused to close the file because I thought some of the documents in the file were fraudulent. I had contacted the Internal Revenue Service, which had informed me that the tax returns in our loan file did not match the tax returns that the borrower had actually been filed with the IRS.

46.     Hicks stormed out of my office, and minutes later, Moseley came into my office and told me that Hicks did not want me working there anymore and that I was terminated.

47.     On August 31, 2006, after numerous requests for termination papers, I tendered a letter acknowledging my termination from Home America.

Initials

48.     On August 31, 2006, my paycheck was withdrawn from my bank account.

49.     Hicks had a series of affairs with various women in the office, including both "one night stands" and lengthy affairs, but I never had any sexual relationship of any kind with Hicks.

50.     From the day I was hired until the day I was fired, I understood that I was an employee of Home America, and not Taylor Bean. Hicks gave me orders, Hicks gave me promotions, Hicks made numerous threats of firing me or otherwise penalizing me if I did not obey his instructions, Hicks terminated my employment in mid-July 2006, and Hicks re-hired me. My business cards, which were given to me by Home America, stated that I was an employee at Home America.

51.     Lisa Stocks was a member of the Hicks Team in 2004.

52.     Amy Hager was a member of the Hicks Team in 2005.

53.     Dennis Moseley was promoted to President of Home America in January 2006.

54.     During the time that he owned Home America, Greg Hicks was responsible for making every decision at Home America, instituting every policy, and had final say over who was hired and fired.

 Initials

55. Greg Hicks would instruct the loan officers and underwriters to "do what you need to do" to get loans closed, even if it meant not complying with FHA standards.

56. Greg Hicks bragged that he could get loans "in and out in a day," and he instructed the Hicks Team and TBW underwriters to follow his lead.

57. I never witnessed the Range Rover purchased by Home America on Home America property. Greg Hicks drove the Chevy Avalanche as his personal vehicle. Greg Hicks used the trailer purchased by Home America to store his personal motorcycles.

58. I never saw Desirae Hicks at the Home America office, and am not aware of her performing any work as a Home America employee.

I declare under penalty of perjury under the laws of the United States, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this $\frac{4^{th}}{}$ day of October, 2013.



Stephanie Kennedy


Initials

# EXHIBIT F

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| ex rel. COMFORT FRIDDLE | ) | |
| and STEPHANIE KENNEDY | ) | |
| | ) | |
| Relators, | ) | CIVIL ACTION NO. |
| v. | ) | 1:06-CV-3023-JEC |
| | ) | |
| TAYLOR, BEAN & WHITAKER | ) | |
| MORTGAGE CORPORATION; | ) | |
| HOME AMERICA MORTGAGE, | ) | |
| INC.; GREGORY HICKS; DENNIS | ) | |
| MOSELEY; CARL WRIGHT; and | ) | |
| JOHN DOE; | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF COMFORT FRIDDLE**

1.      My name is Comfort Friddle. I am over the age of 21. All statements in this declaration are made based upon my personal knowledge. I suffer from no legal disabilities.

2.      From December 2004 to August 4, 2006, I worked as a loan processor at Home America Mortgage, Inc. ("Home America").

3.      I was hired by Stephanie Kennedy.

4.      Home America is a now-defunct mortgage company that, prior to bankruptcy, originated thousands of loans through various government-insured programs.

Initials

Page **1** of **6**

5.    In order to qualify for a HUD guarantee against default, borrowers must meet criteria established by the individual programs (such as Freddie Mac, Fannie Mae, the VA, etc.).

6.    The first step is to input a vast amount of borrower/property information into the application engine for the program to demonstrate that the loan is of sufficiently low risk to qualify for the program. For Freddie Mac loans, for example, the application engine is "Loan Prospector" or "LP." For Fannie Mae mortgages, the application engine "Desktop Underwriter" or "DU" is used.

7.    The application engine evaluates the loan based on such factors as credit score, debt-to-asset-ratio, and income stream.

8.    In some instances, Home America and Greg Hicks circumvented this safeguard by entering false information into the application engine.

9.    After the data is entered, the application engine may provide a list of "approval conditions" that must be met before the loan can be approved for the program.

10.    In theory, the loan team would then work to meet those conditions – such as securing evidence to support the assets claimed by the borrower or further evidence as to employment.

11.    At Home America, these conditions were often ignored or the necessary documentation was altered (or created whole cloth).

Initials

Page 2 of 6

12.     On higher risk loans, the application engine will return a "Refer risk class," meaning it has identified weaknesses in the borrower's credit reputation and/or capacity to repay and has rejected the loan.

13.     In some cases, Refer risk class is simply due to lack of data, such as cash-buyers without bank accounts or buyers with no credit history. In those rare cases, the safeguards may be manually overridden within very strict guidelines, by having an FHA Direct Endorsement underwriter analyze the entire loan application to determine if the mortgage qualifies for FHA endorsement in accordance with the Online HUD Handbook 4155.1/4155.2.

14.     In early 2005, Kennedy and I took our concerns about fraudulent appraisals directly to Hicks and Moseley.

15.     We recommended an appraisal review before a particular set of loans went into closing, but Hicks and Moseley refused.

16.     In May 2006, Kennedy and I raised the same concerns regarding the same loan officers to Hicks and Moseley.

17.     Seeing no action, Kennedy herself initiated an investigation and, along with myself and production manager Sandi Flagg, reviewed files and confirmed our concerns, which we then reported to Hicks and Moseley. Still, nothing was done.

 Initials

18.    In approximately May/June of 2006, Home America received notice that Freddie Mac wanted to audit certain loan files. The audit focused on files that Kennedy and I had earlier objected to closing without appraisal reviews.

19.    On July 14, 2006, I was approached by Kennedy and Jan Kelly (Home America's Manager of Operations), at the direction of Hicks, and told that I was to be suspended with pay pending an investigation into the files sought by Freddie Mac, because I had been the processor on the files.

20.    I protested that I had raised concerns about the files in question and should not be punished. Kelly and Kennedy assured me that "everyone knew" that I had done nothing wrong, but that since I had worked on the files I could not be present during the investigation.

21.    I was suspended with pay for the next three weeks.

22.    Around three weeks into my suspension, I began to call Home America and to leave voice mail messages, text messages, and emails for Moseley and Kennedy asking for an update on the status of the investigation. Moseley returned my calls and told me to consider it a "paid vacation." Moseley assured me that there was no chance of me being fired and that everything was fine.

23.    I waited another few weeks and then again attempted to contact Home America. I received no response.

Initials

Page 4 of 6

24.     On August 4, 2006, Moseley called me and informed me that although Home America had found nothing in the investigation that pointed to wrongdoing on my part, Home America was going to terminate my employment.

25.     Moseley stated that Home America would pay me a severance, but this offer was rescinded when I refused to sign a full release on August 25, 2006.

26.     My termination papers arrived on August 31, 2006, but they reflected a termination date of August 11, 2006.

27.     When I attempted to obtain COBRA insurance, I discovered that Home America had further backdated my termination date to July 31, effectively preventing me from obtaining insurance.

28.     During the time that he owned Home America, Greg Hicks was responsible for making every decision at Home America, instituting every policy, and had final say over who was hired and fired.

29.     Greg Hicks would instruct the loan officers and underwriters to "do what you need to do" to get loans closed, even if it meant not complying with FHA standards.

30.     Greg Hicks bragged that he could get loans "in and out in a day," and he instructed the Hicks Team and TBW underwriters to follow his lead.

31.     I never witnessed the Range Rover purchased by Home America on Home America property. Greg Hicks drove the Chevy Avalanche as his personal

Initials

Page **5** of **6**

vehicle. Greg Hicks used the trailer purchased by Home America to store his personal motorcycles. Greg Hicks used the Holiday Rambler RV when he traveled.

32.  I never saw Desirae Hicks at the Home America office, and am not aware of her performing any work as a Home America employee.

I declare under penalty of perjury under the laws of the United States, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 4th day of October, 2013.

_____
Comfort Friddle

Page **6** of **6**

_____ Initials

# EXHIBIT G

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

UNITED STATES OF AMERICA
ex. rel. COMFORT FRIDDLE and
STEPHANIE KENNEDY

        Relators,

v.

TAYLOR, BEAN & WHITAKER
MORTGAGE CORPORATION;
HOME AMERICA MORTGAGE,
INC.; GREGORY HICKS; DENNIS
MOSELEY; CARL WRIGHT; and
JOHN DOE;

        Defendants.

CIVIL ACTION NO.
1:06-CV-3023-JEC

## GREGORY HICKS' RESPONSE TO RELATORS' THIRD REQUESTS FOR ADMISSIONS

Defendant Gregory Hicks ("Hicks"), by and through his undersigned

counsel, and pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure,

hereby responds to the "Relators' Third Requests for Admission to Gregory Hicks"

as follows:

### SPECIFIC REQUESTS FOR ADMISSION

36. Admit that you were the owner of Home America Mortgage, Inc.

**Admit in part. I was *an* owner of Home America Mortgage, Inc.**

37. Admit that you were head of a group calling itself the Hicks Team.

**Admit.**

38. Admit that Hicks had the authority to hire and fire employees at Home
America Mortgage, Inc.

**Admit.**

39. Admit that Dennis Moseley had the authority to hire and fire employees at
Home America Mortgage, Inc.

**Deny in part. Admit in part. Dennis Moseley did not have *unlimited*
authority to hire and fire employees. For example, Dennis Moseley did not
have authority to fire me. As to non HAM officers, and as long as the
beginning salaries were within established HAM policies, Dennis Moseley had
limited authority to hire and fire employees at HAM.**

40. Admit that paragraphs 17 through 20 of Relators' Complaint were true when
HAM was an operating company.

**Admit in part. Deny in part. The activities described in these
paragraphs are accurate. However, it is inaccurate to attribute all activities to
HAM. The underwriting activities identified in paragraphs 18 and 19 were
activities of agents of TBW.**

41. Admit that HAM loan officers Andre White and Jermaine Smith were
submitting fraudulent documentation in loan files which showed, *inter alia,*
inflated property values.

**Deny. To the best of my knowledge and belief and without the benefit of the loan files in question, all appraisals in the loan files submitted by Andre White and Jermaine Smith were certified by an independent appraiser. To the best of my knowledge and belief, no conclusive determination was ever made by any person that the loan files submitted by Andre White and Jermaine Smith in fact contained fraudulent documentation showing inflated property values.**

42. Admit that flipping schemes, as described in paragraphs 29 and 30 of Relators' Complaint, are unlawful.

**Deny. A critical reading of paragraphs 29 and 30 fails to identify any unlawful conduct. There is no "flipping scheme" identified in paragraph 29. There is no allegation in either paragraph of *any* false information being submitted on *any* loan application. There is no allegation of *any* loan being insured by *any* Federal agency. There is no allegation of *any* fraud. The simple act of "flipping" a home is not unlawful. There is no unlawful conduct alleged in paragraphs 29 and 30.**

43. Admit that Hicks would not allow drive by appraisals of Dekalb or Fulton County properties for which HAM was originating loans.

**Admit in part. Deny in part. On learning that some "drive-by appraisals" were being conducted I inquired as to whether the guidelines**

applicable to those properties required such type of appraisals. I was informed by a TBW supervisor that not only did the underwriting guidelines not require such appraisals, but to undertake appraisals of that nature on certain properties in certain neighborhoods and not conduct such appraisals in all neighborhoods would expose HAM to accusations of discriminatory leading practices. Accordingly, I issued instructions that such "drive-by appraisals" not be conducted.

44. Admit that in 2006, the Federal Home Loan Mortgage Corporation ("Freddie Mac") conducted an audit of loan files at HAM.

**Admit.**

45. Admit that as part of their 2006 audit, Freddie Mac examined HAM loan files that had required buy-backs based on first payment defaults.

**Deny. HAM had no contract with Freddie Mac.**

46. Admit that as a result of a 2006 Freddie Mac audit, HAM had to buy back several loans.

**Deny. Freddie Mac never issued any "buy-back" letter to HAM. HAM has never been issued a "buy-back" letter from any government agency. HAM did not buy back any loans as a result of the 2006 Freddie Mac audit.**

47. Admit that you charged the amount of the buy back from the 2006 Freddie Mac audit to HAM's Errors and Omissions insurance.

**Deny. No loans were bought back as a result of the 2006 Freddie Mac**

**audit. HAM never made *any* claim on its E&O coverage for any reason.**

48. Admit that Carl Wright falsified the VOE on a loan file.

**I can neither admit or deny as I am without personal knowledge;**

**therefore, I deny. To the best of my knowledge and belief Carl Wright**

**did not falsify any VOE on a HAM loan file.**

49. Admit that you have closed loans on "owner occupied" properties that you did

not actually occupy.

**Admit in part. Deny in part. The assertion is very ambiguous. "Owner**

**occupied" by whom? What does "owner occupy" mean? Is that a personal**

**residence? Is it a "primary personal residence"? I purchased many homes at**

**different times. Some homes I purchased I used a $1M line of credit at 9 ¼ %**

**interest with a 1 year balloon note. This line of credit required a pay-back in**

**less than three years and thus did not constitute a "mortgage."**

50. Admit that you have owned more than one "owner occupied" properties at a

single time.

**Admit in part. Deny in part. See answer to 49.**

51. Admit that you have owned five "owner occupied" properties at a single time.

**Deny.**

I, Gregory Hicks, having read the above and foregoing responses and pursuant to

Title 28 U.S.C. § 1746, do declare and verify under penalty of perjury under the

law of the United States of America that the answers to the requests are true and

correct.

_____

Gregory Hicks

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**UNITED STATES OF AMERICA
ex. rel. COMFORT FRIDDLE and
STEPHANIE KENNEDY**

        **Relators,**

v.

**TAYLOR, BEAN & WHITAKER
MORTGAGE CORPORATION;
HOME AMERICA MORTGAGE,
INC.; GREGORY HICKS; DENNIS
MOSELEY; CARL WRIGHT; and
JOHN DOE;**

        **Defendants.**

**Civil Action No.
1:06-CV-3023-JEC**

### CERTIFICATE OF SERVICE

I hereby certify that on February _____, 2012, I mailed Gregory

Hicks' Response to Relators' Third Requests for Admission to Relators via the

first class mail, postage paid, to the following counsel of record:

Daniel A. Caldwell, III
Assistant U.S. Attorney
Northern District of Georgia
600 Richard B. Russell Building
75 Spring Street SW
Atlanta, Georgia 30303

Julie Bracker
Mike Bothwell
Attorneys for Relators
304 Macy Drive
Roswell, Georgia 30076


WILMER PARKER
75 14ᵗʰ Street, N.E.
Suite 2500
Atlanta, Georgia 30309
(404) 875-2700
Fax: (404) 875-8757
parker@mjplawyers.com

Georgia Bar No. 563550
**MALOY JENKINS PARKER**
Attorney for Defendant

# EXHIBIT H

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**UNITED STATES OF AMERICA**
**ex. rel. COMFORT FRIDDLE and**
**STEPHANIE KENNEDY**

            **Relators,**

**v.**

**TAYLOR, BEAN & WHITAKER**
**MORTGAGE CORPORATION;**
**HOME AMERICA MORTGAGE,**
**INC.; GREGORY HICKS; DENNIS**
**MOSELEY; CARL WRIGHT; and**
**JOHN DOE;**

            **Defendants.**

**CIVIL ACTION NO.**
**1:06-CV-3023-JEC**

## GREGORY HICKS' RESPONSES TO RELATORS' SECOND
## INTERROGATORIES TO GREGORY HICKS

Defendant Gregory Hicks hereby responds to "Relators' Second

Interrogatories To Gregory Hicks" as follows:

### GENERAL OBJECTIONS

1. Hicks objects to these discovery requests to the extent that they seek

information and documents protected from disclosure by the attorney-client

privilege. Such information and documents will not be disclosed.

2. Hicks objects to these discovery requests to the extent that they seek

information and documents which are protected from disclosure by the attorney

work product doctrine. Such information and documents will not be disclosed.

3. Hicks objects to these discovery requests to the extent that they are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and purport to place obligations upon Hicks which are broader than the scope of the Federal Rules of Civil Procedure.

4. Hicks objects to these discovery requests to the extent that they are overly broad, unduly burdensome, vague, and ambiguous.

5. Hicks objects to these discovery requests to the extent that the definitions stated by Comfort Friddle ("Relator Friddle") and Stephanie Kennedy ("Relator Kennedy"; collectively with Relator Friddle, the "Relators") are not comporting with the Federal Rules of Civil Procedure and/or are inaccurate or inappropriate and further are not accepted or agreed to in any form by Hicks.

6. Hicks objects to this discovery to the extent that the discovery requests seek information that is within the control and custody of Relators.

7. Hicks objects to the "Instructions" provided by Relators to the extent that said Instructions call for responses beyond what is required by the Federal Rules of Civil Procedure.

8. Hicks incorporates the foregoing General Objections into each and every response hereinafter as if fully and expressly set forth therein.

## SPECIFIC INTERROGATORIES

6. For each Request for Admission served upon you by Relators that you do not unequivocally admit, describe in detail the reason(s) you do not admit, any and all facts that support your position, and if you cannot answer due to lack of sufficient knowledge, what reasonable inquiry you undertook to obtain the requisite information.

36. **I was *an* owner (90%) of Home America Mortgage, Inc. I was not *the* owner of HAM.**

39. **Dennis Moseley did not have unlimited authority to hire and fire employees. See answer given in request for admission.**

40. **TBW conducted all underwriting activities. See answer given in request for admission.**

41. **I have no knowledge that any appraisals were in fact inflated. I do not have access to the HAM loan files. See answer given in request for admission.**

42. **See answer given in request for admission.**

43. **See answer given in request for admission.**

45. **HAM had no contact with Freddie Mac. TBW never required HAM to buy-back any loans. Without access to any of the loan contracts, I do not recall whether there were any buy-back clauses.**

46. **HAM did not buy back any "loans" as a result of the 2006 Freddie Mac audit.**

47. **HAM never made any claim on its E&O coverage.**

48. **See answer given in request for admission.**

49. **See answer given in request for admission.**

50. **See answer given in request for admission.**

51. **I have never owned five "owner occupied" properties at a single time.**

I, Gregory Hicks, having read the above and foregoing responses and pursuant to Title 28 U.S.C. § 1746, do declare and verify under penalty of perjury under the law of the United States of America that the answers to the interrogatories are true and correct.

Gregory Hicks

Respectfully submitted,

/s/ Wilmer Parker
Wilmer Parker
Georgia Bar No. 563550

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA ex. rel. COMFORT FRIDDLE and STEPHANIE KENNEDY**<br><br>**Relators,**<br><br>v.<br><br>**TAYLOR, BEAN & WHITAKER MORTGAGE CORPORATION; HOME AMERICA MORTGAGE, INC.; GREGORY HICKS; DENNIS MOSELEY; CARL WRIGHT; and JOHN DOE;**<br><br>**Defendants.** | **CIVIL ACTION NO.<br>1:06-CV-3023-JEC** |

**CERTIFICATE OF SERVICE**

I hereby certify that on February _____ 14 _____, 2012, I mailed GREGORY HICKS'

RESPONSES TO RELATORS' SECOND INTERROGATORIES TO GREGORY

HICKS to Relators via the first class mail, postage paid, to the following counsel

of record:

Daniel A. Caldwell, III
Assistant U.S. Attorney
Northern District of Georgia
600 Richard B. Russell Building
75 Spring Street SW
Atlanta, Georgia 30303

Julie Bracker
Mike Bothwell
Attorneys for Relators
304 Macy Drive
Roswell, Georgia 30076

WILMER PARKER
Georgia Bar No. 563550
**MALOY JENKINS PARKER**
Attorney for Defendant

75 14ᵗʰ Street, N.E.
Suite 2500
Atlanta, Georgia 30309
(404) 875-2700
Fax: (404) 875-8757
parker@mjplawyers.com

# EXHIBIT I

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

UNITED STATES OF AMERICA )
ex rel. COMFORT FRIDDLE )
and STEPHANIE KENNEDY )
                     )
            Relators, )    CIVIL ACTION NO.
                     )    1:06-CV-3023-JEC
v.                    )
                     )
TAYLOR, BEAN & WHITAKER )
MORTGAGE CORPORATION; )
HOME AMERICA MORTGAGE, )
INC.; GREGORY HICKS; DENNIS )
MOSELEY; CARL WRIGHT; and )
JOHN DOE; )
                     )
          Defendants. )

### DECLARATION OF JOEL FOREMAN

1.    My name is Joel Foreman. I am over the age of 21. All statements in

this declaration are made based upon my personal knowledge. I suffer from no

legal disabilities.

2.    I am an attorney for the United States Department of Housing and

Urban Development ("HUD").

3.    I produced documents Bates labeled HUD 000001 through HUD

080485 ("the Documents") in response to a subpoena served upon HUD in this

litigation, 1:06-CV-3023-JEC.

Initials 

4. The Documents consist of business records that Taylor, Bean & Whitaker Mortgage Corp. ("TBW") and Home America Mortgage, Inc. ("HAM") provided to HUD or the servicers of HAM/TBW loans as part of the regular practice of originating and processing government-insured home loans and were created contemporaneous with this practice. In the case of loans files provided to servicers, but not to HUD, HUD obtained copies of such documents in the normal course of its investigative functions.

5. As part of the subpoena production, I also compiled a list of damages to HUD for the loans contained in the Documents and attached hereto as Exhibit A. The amount of the damages stated in Exhibit A is segregated by loan number and identifies the amount of the net insurance claim HUD paid under the heading "Conveyed" in Exhibit A. Exhibit A also identifies any subsequent damages HUD incurred in holding and selling the collateral properties, and any amounts received in mitigation.

6. The information used to create Exhibit A was taken from HUD's computer systems, which assembled the information from documents submitted by the relevant mortgage servicer for each loan and HUD's asset management contractors. HUD stores this information as part of its regular practice as the insurer for the loans in question. This information is kept by HUD for the purpose of determining the cost to HUD of defaults on loans, including those described in

Initials 

Page 2 of 3

the Documents.  I compiled this list from data obtained from HUD computer systems, in the same fashion as any other list of damages would be in the normal course of compiling damages for loans insured by HUD.

I declare under penalty of perjury under the laws of the United States, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 13th day of February, 2012.

Joel Foreman

Initials