# EXHIBIT L

**HUD/VA Addendum to Uniform Residential Loan Application**

OMB Approval No.          VA: 2900-0144
HUD: 2502-0059

| Part I - Identifying Information (mark the type of application) | 2. Agency Case No. (include any suffix) | 3. Lender's Case No. | 4. Section of the Act (for HUD cases) |
|---|---|---|---|

1. ☐ VA Application for VA Home Loan Guaranty    ☒ HUD/FHA Application for Insurance under the National Housing Act

2. Agency Case No. (include any suffix): 105-1674225

3. Lender's Case No.: 486176

4. Section of the Act (for HUD cases): 203(b) Interest Rate

5. Borrower's Name & Present Address (include zip code)
Robyn Thornton
James Thornton

Lawrenceville, GA

6. Property Address (including name of subdivision, lot & block no. & zip code)

Loganville, GA

| 7. Loan Amount (include the UFMIP for HUD or Funding Fee if for VA) | 8. Interest Rate | 9. Proposed Maturity |
|---|---|---|
| $152,453.00 | 6.0000% | 30 yrs. 360 mos. |

| 10. Discount Amount (only if borrower is permitted to pay) | 11. Amount of Up Front Premium | 12a. Amount of Monthly Premium | 12b. Term of Monthly Premium |
|---|---|---|---|
| | $2,253.00 | $62.27 / mo. | 360 months |

13. Lender's I.D. Code: 1633000003

14. Sponsor / Agent I.D. Code: 7499100008

15. Lender's Name & Address (include zip code)
Home America
253 W. Crogan St.
Lawrenceville, GA  30045

16. Name & Address of Sponsor / Agent
Taylor, Bean & Whiaker Mortgage Corp.
1417 North Magnolia Ave.
Ocala, FL 34475

17. Lender's Telephone Number
(352) 351-1109

Type or Print all entries clearly

**VA:** The veteran and the lender hereby apply to the Secretary of Veterans Affairs for Guaranty of the loan described here under Section 3710, Chapter 37, Title 38, United States Code, to the full extent permitted by the veteran's entitlement and severally agree that the Regulations promulgated pursuant to Chapter 37, and in effect on the date of the loan shall govern the rights, duties, and liabilities of the parties.

| 18. First Time Homebuyer? | 19. VA Only Title will be Vested in: | 20. Purpose of Loan (blocks 9 - 12 are for VA loans only) | | |
|---|---|---|---|---|
| a. ☒ Yes | ☐ Veteran | 1) ☐ Purchase Existing Home Previously Occupied | 7) ☐ Construct Home (proceeds to be paid out during construction) | |
| b. ☐ No | ☐ Veteran & Spouse | 2) ☐ Finance Improvements to Existing Property | 8) ☐ Finance Co-op Purchase | |
| | ☐ Other (specify) | 3) ☐ Refinance (Refi) | 9) ☐ Purchase Permanently Sited Manufactured Home | |
| | | 4) ☐ Purchase New Condo. Unit | 10) ☐ Purchase Permanently Sited Manufactured Home & Lot | |
| | | 5) ☐ Purchase Existing Condo. Unit | 11) ☐ Refi. Permanently Sited Manufactured Home to Buy Lot | |
| | | 6) ☒ Purchase Existing Home Not Previously Occupied | 12) ☐ Refi. Permanently Sited Manufactured Home/Lot Loan | |

**Part II - Lender's Certification**

21. The undersigned lender makes the following certifications to induce the Department of Veterans Affairs to issue a certificate of commitment to guarantee the subject loan or a Loan Guaranty Certificate under Title 38, U.S. Code, or to induce the Department of Housing and Urban Development - Federal Housing Commissioner to issue a firm commitment for mortgage insurance or a Mortgage Insurance Certificate under the National Housing Act.

A. The loan terms furnished in the Uniform Residential Loan Application and this Addendum are true, accurate and complete.

B. The information contained in the Uniform Residential Loan Application and this Addendum was obtained directly from the borrower by a full-time employee of the undersigned lender or its duly authorized agent and is true to the best of the lender's knowledge and belief.

C. The credit report submitted on the subject borrower (and co-borrower, if any) was ordered by the undersigned lender or its duly authorized agent directly from the credit bureau which prepared the report and was received direct from said credit bureau.

D. The verification of employment and verification of deposits were requested and received by the lender or its duly authorized agent without passing through the hands of any third persons and are true to the best of the lender's knowledge and belief.

Items "H" through "J" are to be completed as applicable for VA loans only.

H. The names and functions of any duly authorized agents who developed on behalf of the lender any of the information or supporting credit data submitted are as follows:

E. The Uniform Residential Loan Application and this Addendum were signed by the borrower after all sections were completed.

F. This proposed loan to the named borrower meets the income and credit requirements of the governing law in the judgment of the undersigned.

G. To the best of my knowledge and belief, I and my firm and its principals: (1) are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from covered transactions by any Federal department or agency; (2) have not, within a three-year period preceding this proposal, been convicted of or had a civil judgment rendered against them for (a) commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, State or local) transaction or contract under a public transaction; (b) violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property; (3) are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State or local) with commission of any of the offenses enumerated in paragraph G(2) of this certification; and (4) have not, within a three-year period preceding this application/proposal, had one or more public transactions (Federal, State or local) terminated for cause or default.

Name & Address

Function (e.g., obtained information on the Uniform Residential Loan Application, ordered credit report, verifications of employment, deposits, etc.)

If no agent is shown above, the undersigned lender affirmatively certifies that all information and supporting credit data were obtained directly by the lender.

I. The undersigned lender understands and agrees that it is responsible for the omissions, errors, or acts of agents identified in item H as to the functions with which they are identified.

J. The proposed loan conforms otherwise with the applicable provisions of Title 38, U.S. Code, and of the regulations concerning guaranty or insurance of loans to veterans.

| Signature of Officer of Lender | Title of Officer of Lender | Date (mm/dd/yyyy) |
|---|---|---|
| | | 11/05/03 |

VA Form 26-1802a (3/98)    ITEM T7392L1 (0204)

*(Page 1 of 4 pages)*

To Order Call: 1-800-530-9393 ▪ Fax 616-791-1131

GREATLAND ▪
form HUD-92900-A (04/2002)

*091001486176*

RT JT

**Part III - Notices to Borrowers.** Public reporting burden for this collection of information is estimated to average 6 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. This agency may not conduct or sponsor, and a person is not required to respond to, a collection information unless that collection displays a valid OMB control number.

**Privacy Act Information.** The information requested on the Uniform Residential Loan Application and this Addendum is authorized by 38 U.S.C. 3710 (if for DVA) and 12 U.S.C. 1701 et seq. (if for HUD/FHA). The Debt Collection Act of 1982, Pub. Law 97-365, and HUD's Housing and Community Development Act of 1987, 42 U.S.C. 3543, require persons applying for a federally insured or guaranteed loan to furnish his/her social security number (SSN). You must provide all the requested information, including your SSN. HUD and/or VA may conduct a computer match to verify the information you provide. HUD and/or VA may disclose certain information to Federal, State and local agencies when relevant to civil, criminal, or regulatory investigations and prosecutions. It will not otherwise be disclosed or released outside of HUD or VA, except as required and permitted by law. The information will be used to determine whether you qualify as a mortgagor. Any disclosure of information outside VA or HUD/FHA will be made only as permitted by law. Failure to provide any of the requested information, including SSN, may result in disapproval of your loan application. This is notice to you as required by the Right to Financial Privacy Act of 1978 that VA or HUD/FHA has a right of access to financial records held by financial institutions in connection with the consideration or administration of assistance to you. Financial records involving your transaction will be available to VA and HUD/FHA without further notice or authorization but will not be disclosed or released by this institution to another Government Agency or Department without your consent except as required or permitted by law.

**Caution.** Delinquencies, defaults, foreclosures and abuses of mortgage loans involving programs of the Federal Government can be costly and detrimental to your credit, now and in the future. The lender in this transaction, its agents and assigns as well as the Federal Government, its agencies, agents and assigns, are authorized to take any and all of the following actions in the event loan payments become delinquent on the mortgage loan described in the attached application: (1) Report your name and account information to a credit bureau; (2) Assess additional interest and penalty charges for the period of time that payment is not made; (3) Assess charges to cover additional administrative costs incurred by the Government to service your account; (4) Offset amounts owed to you under other Federal programs; (5) Refer your account to a private attorney, collection agency or mortgage servicing agency to collect the amount due, foreclose the mortgage, sell the property and seek judgment against you for any deficiency; (6) Refer your account to the Department of Justice for litigation in the courts; (7) If you are a current or retired Federal employee, take action to offset your salary, or civil service retirement benefits; (8) Refer your debt to the Internal Revenue Service for offset against any amount owed to you as an income tax refund; and (9) Report any resulting written-off debt of yours to the Internal Revenue Service as your taxable income. All of these actions can and will be used to recover any debts owed when it is determined to be in the interest of the lender and/or the Federal Government to do so.

## Part IV - Borrower Certification

**22. Complete the following for a HUD/FHA Mortgage.**

22a. Do you own or have you sold other real estate within the past 60 months on which there was a HUD/FHA mortgage? [ ] Yes [X] No

Is it to be sold? [ ] Yes [X] No

22b. Sales Price $

22c. Original Mortgage Amount $

22d. Address

22e. If the dwelling to be covered by this mortgage is to be rented, is it a part of, adjacent or contiguous to any project subdivision or group of concentrated rental properties involving eight or more dwelling units in which you have any financial interest? [ ] Yes [X] No If "Yes" give details.

22f. Do you own more than four dwellings ? [ ] Yes [X] No If "Yes" submit form HUD-92561.

**23. Complete for VA-Guaranteed Mortgage.** Have you ever had a VA home Loan? [ ] Yes [X] No

**24. Applicable for Both VA & HUD.** As a home loan borrower, you will be legally obligated to make the mortgage payments called for by your mortgage loan contract. The fact that you dispose of your property after the loan has been made **will not relieve you of liability for making these payments. Payment of the loan in full is ordinarily the way liability on a mortgage note is ended.** Some home buyers have the mistaken impression that if they sell their homes when they move to another locality, or dispose of it for any other reasons, they are no longer liable for the mortgage payments and that liability for these payments is solely that of the new owners. Even though the new owners may agree in writing to assume liability for your mortgage payments, this assumption agreement will not relieve you from liability to the holder of the note which you signed when you obtained the loan to buy the property. Unless you are able to sell the property to a buyer who is acceptable to VA or to HUD/FHA and who will assume the payment of your obligation to the lender, you will not be relieved from liability to repay any claim which VA or HUD/FHA may be required to pay your lender on account of default in your loan payments. **The amount of any such claim payment will be a debt owed by you to the Federal Government.** This debt will be the object of established collection procedures.

**25. I, the Undersigned Borrower(s) Certify that:**

(1) I have read and understand the foregoing concerning my liability on the loan and Part III Notices to Borrowers.

(2) **Occupancy:** (for VA only — mark the applicable box)

[ ] (a) I now actually occupy the above-described property as my home or intend to move into and occupy said property as my home within a reasonable period of time or intend to reoccupy it after the completion of major alterations, repairs or improvements.

[ ] (b) My spouse is on active military duty and in his or her absence, I occupy or intend to occupy the property securing this loan as my home.

[ ] (c) I previously occupied the property securing this loan as my home. (for interest rate reductions)

[ ] (d) While my spouse was on active military duty and unable to occupy the property securing this loan, I previously occupied the property that is securing this loan as my home. (for interest rate reduction loans)

**Note:** If box 2b or 2d is checked, the veteran's spouse must also sign below.

(3) Mark the applicable box (not applicable for Home Improvement or Refinancing Loan) I have been informed that ($ ) is:

[ ] the reasonable value of the property as determined by VA or;

[X] the statement of appraised value as determined by HUD / FHA.

**Note:** If the contract price or cost exceeds the VA "Reasonable Value" or HUD/FHA "Statement of Appraised Value", mark either item (a) or item (b), whichever is applicable.

[X] (a) I was aware of this valuation when I signed my contract and I have paid or will pay in cash from my own resources at or prior to loan closing a sum equal to the difference between the contract purchase price or cost and the VA or HUD/FHA established value. I do not and will not have outstanding after loan closing any unpaid contractual obligation on account of such cash payment;

[ ] (b) I was not aware of this valuation when I signed my contract but have elected to complete the transaction at the contract purchase price or cost. I have paid or will pay in cash from my own resources at or prior to loan closing a sum equal to the difference between contract purchase price or cost and the VA or HUD/FHA established value. I do not and will not have outstanding after loan closing any unpaid contractual obligation on account of such cash payment.

(4) Neither I, nor anyone authorized to act for me, will refuse to sell or rent, after the making of a bona fide offer, or refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny the dwelling or property covered by his/her loan to any person because of race, color, religion, sex, handicap, familial status or national origin. I recognize that any restrictive covenant on this property relating to race, color, religion, sex, handicap, familial status or national origin is illegal and void and civil action for preventive relief may be brought by the Attorney General of the United States in any appropriate U.S. District Court against any person responsible for the violation of the applicable law.

(5) All information in this application is given for the purpose of obtaining a loan to be insured under the National Housing Act or guaranteed by the Department of Veterans Affairs and the information in the Uniform Residential Loan Application and this Addendum is true and complete to the best of my knowledge and belief. Verification may be obtained from any source named herein.

(6) **For HUD Only** (for properties constructed prior to 1978) I have received information on lead paint poisoning. [ ] Yes [X] Not Applicable

~~(7) I am aware that neither HUD / FHA nor VA warrants the condition or value of the property~~

Robyn Thornton [signature]

Signature(s) of Borrower(s) -- **Do not sign unless this application is fully completed.** Read the certifications carefully & review accuracy of this application.

Date: NOV 25 2003

Federal statutes provide severe penalties for any fraud, intentional misrepresentation, or criminal connivance or conspiracy purposed to influence the issuance of any guaranty or insurance by the VA Secretary or the HUD/FHA Commissioner.

**Direct Endorsement Approval for a HUD/FHA-Insured Mortgage**

U.S. Department of Housing and Urban Development

| Part I - Identifying Information (mark the type of application) | | 2. Agency Case No. (Include any suffix) | 3. Lender's Case No. | 4. Section of the Act (for HUD cases) |
|---|---|---|---|---|
| 1. | [X] HUD/FHA Application for Insurance under the National Housing Act | 105-1674225 | 486176 | 203(b) Interest Rate |

| II. Borrower's Name & Present Address (Include zip code) | 7. Loan Amount (Include the UFMIP) | 8. Interest Rate | 9. Proposed Maturity |
|---|---|---|---|
| Robyn Thornton | $162,453.00 | 6.0000% | 30 yrs. 360 mos. |
| James Thornton | | | |
| Lawrenceville, GA | | | |

| 5. Property Address (Including name of subdivision, lot & block no. & zip code) | 10. Discount Amount (only if borrower is permitted to pay) | 11. Amount of Up Front Premium | 12a. Amount of Monthly Premium | 12b. Term of Monthly Premium |
|---|---|---|---|---|
| Loganville, GA | $2,253.00 | | $62.90 58 ½ / mo. | 360 months |

| 13. Lender's I.D. Code | 14. Sponsor / Agent I.D. Code |
|---|---|
| 1633000005 | 7499100008 |

16. Lender's Name & Address (Include zip code)

Home America
253 W. Crogan St.
Lawrenceville, GA 30045

**Type or Print all entries clearly**

15. Name & Address of Sponsor / Agent

TAYLOR, BEAN & WHITAKER
1417 N. MAGNOLIA AVE.
OCALA, FL 34475

17. Lender's Telephone Number

(352) 351-1109

[X] **Approved:** Approved subject to the additional conditions stated below, if any.

Date Mortgage Approved _____11/21/2003_____   Date Approval Expires _____12/04/2003_____

| [ ] Modified & Approved as follows: | Loan Amount (Include UFMIP) | Interest Rate | Proposed Maturity | Monthly Payment | Amount of Up front Premium | Amount of Monthly Premium | Term of Monthly Premium |
|---|---|---|---|---|---|---|---|
| | $ | 6.0000% | Yrs. 360 Mos | $914.03 | $ | $62.23 | 0 months |

**Additional Conditions:**

[X] If this is proposed construction, the builder has certified compliance with HUD requirements on form HUD-92541.

[ ] If this is new construction, the lender certifies that the property is 100% complete (both on site and off site improvements) and the property meets HUD's minimum property standards.

[ ] Form HUD-92544, Builder's Warranty is required.

[ ] The property has a 10-year warranty.

[X] Owner-Occupancy Not required (item (b) of the Borrower's Certificate does not apply).

[ ] The mortgage is a high loan-to-value ratio for non-occupant mortgagor in military.

[ ] Other: (specify)

[X] This mortgage was rated as an "accept" or "approve" by a FHA-approved automated underwriting system. As such, the undersigned representative of the mortgagee certifies to the integrity of the data supplied by the lender used to determine the quality of the loan, that a Direct Endorsement Underwriter reviewed the appraisal (if applicable) and further certifies that this mortgage is eligible for HUD mortgage insurance under the Direct Endorsement program. I hereby make all certifications required for this mortgage as set forth in HUD Handbook 4000.4

Mortgagee Representative     **Allison Paul**   Allison Paul

FHA-Approved Automated Underwriting System **FNMA Desktop Underwriter**   TNN

[ ] This mortgage was rated as a "refer" or "caution" by a FHA-approved automated underwriting system, and/or was manually underwritten by a Direct Endorsement underwriter. As such, the undersigned Direct Endorsement underwriter certifies that I have personally reviewed the appraisal report (if applicable), credit application, and all associated documents and have used due diligence in underwriting this mortgage. I find that this mortgage is eligible for HUD mortgage insurance under the Direct Endorsement program and I hereby make all certifications required for this mortgage as set forth in HUD Handbook 4000.4

Direct Endorsement Underwriter _____   DE's CHUMS ID Number _____

FHA-Approved AUS (if appropriate) _____

**The Mortgagee, its owners, officers or directors [ ] do [X] do not have a financial interest in or a relationship, by affiliation or ownership, with the builder or seller involved in this transaction.**

ITEM T3392L3 (0204)     *(Page 3 of 4 pages)*     GREATLAND ■
To Order Call: 1-800-530-9393 ▯ ▯ Fax:616-791-1131     form HUD-92900-A (04/2002)

**Borrower's Certificate:**

The undersigned certifies that:

(a) I will not have outstanding any other unpaid obligations contracted in connection with the mortgage transaction or the purchase of the said property except obligations which are secured by property or collateral owned by me independently of the said mortgaged property, or obligations approved by the Commissioner;

(b) One of the undersigned intends to occupy the subject property, (note: this item does not apply if owner-occupancy is not required by the commitment);

(c) All charges and fees collected from me as shown in the settlement statement have been paid by my own funds, and no other charges have been or will be paid by me in respect to this transaction;

(d) Neither I, nor anyone authorized to act for me, will refuse to sell or rent, after the making of a bona fide offer, or refuse to negotiate for the sale or rental of or otherwise make unavailable or deny the dwelling or property covered by this loan to any person because of race, color, religion, sex, handicap, familial status or national origin. I recognize that any restrictive covenant on this property relating to race, color, religion, sex, handicap, familial status or national origin is illegal and void and any such covenant is hereby specifically disclaimed. I understand that civil action for preventative relief may be brought by the Attorney General of the United States in any appropriate U.S. District Court against any person responsible for a violation of this certificate.

Borrower'(s) Signature(s) & Date

NOV 2 5 2003

**Lender's Certificate:**

The undersigned certifies that to the best of its knowledge:

(a) The statements made in its application for insurance and in this Certificate are true and correct;

(b) The conditions listed above or appearing in any outstanding commitment issued under the above case number have been fulfilled;

(c) Complete disbursement of the loan has been made to the borrower, or to his/her creditors for his/her account and with his/her consent;

(d) The security instrument has been recorded and is a good and valid first lien on the property described;

(e) No charge has been made to or paid by the borrower except as permitted under HUD regulations;

(f) The copies of the credit and security instruments which are submitted herewith are true and exact copies as executed and filed for record;

(g) It has not paid any kickbacks, fee or consideration of any type, directly or indirectly, to any party in connection with this transaction except as permitted under HUD regulations and administrative instructions.

I, the undersigned, as authorized representative of **Home America Mortgage, Inc.**

, mortgagee

at this time of closing of this mortgage loan, certify that I have personally reviewed the mortgage loan documents, closing statements, application for insurance endorsement, and all accompanying documents. I hereby make all certifications required for this mortgage as set forth in HUD Handbook 4000.4.

| Lender's Name | | |
|---|---|---|
| **Home America Mortgage, Inc.** | Note: If the approval is executed by an agent in the name of lender, the agent must enter the lender's code number and type. | |
| Title of Lender's Officer | | |
| Signature of Lender's Officer | Date 11/25/03 | Code Number (5 digits) | Type |

HUD 006638

# EXHIBIT M

3/30/2006
11:32 AM

| Client: | 44240 - HOME AMERICA MORTGAGE, INC. |
| Engagement: | 2005 AUDIT - HOME AMERICA MORTGAGE, INC. |
| Trial Balance: | Trial Balance Database |
| Workpaper: | A-2 - Income Tax Working Trial balance |

| Account | Description | PP-FINAL | UNADJ | FINAL | JE Ref # | FTJE | FTAX |
|---|---|---|---|---|---|---|---|
| | | 12/31/2004 | 12/31/2005 | 12/31/2005 | | | 12/31/2005 |
| **Group : [5210]** | **Accrued Wages & Commissions** | | | | | | |
| Subgroup : None | | | | | | | |
| 40700 | Accrued Salaries | (564,100.77) | (285,378.00) | (292,176.00) | | 0.00 | (292,176.00) |
| Subtotal : None | | (564,100.77) | (285,378.00) | (292,176.00) | | 0.00 | (292,176.00) |
| Total [5210] Accrued Wages & Commissions | | (564,100.77) | (285,378.00) | (292,176.00) | | 0.00 | (292,176.00) |
| **Group : [5220]** | **Deferred loan revenue** | | | | | | |
| Subgroup : None | | | | | | | |
| 41010 | Deferred Loan Revenue | (51,056.00) | (51,056.00) | (50,703.00) | | 0.00 | (50,703.00) |
| Subtotal : None | | (51,056.00) | (51,056.00) | (50,703.00) | | 0.00 | (50,703.00) |
| Total [5220] Deferred loan revenue | | (51,056.00) | (51,056.00) | (50,703.00) | | 0.00 | (50,703.00) |
| **Group : [5410]** | **Deferred Taxes** | | | | | | |
| Subgroup : None | | | | | | | |
| 36000 | Deferred tax benefit | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 |
| 41000 | Deferred Income Taxes | (212,862.00) | (212,862.00) | (214,026.00) | | 0.00 | (214,026.00) |
| Subtotal : None | | (212,862.00) | (212,862.00) | (214,026.00) | | 0.00 | (214,026.00) |
| Total [5410] Deferred Taxes | | (212,862.00) | (212,862.00) | (214,026.00) | | 0.00 | (214,026.00) |
| **Group : [5290]** | **Income taxes payable** | | | | | | |
| Subgroup : None | | | | | | | |
| 41050 | Income taxes payable | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 |
| 42300 | Federal Income Taxes Payable | (519,921.71) | (519,922.00) | (773,255.00) | | 0.00 | (773,255.00) |
| 42400 | State Income Taxes Payable | (80,457.49) | (80,457.00) | (132,535.00) | | 0.00 | (132,535.00) |
| Subtotal : None | | (600,379.20) | (600,379.00) | (905,790.00) | | 0.00 | (905,790.00) |
| Total [5290] Income taxes payable | | (600,379.20) | (600,379.00) | (905,790.00) | | 0.00 | (905,790.00) |
| **Group : [5300]** | **Other accrued liabilities** | | | | | | |
| Subgroup : None | | | | | | | |
| 40650 | Other Accrued Expenses | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 |
| 42200 | 401k Payable | (15,047.99) | 206,075.00 | (4,144.62) | | 0.00 | (4,144.62) |
| 43100 | GA Per Loan Fees | (14,040.00) | (14,040.00) | (14,040.00) | | 0.00 | (14,040.00) |
| Subtotal : None | | (29,087.99) | 192,035.00 | (18,184.62) | | 0.00 | (18,184.62) |
| Total [5300] Other accrued liabilities | | (29,087.99) | 192,035.00 | (18,184.62) | | 0.00 | (18,184.62) |
| **Group : [5305]** | **Due to Shareholder** | | | | | | |
| Subgroup : None | | | | | | | |
| 40905 | Due To Greg Hicks | (14,232.00) | 435,152.00 | 448,420.00 | | 0.00 | 448,420.00 |
| 45000 | Due to shareholder-G Hicks | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 |
| Subtotal : None | | (14,232.00) | 435,152.00 | 448,420.00 | | 0.00 | 448,420.00 |

4/25/2007
10:59 AM

Client:        44240 - HOME AMERICA MORTGAGE, INC.
Engagement:    2006 AUDIT - HOME AMERICA MORTGAGE, INC.
Trial Balance: Trial Balance Database
Workpaper:     A-2 - Income Tax Working Trial balance

| Account | Description | PP-FINAL | UNADJ | FINAL | JE Ref # | FTJE | FTAX |
|---|---|---|---|---|---|---|---|
| | | 12/31/2005 | 12/31/2006 | 12/31/2006 | | | 12/31/2006 |
| **Group : [5300]** | **Other accrued liabilities** | | | | | | |
| Subgroup : None | | | | | | | |
| 40650 | Other Accrued Expenses | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 |
| 42200 | 401k Payable | (4,144.62) | 28,681.69 | (11,056.05) | | 0.00 | (11,056.05) ✓ |
| 42201 | 401k Payable | 0.00 | 8,230.27 | 0.00 | | 0.00 | 0.00 |
| 43100 | GA Per Loan Fees | (14,040.00) | (18,180.50) | (18,180.50) | | 0.00 | (18,180.50) ✓ |
| Subtotal : None | | (18,184.62) | 18,731.46 | (29,236.55) | | 0.00 | (29,236.55) |
| Total [5300] Other accrued liabilities | | (18,184.62) | 18,731.46 | (29,236.55) | | 0.00 | (29,236.55) ✓ |
| **Group : [5305]** | **Due to Shareholder** | | | | | | |
| Subgroup : None | | | | | | | |
| 40905 | Due To Greg Hicks | 448,420.00 | 609,510.15 | 333,443.90 | | 0.00 | 333,443.90 |
| 45000 | Due to shareholder-G Hicks | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 |
| Subtotal : None | | 448,420.00 | 609,510.15 | 333,443.90 | | 0.00 | 333,443.90 |
| Total [5305] Due to Shareholder | | 448,420.00 | 609,510.15 | 333,443.90 | | 0.00 | 333,443.90 ✓ |
| **Group : [5308]** | **Ecrowed funds** | | | | | | |
| Subgroup : None | | | | | | | |
| 40910 | Due to G & L Bank | (363,863.00) | (363,863.22) | 0.00 | | 0.00 | 0.00 |
| Subtotal : None | | (363,863.00) | (363,863.22) | 0.00 | | 0.00 | 0.00 |
| Total [5308] Ecrowed funds | | (363,863.00) | (363,863.22) | 0.00 | | 0.00 | 0.00 ✓ |
| **Group : [5310]** | **Note payable** | | | | | | |
| Subgroup : None | | | | | | | |
| 42800 | N/P The Community Bank | (1,180,456.00) | (1,160,734.31) | (1,157,710.43) | | 0.00 | (1,157,710.43) |
| 42801 | N/P-The Community Bank-RV Note | (87,977.00) | (83,040.15) | (80,141.96) | | 0.00 | (80,141.96) |
| 42802 | N/P-The Community Bank-ConyerL | (435,700.00) | (435,700.00) | (435,700.00) | | 0.00 | (435,700.00) |
| 42803 | N/P---------Jet | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 |
| 42804 | N/P-Other Real Estate | 0.00 | 0.00 | (216,800.00) | | 0.00 | (216,800.00) |
| 46000 | Note Payable-The Community Bank | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 |
| Subtotal : None | | (1,704,133.00) | (1,679,474.46) | (1,890,352.39) | | 0.00 | (1,890,352.39) |
| Total [5310] Note payable | | (1,704,133.00) | (1,679,474.46) | (1,890,352.39) | | 0.00 | (1,890,352.39) ✓ |
| **Group : [5315]** | **Advances on Line of Credits** | | | | | | |
| Subgroup : None | | | | | | | |
| 40901 | Due to NBank Whse Line | (6,193,200.00) | (6,193,200.00) | (1,979,497.55) | | 0.00 | (1,979,497.55) |
| 40902 | Due to TBW Whse Line | (16,820,319.00) | (22,356,988.00) | (22,356,988.00) | | 0.00 | (22,356,988.00) |
| 40903 | Regions LOC | 0.00 | 0.00 | (1,277,565.00) | | 0.00 | (1,277,565.00) |
| Subtotal : None | | (23,013,519.00) | (28,550,188.00) | (25,614,050.55) | | 0.00 | (25,614,050.55) |
| Total [5315] Advances on Line of Credits | | (23,013,519.00) | (28,550,188.00) | (25,614,050.55) | | 0.00 | (25,614,050.55) ✓ |

4 of 8

7/8/2008
8:34 AM

Client:         44240 - HOME AMERICA MORTGAGE, INC.
Engagement:     2007 AUDIT - HOME AMERICA MORTGAGE, INC.
Trial Balance:  Trial Balance Database
Workpaper:      A-2 - Income Tax Working Trial balance

| Account | Description | PP-FINAL | UNADJ | FINAL | JE Ref # | FTJE | FTAX |
|---|---|---|---|---|---|---|---|
| | | 12/31/2006 | 12/31/2007 | 12/31/2007 | | | 12/31/2007 |
| **Group : [5110]** | **Payables** | | | | | | |
| **Subgroup : None** | | | | | | | |
| 20253 | Loan Receivable-G Hicks | 0.00 | 28,000.00 | 0.00 | | 0.00 | 0.00 |
| 40300 | Trade Accounts Payable-System | (252,068.78) | 0.00 | 2,300,447.39 | | 0.00 | 2,300,447.39 |
| 40900 | Due to TBWMC | (2,949,353.62) | (3,226,319.23) | (3,203,858.94) | | 0.00 | (3,203,858.94) |
| **Subtotal : None** | | (3,201,422.40) | (3,198,319.23) | (903,411.55) | | 0.00 | (903,411.55) |
| **Total [5110] Payables** | | (3,201,422.40) | (3,198,319.23) | (903,411.55) | | 0.00 | (903,411.55) |
| **Group : [5210]** | **Accrued Wages & Commissions** | | | | | | |
| **Subgroup : None** | | | | | | | |
| 40700 | Accrued Salaries | (619,884.64) | 0.00 | (587,196.66) | | 0.00 | (587,196.66) |
| **Subtotal : None** | | (619,884.64) | 0.00 | (587,196.66) | | 0.00 | (587,196.66) |
| **Total [5210] Accrued Wages & Commissions** | | (619,884.64) | 0.00 | (587,196.66) | | 0.00 | (587,196.66) |
| **Group : [5220]** | **Deferred loan revenue** | | | | | | |
| **Subgroup : None** | | | | | | | |
| 41010 | Deferred Loan Revenue | 0.00 | (14,176.00) | (32,640.73) | | 0.00 | (32,640.73) |
| **Subtotal : None** | | 0.00 | (14,176.00) | (32,640.73) | | 0.00 | (32,640.73) |
| **Total [5220] Deferred loan revenue** | | 0.00 | (14,176.00) | (32,640.73) | | 0.00 | (32,640.73) |
| **Group : [5410]** | **Deferred Taxes** | | | | | | |
| **Subgroup : None** | | | | | | | |
| 36000 | Deferred tax benefit | 0.00 | 0.00 | 18,861.00 | | 0.00 | 18,861.00 |
| 41000 | Deferred Income Taxes | (193,914.00) | (109,800.00) | (261,270.00) | | 0.00 | (281,270.00) |
| **Subtotal : None** | | (193,914.00) | (109,800.00) | (242,409.00) | | 0.00 | (242,409.00) |
| **Total [5410] Deferred Taxes** | | (193,914.00) | (109,800.00) | (242,409.00) | | 0.00 | (242,409.00) |
| **Group : [5290]** | **Income taxes payable** | | | | | | |
| **Subgroup : None** | | | | | | | |
| 41050 | Income Taxes Payable | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 |
| 42300 | Federal Income Taxes Payable | (37,436.00) | (324,783.00) | 1,698,303.00 | | 0.00 | 1,698,303.00 |
| 42400 | State Income Taxes Payable | 76,858.80 | 46,331.80 | 109,899.80 | | 0.00 | 109,899.80 |
| **Subtotal : None** | | 39,422.80 | (278,451.20) | 1,808,202.80 | | 0.00 | 1,808,202.80 |
| **Total [5290] Income taxes payable** | | 39,422.80 | (278,451.20) | 1,808,202.80 | | 0.00 | 1,808,202.80 |
| **Group : [5300]** | **Other accrued liabilities** | | | | | | |
| **Subgroup : None** | | | | | | | |
| 40650 | Other Accrued Expenses | 0.00 | 0.00 | (50,000.00) | | 0.00 | (50,000.00) |
| 42200 | 401k Payable | (11,056.05) | 8,230.27 | (16,137.10) | | 0.00 | (16,137.10) |
| 42201 | 401k Payable | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 |
| 42202 | 401k Payable | 0.00 | 44,820.02 | 0.00 | | 0.00 | 0.00 |
| 43100 | GA Par Loan Fees | (18,180.50) | (6,955.00) | (4,933.50) | | 0.00 | (4,933.50) |
| **Subtotal : None** | | (29,236.55) | 46,095.29 | (71,070.60) | | 0.00 | (71,070.60) |
| **Total [5300] Other accrued liabilities** | | (29,236.55) | 46,095.29 | (71,070.60) | | 0.00 | (71,070.60) |
| **Group : [5305]** | **Due to Shareholder** | | | | | | |
| **Subgroup : None** | | | | | | | |
| 40905 | Due To Greg Hicks | 333,443.90 | 1,116,347.99 | 1,201,393.03 | | 0.00 | 1,201,393.03 |
| 45000 | Due to shareholder-G Hicks | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 |
| **Subtotal : None** | | 333,443.90 | 1,116,347.99 | 1,201,393.03 | | 0.00 | 1,201,393.03 |
| **Total [5305] Due to Shareholder** | | 333,443.90 | 1,116,347.99 | 1,201,393.03 | | 0.00 | 1,201,393.03 |
| **Group : [5306]** | **Escrowed funds** | | | | | | |
| **Subgroup : None** | | | | | | | |
| 40910 | Due to G & L Bank | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 |
| **Subtotal : None** | | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 |
| **Total [5306] Escrowed funds** | | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 |
| **Group : [5310]** | **Note payable** | | | | | | |
| **Subgroup : None** | | | | | | | |
| 42800 | N/P The Community Bank | (1,157,710.43) | (1,136,663.29) | (1,131,025.45) | | 0.00 | (1,131,025.45) |
| 42801 | N/P-The Community Bank-RV Note | (80,141.96) | 0.00 | 0.00 | | 0.00 | 0.00 |
| 42802 | N/P-The Community Bank-ConverL | (435,700.00) | (435,700.00) | (435,700.00) | | 0.00 | (435,700.00) |
| 42803 | N/P----------Jet | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 |
| 42804 | N/P-Other Real Estate | (216,800.00) | (216,800.00) | (216,800.00) | | 0.00 | (216,800.00) |
| 48000 | Note Payable-The Community Bank | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 |
| **Subtotal : None** | | (1,890,352.39) | (1,789,163.29) | (1,783,525.45) | | 0.00 | (1,783,525.45) |
| **Total [5310] Note payable** | | (1,890,352.39) | (1,789,163.29) | (1,783,525.45) | | 0.00 | (1,783,525.45) |
| **Group : [5315]** | **Advances on Line of Credits** | | | | | | |
| **Subgroup : None** | | | | | | | |
| 40901 | Due to NBank Whse Line | (1,979,497.55) | 0.45 | 0.45 | | 0.00 | 0.45 |
| 40902 | Due to TBW Whse Line | (22,356,988.00) | (22,659,962.00) | (20,342,965.54) | | 0.00 | (20,342,965.54) |
| 40903 | Regions LOC | (1,277,565.00) | 0.00 | 0.00 | | 0.00 | 0.00 |
| 40904 | Southwest Securities LOC | 0.00 | 0.00 | (313,400.00) | | 0.00 | (313,400.00) |
| **Subtotal : None** | | (25,614,050.55) | (22,659,961.55) | (20,656,365.09) | | 0.00 | (20,656,365.09) |
| **Total [5315] Advances on Line of Credits** | | (25,614,050.55) | (22,659,961.55) | (20,656,365.09) | | 0.00 | (20,656,365.09) |
| **Group : [6110]** | **Equity** | | | | | | |
| **Subgroup : None** | | | | | | | |
| 55100 | Common Stock | (1.00) | (1.00) | (1.00) | | 0.00 | (1.00) |
| 55200 | Additional Paid In Capital | (645,864.88) | (645,864.88) | (645,864.88) | | 0.00 | (645,864.88) |
| 55300 | Retained Earnings | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 |

# EXHIBIT N



mortgage, inc.

March 29, 2007

Nichols, Cauley & Associates, LLC
2970 Clairmont Rd, Suite 725
Atlanta, Georgia 30329-4440

In connection with your audits of the balance sheets of Home America Mortgage, Inc. as
of December 31, 2006 and 2005, and related statements of income, stockholder's equity
and cash flows for the years then ended, we confirm that we are responsible for the fair
presentation in the financial statements of financial position, results of operations and
cash flows in conformity with accounting principles generally accepted in the United
States of America.

Certain representations in this letter are described as being limited to matters that are
material. Items are considered material, regardless of size, if they involve an omission or
misstatement of accounting information that, in light of surrounding circumstances, make
it probable that the judgment of a reasonable person relying on the information would be
changed or influenced by the omission or misstatement.

We confirm, to the best of our knowledge and belief, as of March 29, 2007, the following
representations made to you during your audits.

1.  The financial statements referred to above are fairly presented in conformity
    with accounting principles generally accepted in the United States of America.

2.  We have made available to you all:

    a.  Financial records and related data.

    b.  Minutes of the meetings of the stockholder, directors, or summaries of
        actions of recent meetings for which minutes have not yet been prepared.

    c.  All regulatory or examination reports, supervisory correspondence, and
        similar materials from applicable regulatory agencies, including
        communications about supervisory actions or noncompliance with,
        deficiencies in rules and regulations or supervisory actions.



Nichols, Cauley & Associates, LLC
March 29, 2007
Page 2

3. We have no knowledge of fraud or suspected fraud affecting the Company involving:

    a. Management or employees who have significant roles in the internal control except in relation to the fraud discovered in 2005 which involved a member of management and a loan officer in the operation of the investor loan rehab division. Management has conducted a thorough investigation of the fraud and believes the extent of fraud and irregularities by these employees were discovered. The investigation is complete and the extent of the loss approximated $350,000. Additional controls have been placed in operation to prevent this type of loss in the future.

    b. Others where the fraud could have a material effect on the financial statements.

4. We acknowledge our responsibility for the design and implementation of programs and controls to provide reassurance that fraud is prevented and detected.

5. We have no knowledge of any allegations of fraud or suspected fraud affecting the Company received in communications from employees, former employees, regulators, or others, except as related to the fraud involving the investor loan rehab division disclosed to you in 2005.

6. We are aware of no significant deficiencies, including material weaknesses, in the design or operation of internal controls that could adversely affect the Company's ability to record, process, summarize, and report financial data except as noted above.

7. There have been no communications from Taylor, Bean & Whitaker Mortgage Corporation or any regulatory agencies including HUD, FHA and Department of Banking concerning noncompliance with, or deficiencies in, financial reporting practices.

8. The Company has no plans or intentions that may materially affect the carrying value or classification of assets. In that regard:

    a. The Company has no significant amounts of idle property and equipment.

    b. Provision has been made to reduce all other investments and other assets which have permanently declined in value to their realizable values.

    c. We have no plans or intentions to discontinue the operations of any subsidiary or division or to discontinue any significant product lines.

Nichols, Cauley & Associates, LLC
March 29, 2007
Page 3



9.   The following have been properly recorded or disclosed in the financial statements:

    a.  Related party transactions and related accounts receivable or payable, including revenues, expenses, loans, transfers, leasing arrangements, and guarantees.

    b.  Guarantees, whether written or oral, under which Home America Mortgage, Inc. is contingently liable.

    c.  Advances on warehouse lines of credit and loans held for resale.

    d.  All significant estimates and material concentrations known to management which are to be disclosed in accordance with the AICPA's Statement of Position 94-6, Disclosure of Certain Significant Risks and Uncertainties. Significant estimates are estimates at the balance sheet date which could change materially within the next year. Concentrations refer to volumes of business, revenues, available sources of supply, or markets for which events could occur which would significantly disrupt normal finances within the next year.

    e.  Concentrations of credit risk.

10.  We are responsible for making the accounting estimates included in the financial statements. Those estimates reflect our judgment based on our knowledge and experience about past and current events and our assumptions about conditions we expect to exist and courses of action we expect to take. In that regard, adequate provision has been made to reduce foreclosed assets to fair value less estimated costs to sell at December 31, 2006 and 2005.

11.  There are no:

    a.  Material transactions that have not been properly recorded in the accounting records underlying the financial statements.

    b.  Violations or possible violations of laws or regulations whose effects should be considered for disclosure in the financial statements or as a basis for recording a loss contingency. In that regard, we specifically represent that we have not been designated as, or alleged to be, a "potentially responsible party" by the Environmental Protection Agency in connection with any environmental contamination.



mortgage, inc.

    c. Other material liabilities or gain or loss contingencies that are required to be accrued or disclosed by Statement of Financial Accounting Standards No. 5.

    d. Recourse agreements on loans previously sold.

    e. Regulatory examinations currently in progress or for which we have not received examination reports.

    f. Loans being held for sale.

    g. Contractual obligations for construction and/or purchase of real property, equipment, other assets and intangibles.

    h. Leases or material amounts of rental obligations under long-term leases.

12.   There are no unasserted claims or assessments that our lawyer has advised us are probable of assertion and must be disclosed in accordance with Statement of Financial Accounting Standards No. 5 other than the one's disclosed by the attorneys and included in the financial statement disclosures.

13.   Home America Mortgage, Inc. has satisfactory title to all owned assets, and there are no liens or encumbrances on such assets nor has any asset been pledged as collateral except as made known to you.

14.   Home America Mortgage, Inc. has complied with all aspects of contractual agreements that would have a material effect on the financial statements in the event of noncompliance.

15.   Home America Mortgage, Inc. has not been notified by TB&W or any other sponsor of any breaches of representation concerning any loans originated by the Company or been notified of any loan repurchases by sponsors other than the required indemnification to TB&W $2,522,377 which has been confirmed.

16.   Home America Mortgage, Inc. is owed $333,444 by Greg Hicks as of December 31, 2006. This receivable is net of the $305,000 deposit by Greg Hicks related to the down payment for the jet. Additionally, the Company's accounts receivable from related parties of $704,989 (Hicks and Hicks and 20 Moon Partners) is accurate and collectible.

17.   We understand the Company has cash deposits with financial institutions in excess of the insured limitation of the Federal Deposit Insurance Corporation, and we understand the Company could incur losses if the financial institutions



Nichols, Cauley & Associates, LLC
March 29, 2007
Page 5

were not to honor their contractual liabilities. However, we believe there is no material risk because of the financial strength of the institutions.

18.   We believe the effects of any uncorrected financial statement misstatements are immaterial, both individually and in the aggregate, to the financial statements taken as a whole.

19.   All significant commitments and contingencies have been disclosed in the financial statements. We confirm there are no other commitments or contingencies of a significant nature that should be disclosed in the financial statements.

20.   There are no regulatory examinations currently in progress for which we have not received examination reports.

21.   The Company has had no Board meetings during the year.

No events have occurred subsequent to the balance sheet date and through the date of this letter that would require adjustments to, or disclosure in, the financial statements or supplementary information.

Signed: _____          Signed: _____
          Greg Hicks                                Lori Hollifield
          CEO                                        Controller

Signed: _____
          Dennis Moseley
          President



mortgage, inc

July 1, 2008

Nichols, Cauley & Associates, LLC
2970 Clairmont Rd, Suite 725
Atlanta, Georgia 30329-4440

We are providing this letter in connection with your audits of the balance sheets of Home
America Mortgage. Inc as of December 31, 2007 and 2006, and related statements of
operations, stockholder's equity and cash flows for the years then ended for the purpose
of expressing an opinion as to whether the financial statements present fairly, in all
material respects, the financial position, results of operations and cash flows of Home
America Mortgage, Inc. in conformity with U. S generally accepted accounting
principles. We confirm that we are responsible for the fair presentation in the financial
statements of financial position, results of operations and cash flows in conformity with
generally accepted accounting principles We are also responsible for adopting sound
accounting policies, establishing and maintaining internal control, and preventing and
detecting fraud

Certain representations in this letter are described as being limited to matters that are
material Items are considered material if they involve an omission or misstatement of
accounting information that, in light of surrounding circumstances, make it probable that
the judgment of a reasonable person relying on the information would be changed or
influenced by the omission or misstatement An omission or misstatement that is
monetarily small in amount could be considered material as a result of qualitative factors

We confirm, to the best of our knowledge and belief. as of July 1, 2008, the following
representations made to you during your audits

1    The financial statements referred to above are fairly presented in conformity
     with U S generally accepted accounting principles

2.   We have made available to you all:

     a. Financial records and related data.

     b  Minutes of the meetings of the stockholder, directors, or summaries of
        actions of recent meetings for which minutes have not yet been prepared

Home America Mortgage. Inc. •  950 Grayson Highway  •  Lawrenceville, Georgia 30045

Office: 770-682-1797  •  Fax: 770-682-6643

Nichols, Cauley & Associates. I I C
July 1, 2008
Page 2

3    There have been no communications from regulatory agencies concerning
     noncompliance with, or deficiencies in, financial reporting practices.

4    There are no material transactions that have not been properly recorded in the
     accounting records underlying the financial statements.

5    We believe the effects of the uncorrected financial statement misstatements
     summarized in the attached schedule are immaterial, both individually and in
     the aggregate, to the financial statements taken as a whole

6    We acknowledge our responsibility for the design and implementation of
     programs and controls to prevent and detect fraud

7    We have no knowledge of fraud or suspected fraud affecting the Company
     involving:

     a Management,

     b.Employees who have significant roles in the internal control, or

     c.Others where the fraud could have a material effect on the financial
     statements.

8.   We have no knowledge of any allegations of fraud or suspected fraud affecting
     the Company received in communications from employees, former employees,
     regulators, or others

9.   We are aware of no significant deficiencies, including material weaknesses, in
     the design or operation of internal controls that could adversely affect the
     Company's ability to record, process, summarize and report financial data.

10.  There have been no communications from Taylor, Bean & Whitaker Mortgage
     Corporation or any regulatory agencies including HUD, FHA and Department of
     Banking concerning noncompliance with, or deficiencies in, financial reporting
     practices, other than the notice of deficiency dated June 2, 2008

11   The Company has no plans or intentions that may materially affect the carrying
     value or classification of assets  In that regard:

     a.  The Company has no significant amounts of idle property and equipment

     b.  Provision has been made to reduce all other investments and other assets
         which have permanently declined in value to their realizable values.

Nichols, Cauley & Associates. LLC
July 1, 2008
Page 3

> c. We have no plans or intentions to discontinue the operations of any
>    subsidiary or division or to discontinue any significant product lines

12  The following have been properly recorded or disclosed in the financial
    statements:

> a. Related party transactions and related accounts receivable or payable,
>    including revenues, expenses. loans. transfers. leasing arrangements and
>    guarantees  Specifically:

Accounts Receivable
| | |
|---|---:|
| 1) Hicks & Hicks, LLC | $ 292,134 |
| 2) 20 Moon Partners | 463,732 |
| 3) Greg Hicks | 1,201,393 |

Accounts Payable. net
| | |
|---|---:|
| 1) Taylor, Bean & Whitaker – Payroll and Benefits | $ 422,822 |
| 2) Taylor, Bean & Whitaker – Overfunding | 275,235 |
| 3) Taylor, Bean & Whitaker – Pars not completely paid | (69,915) |
| 4) Taylor, Bean & Whitaker – Incorrect Interest Calculation | (8,758) |
| 5) Taylor, Bean & Whitaker – Miscellaneous Payments | 62,098 |

The above accounts payable and accounts receivable bear no interest and
are not collateralized.

Notes Payable
| | |
|---|---:|
| 1) Taylor, Bean & Whitaker – OREO Loan @ 10.25% | $ 216,800 |

Indemnification Losses Payable (See Item 17)

Notes Receivable
| | |
|---|---:|
| 1) Carlita`s Mexican Restaurant, LLC at 6% per annum due December 19. 2009 | $ 150,000 |

All of the above accounts receivable and notes receivable are deemed
collectible and all accounts payable or notes payable are accurate and due
at December 31. 2007

> b  Guarantees, whether written or oral. under which Home America, Inc. is
>    contingently liable

> c  Advances on warehouse lines of credit and loans held for resale

Nichols, Cauley & Associates. LLC
July 1, 2008
Page 4

   d. All significant estimates and material concentrations known to management which are to be disclosed in accordance with the AICPA's Statement of Position 94-6, Disclosure of Certain Significant Risks and Uncertainties Significant estimates are estimates at the balance sheet date which could change materially within the next year Concentrations refer to volumes of business, revenues, available sources of supply, or markets for which events could occur which would significantly disrupt normal finances within the next year

   e Concentrations of credit risk.

13 There are no estimates that may be subject to a material change in the near term that have not been properly disclosed in the financial statements. We understand that *near term* means the period within one year of the date of the financial statements In that regard, adequate provision has been made to reduce foreclosed assets to fair value less estimated costs to sell at December 31, 2007 and 2006 In addition, we have no knowledge of concentrations existing at the date of the financial statements that make the Company vulnerable to the risk of severe impact that have not been properly disclosed in the financial statements

14 There are no:

   a Violations or possible violations of laws or regulations whose effect should be considered for disclosure in the financial statements or as a basis for recording a loss contingency In that regard, we specifically represent that we have not been designated as, or alleged to be, a "potentially responsible party" by the Environmental Protection Agency in connection with any environmental contamination

   b. Unasserted claims or assessments that our lawyer has advised us are probable of assertion and must be disclosed in accordance with *Statement of Financial Accounting Standards No. 5* other than the ones disclosed by the attorneys and included in the financial statement disclosures

   c. Other liabilities or gain or loss contingencies that are required to be accrued or disclosed by *Statement of Financial Accounting Standards No. 5*

   d Recourse agreements on loans previously sold

   e Regulatory examinations currently in progress or for which we have not received examination reports.

Nichols, Cauley & Associates. LLC
July 1, 2008
Page 5

f.  Loans being held for sale.

g  Contractual obligations for construction and/or purchase of real property,
   equipment, other assets and intangibles

h.  Leases or material amounts of rental obligations under long-term leases

15  Home America Mortgage, Inc. has satisfactory title to all owned assets, and there
   are no liens or encumbrances on such assets nor has any asset been pledged as
   collateral except as made known to you.

16.  Home America Mortgage, Inc has complied with all aspects of contractual
    agreements that would have a material effect on the financial statements in the
    event of noncompliance

17  Home America Mortgage, Inc. has not been notified by TB&W or any other
   sponsor of any breaches of representation concerning any loans originated by
   the Company or been notified of any loan repurchases by sponsors other than
   the required indemnification to TB&W in the amount of $6,522.000 for
   additional losses identified through December 31, 2007 and $2,522.377 for
   losses identified at December 31, 2006, which have been confirmed

18  On February 8, 2008, the Company was notified by Freddie Mac that the
   Company and its principals (Gregory Hicks and Dennis Moseley) are on the
   Freddie Mac Exclusionary List This action is under appeal  In the event the
   appeal is unsuccessful, the Company and its principals will be excluded from
   participating in any transaction with Freddie Mac in any significant capacity.
   The Company is currently in good standards with Fannie Mae and can
   participate in its programs.  We do not believe this will have a material effect on
   the Company on a go forward basis

19  We understand the Company has cash deposits with financial institutions in
   excess of the insured limitation of the Federal Deposit Insurance Corporation,
   and we understand the Company could incur losses if the financial institutions
   were not to honor their contractual liabilities.  However, we believe there is no
   material risk because of the financial strength of the institutions

20  All significant commitments and contingencies have been disclosed in the
   financial statements.   We confirm there are no other commitments or
   contingencies of a significant nature that should be disclosed in the financial
   statements

Nichols, Cauley & Associates, LLC
July 1, 2008
Page 6

21  The Company has had no Board meetings during the year

No events have occurred subsequent to the balance sheet date and through the date of this
letter that would require adjustments to, or disclosure in, the financial statements or
supplementary information

Signed:
Greg Hicks
CEO

Signed:
Lori Hollifield
Controller

Signed:
Dennis Moseley
President

Signed:
Eric Danley
Chief Financial Officer

EXHIBIT O



March 6, 2007

Delton G. de Armas, CPA
Taylor, Bean & Whitaker Mortgage Corp.
101 NE 2nd Street
Ocala, Florida 34470

Our auditors, Nichols, Cauley & Associates, LLC, are conducting an audit of our financial statements. Please confirm the following information as of December 31, 2006.

**Warehouse Line of Credit**

| | |
|---|---|
| Date of Agreement | January 28, 2002 |
| Available Line of Credit | $100,000,000 |
| Amount Advanced at December 31, 2006 | $22,356,988 |
| Interest Rate on Advances | LIBOR +2.25% |
| Maturity Date | Demand, cancelable by either party with 60 days notice |
| Collateral | Mortgage receivable funded with the line |

The warehouse line of credit is used to fund the loans closed by Home America Mortgage, Inc. Advances are repaid by Taylor, Bean & Whitaker Corp. obtaining the signed mortgage agreement from closing attorney and purchasing the loan. Attached is the listing of the loans comprising the advanced amount of the line of credit at December 31, 2006.

Also, please provide information (loan number, amount) on loans (if any) per the attached list that remain outstanding at the date of this confirmation.

Additionally, please confirm there were no loans repurchased by Home America Mortgage, Inc. in 2006, nor is Taylor, Bean & Whitaker aware of any loans required to be repurchased by Home America Mortgage, Inc. as of the date of this confirmation (see following for indemnifications due to TB&W).

**Quality Control**

As Taylor, Bean & Whitaker purchases the majority of the loans originated by Home America Mortgage, Inc. and pursuant to our sponsorship agreement subjects the purchased loans to the same Quality Control program as employed by Taylor, Bean & Whitaker.

**Other Payable – Indemnification Payable**

Home America Mortgage, Inc. owes Taylor, Bean and Whitaker $2,522,377 at December 31, 2006 for loan indemnifications.

---

Home America Mortgage, Inc.  ◆  950 Grayson Highway  ◆  Lawrenceville, Georgia 30045

Office: 770-682-1797  ◆  Fax: 770-682-6643

Taylor, Bean & Whitaker Mortgage Corp.
Page 2 of 2

After signing and dating your reply, please fax a copy of your reply to William Sammons, CPA, CFP at 404-214-1302 and mail the original directly to Nichols, Cauley & Associates, LLC, 2970 Clairmont Road, NE, Suite 725, Atlanta, Georgia 30329.

Very truly yours,

Greg Hicks, President

Home America Mortgage, Inc.

To: Nichols, Cauley & Associates, LLC

The above information is complete and accurate as of December 31, 2006. If you do not agree with this balance, please attach a listing of any discrepancies.

Signature: _____

Title: _____ CFO _____

Date: _____ 28 MARCH 2007 _____

# EXHIBIT P

Schedule E (Form 1040) 2005

Attachment Sequence No. **13**

Page **2**

Name(s) shown on return. Do not enter name and social security number if shown on page 1.

**Your social security number**

JAMES G & DESIRAE HICKS

**Caution:** The IRS compares amounts reported on your tax return with amounts shown on Schedule(s) K-1.

## Part II  Income or Loss From Partnerships and S Corporations  Note. If you report a loss from an at-risk activity for which any amount is **not** at risk, you **must** check column (e) on line 28 and attach **Form 6198.** See page E-1.

27  Are you reporting any loss not allowed in a prior year due to the at-risk or basis limitations, a prior year unallowed loss from a passive activity (if that loss was not reported on Form 8582), or unreimbursed partnership expenses? ......................... ☐ Yes ☒ No

If you answered "Yes," see page E-6 before completing this section.

| 28 | (a) Name | (b) Enter P for partnership; S for S corporation | (c) Check if foreign partnership | (d) Employer identification number | (e) Check if any amount is not at risk |
|---|---|---|---|---|---|
| A | 20 MOON PARTNERS LLC | P | | 20-1842686 | |
| B | ESPLEEZ INC | P | | 20-3427100 | |
| C | HICKS & HICKS DEVELOPMENT LLC | P | | 20-2633434 | |
| D | ODUM GREEN INC | S | | 52-2451867 | |

| | Passive Income and Loss | | Nonpassive Income and Loss | | |
|---|---|---|---|---|---|
| | (f) Passive loss allowed (attach **Form 8582** if required) | (g) Passive income from **Schedule K-1** | (h) Nonpassive loss from **Schedule K-1** | (i) Section 179 expense deduction from **Form 4562** | (j) Nonpassive income from **Schedule K-1** |
| A | | | | | |
| B | | | | | 1,315. |
| C | | | | | |
| D | | | | | 21,821. |
| 29a Totals | | | | | 23,136. |
| b Totals | | | | | |

| 30 | Add columns (g) and (j) of line 29a | 30 | 23,136. |
|---|---|---|---|
| 31 | Add columns (f), (h), and (i) of line 29b | 31 | ( ) |
| 32 | **Total partnership and S corporation income or (loss).** Combine lines 30 and 31. Enter the result here and include in the total on line 41 below | 32 | 23,136. |

## Part III  Income or Loss From Estates and Trusts

| 33 | (a) Name | (b) Employer identification number |
|---|---|---|
| A | | |
| B | | |

| | Passive Income and Loss | | Nonpassive Income and Loss | |
|---|---|---|---|---|
| | (c) Passive deduction or loss allowed (attach **Form 8582** if required) | (d) Passive income from **Schedule K-1** | (e) Deduction or loss from **Schedule K-1** | (f) Other income from **Schedule K-1** |
| A | | | | |
| B | | | | |
| 34a Totals | | | | |
| b Totals | | | | |

| 35 | Add columns (d) and (f) of line 34a | 35 | |
|---|---|---|---|
| 36 | Add columns (c) and (e) of line 34b | 36 | ( ) |
| 37 | **Total estate and trust income or (loss).** Combine lines 35 and 36. Enter the result here and include in the total on line 41 below | 37 | |

## Part IV  Income or Loss From Real Estate Mortgage Investment Conduits (REMICs) - Residual Holder

| 38 | (a) Name | (b) Employer identification number | (c) Excess inclusion from **Schedules Q,** line 2c | (d) Taxable income (net loss) from **Schedules Q,** line 1b | (e) Income from **Schedules Q,** line 3b |
|---|---|---|---|---|---|
| | | | | | |

| 39 | Combine columns (d) and (e) only. Enter the result here and include in the total on line 41 below | 39 | |
|---|---|---|---|

## Part V  Summary

| 40 | Net farm rental income or (loss) from **Form 4835.** Also, complete line 42 below | 40 | |
|---|---|---|---|
| 41 | **Total income or (loss).** Combine lines 26, 32, 37, 39, and 40. Enter the result here and on Form 1040, line 17 ▶ | 41 | 23,136. |
| 42 | **Reconciliation of farming and fishing income.** Enter your **gross** farming and fishing income reported on Form 4835, line 7; Schedule K-1 (Form 1065), box 14, code B; Schedule K-1 (Form 1120S), box 17, code N; and Schedule K-1 (Form 1041), line 14, code F (see page E-7) | 42 | |
| 43 | **Reconciliation for real estate professionals.** If you were a real estate professional (see page E-1), enter the net income or (loss) you reported anywhere on Form 1040 from all rental real estate activities in which you materially participated under the passive activity loss rules | 43 | |

Schedule E (Form 1040) 2005

521501
11-16-05

# EXHIBIT Q

| 2008 Dividend | Amount | Payer's Name & address | Payer's FIN# | Recipient's Name & Address | Recipient's ID# |
|---|---|---|---|---|---|
| Total Dividend | 2,922,511.68 | Home America Mortgage | 81-0600987 | James G Hicks | ▮ |
| | | 950 Grayson Hwy | | | |
| HAI | 32,930.76 | Lawrenceville, GA 30054 | | Braselton, GA ▮ | |
| Greg | 2,453,880.92 | | | | |
| Conyers Land | 435,700.00 | | | | |
| 2008 Dividend Total | 2,922,511.68 | | | | |

| 1099-C 2008 | | | | | |
|---|---|---|---|---|---|
| Carlitos | 291,794.29 | Home America Mortgage | 81-0600987 | Carlitos Mexican Restaurant | 42-1749084 |
| | | 950 Grayson Hwy | | Suite 1&2 | |
| | | Lawrenceville, GA 30054 | | 2445 Moon Road | |
| | | | | Grayson GA 30017 | |
| 20 Moon | 475,199.49 | Home America Mortgage | 81-0600987 | 20 Moon Partners | 20-1842686 |
| | | 950 Grayson Hwy | | 2445 Moon Road | |
| | | Lawrenceville, GA 30054 | | Grayson GA 30017 | |
| Hicks & Hicks | 340,624.08 | Home America Mortgage | 81-0600987 | Hicks and Hicks Development | 20-2633434 |
| | | 950 Grayson Hwy | | P.O. Box 1679 | |
| | | Lawrenceville, GA 30054 | | Watkinsville, GA 30677 | |
| 1099-C 2008 Total | 1,107,617.86 | | | | |

Client #
44240

*Date Cancelled*
*Debt description*
*any due to bankruptcy*
*Fair market value of property*
*Interest if included in "Amt of debt Cancelled "*

# EXHIBIT R

81-0600987                                                           **Home America Mortgage [44240]**                                    2/25/2006
01/01/2005 - 12/31/2005                                                **Property Tax Listing**                                          12:10:26PM
Sorted: General - location                                                   Financial
                            *ADDITIONS*                                  01/01/2005 - 12/31/2005

| System No. | Description | Date Acq. | Cost / Other Basis | Beg. Accum. Depreciation | Current Depreciation | Total Depreciation | Other Reductions | Net Book Value |
|---|---|---|---|---|---|---|---|---|
| **Lawrenceville, GA** | | | | | | | | |
| **Exempt Property** | | | | | | | | |
| 93 | Little Boat | 4/22/2005 | 30,000.00 | 0.00 | 4,000.00 | 4,000.00 | 0.00 | 26,000.00 |
| 96 | 3 ton Goodman unit in computer r | 7/8/2005 | 3,300.00 | 0.00 | 330.00 | 330.00 | 0.00 | 2,970.00 |
| Subtotal: Exempt Property | | | 33,300.00 | 0.00 | 4,330.00 | 4,330.00 | 0.00 | 28,970.00 |
| **Group 2 (8-12 Yrs)** | | | | | | | | |
| 92 | Furniture new wing of building | 2/16/2005 | 6,325.19 | 0.00 | 1,054.20 | 1,054.20 | 0.00 | 5,270.99 |
| 91 | Furniture | 5/31/2005 | 5,845.29 | 0.00 | 681.95 | 681.95 | 0.00 | 5,163.34 |
| Subtotal: Group 2 (8-12 Yrs) | | | 12,170.48 | 0.00 | 1,736.15 | 1,736.15 | 0.00 | 10,434.33 |
| **Group 4 (1-4 Yrs)** | | | | | | | | |
| 95 | 4 Laptops HP Compaq 30GB | 1/14/2005 | 3,411.86 | 0.00 | 682.37 | 682.37 | 0.00 | 2,729.49 |
| 89 | Computers | 4/15/2005 | 3,500.27 | 0.00 | 525.04 | 525.04 | 0.00 | 2,975.23 |
| 90 | Greg Computer | 6/23/2005 | 1,793.85 | 0.00 | 179.39 | 179.39 | 0.00 | 1,614.46 |
| 97 | 4 - 80GB hard drives and 2 server | 7/22/2005 | 12,929.49 | 0.00 | 1,077.46 | 1,077.46 | 0.00 | 11,852.03 |
| 98 | 3 - HP Proliant laptops | 7/24/2005 | 4,561.99 | 0.00 | 380.17 | 380.17 | 0.00 | 4,181.82 |
| 94 | Server - Heritageraid 400GB Hot S | 7/29/2005 | 11,199.50 | 0.00 | 933.29 | 933.29 | 0.00 | 10,266.21 |
| 99 | Faxback server 4 port | 10/22/2005 | 4,241.00 | 0.00 | 141.37 | 141.37 | 0.00 | 4,099.63 |
| 100 | 1 Dell laptop & 1 Dell Desk top | 10/22/2005 | 2,850.28 | 0.00 | 95.01 | 95.01 | 0.00 | 2,755.27 |
| Subtotal: Group 4 (1-4 Yrs) | | | 44,488.24 | 0.00 | 4,014.10 | 4,014.10 | 0.00 | 40,474.14 |
| **Vehicles, exempt** | | | | | | | | |
| 101 | Rang Rover | 12/1/2005 | 38,560.34 | 0.00 | 642.67 | 642.67 | 0.00 | 37,917.67 |
| Subtotal: Vehicles, exempt | | | 38,560.34 | 0.00 | 642.67 | 642.67 | 0.00 | 37,917.67 |
| Subtotal: Lawrenceville, GA | | | 128,519.06 | 0.00 | 10,722.92 | 10,722.92 | 0.00 | 117,796.14 |
| Less dispositions and exchanges: | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Net for: Lawrenceville, GA | | | 128,519.06 | 0.00 | 10,722.92 | 10,722.92 | 0.00 | 117,796.14 |
| Subtotal: | | | 128,519.06 | 0.00 | 10,722.92 | 10,722.92 | 0.00 | 117,796.14 |
| Less dispositions and exchanges: | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Grand Totals: | | | 128,519.06 | 0.00 | 10,722.92 | 10,722.92 | 0.00 | 117,796.14 |

81-0600987
01/01/2005 - 12/31/2005
Sorted: <None>

**Home America Mortgage [44240]**
**Depreciation Expense**
Federal
01/01/2005 - 12/31/2005

3/22/2006
5:16:03PM

Section 179 Included in Depreciation Values

| System No. | S | Description | Date In Service | Method / Conv. | Life | Cost / Other Basis | Bus./ Inv. % | Sec. 179/ Bonus | Salvage/ Basis Adj. | Beg. Accum. Depreciation | Current Depreciation | Total Depreciation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Automobile** | | | | | | | | | | | | |
| 50 | | Holiday Rambl | 10/8/2003 | M / HY | 5.0000 | 224,377.94 | 100.0000 | 0.00 | 0.00 | 170,527.23 | 21,540.28 | 192,067.51 |
| 87 | D | Jet (part owne | 8/15/2004 | M / HY | 5.0000 | 200,000.00 | 100.0000 | 0.00 | 0.00 | 40,000.00 | 32,000.00 | 72,000.00 |
| 93 | | Home America | 4/22/2005 | M / MQ | 5.0000 | 30,000.00 | 100.0000 | 30,000.00 | 0.00 | 0.00 | 0.00 | 30,000.00 |
| 101 | | Rang Rover | 12/1/2005 | M / MQ | 5.0000 | 38,560.34 | 100.0000 | 2,960.00 | 0.00 | 0.00 | 0.00 | 2,960.00 |
| Subtotal: Automobile | | | | | | 492,938.28 | | 32,960.00 | 0.00 | 210,527.23 | 53,540.28 | 297,027.51 |
| **Building & Land Improvements** | | | | | | | | | | | | |
| 2 | | Chandeliers | 8/1/2003 | M / HY | 7.0000 | 2,493.54 | 100.0000 | 0.00 | 0.00 | 1,730.21 | 218.09 | 1,948.30 |
| 5 | | Capitalized Int | 8/1/2003 | MSL / MM | 39.0000 | 41,397.00 | 100.0000 | 0.00 | 0.00 | 1,459.51 | 1,061.46 | 2,520.97 |
| 6 | | Cabinets/Cour | 8/1/2003 | M / HY | 7.0000 | 17,140.00 | 100.0000 | 0.00 | 0.00 | 11,893.06 | 1,499.13 | 13,392.19 |
| 7 | | Signage | 8/1/2003 | M / HY | 15.0000 | 5,870.00 | 100.0000 | 0.00 | 0.00 | 3,360.58 | 250.94 | 3,611.52 |
| 34 | | Construction ( | 8/1/2003 | MSL / MM | 39.0000 | 866,377.00 | 100.0000 | 0.00 | 0.00 | 30,545.34 | 22,214.79 | 52,760.13 |
| 35 | | Wallcovering | 8/1/2003 | M / HY | 7.0000 | 3,700.00 | 100.0000 | 0.00 | 0.00 | 2,567.35 | 323.61 | 2,890.96 |
| 37 | | Landscaping | 8/1/2003 | M / HY | 15.0000 | 5,000.00 | 100.0000 | 0.00 | 0.00 | 2,862.50 | 213.75 | 3,076.25 |
| 38 | | Landscaping | 8/1/2003 | M / HY | 15.0000 | 8,072.00 | 100.0000 | 0.00 | 0.00 | 4,621.22 | 345.08 | 4,966.30 |
| 39 | | Awning | 8/1/2003 | M / HY | 15.0000 | 3,220.00 | 100.0000 | 0.00 | 0.00 | 1,843.45 | 137.66 | 1,981.11 |
| 40 | | Hardwood floc | 8/1/2003 | MSL / MM | 39.0000 | 34,832.74 | 100.0000 | 0.00 | 0.00 | 1,228.08 | 893.15 | 2,121.23 |
| 41 | | Lumber | 8/1/2003 | MSL / MM | 39.0000 | 14,655.11 | 100.0000 | 0.00 | 0.00 | 516.68 | 375.77 | 892.45 |
| 49 | | Construction | 8/1/2003 | MSL / MM | 39.0000 | 868,902.04 | 100.0000 | 0.00 | 0.00 | 31,339.50 | 22,792.36 | 54,131.86 |
| 51 | | Cabinets per C | 8/1/2003 | M / HY | 7.0000 | 19,864.00 | 100.0000 | 0.00 | 0.00 | 11,350.86 | 2,432.33 | 13,783.19 |
| 52 | | Paving, Curb, | 8/1/2003 | M / HY | 15.0000 | 107,320.00 | 100.0000 | 0.00 | 0.00 | 15,561.40 | 9,175.86 | 24,737.26 |
| 53 | | Pump and Lift | 8/1/2003 | M / HY | 15.0000 | 281,056.00 | 100.0000 | 0.00 | 0.00 | 112,843.98 | 16,821.20 | 129,665.18 |
| 54 | D | HVAC system | 8/1/2003 | M / HY | 5.0000 | 2,875.00 | 100.0000 | 0.00 | 0.00 | 1,909.00 | 193.20 | 2,102.20 |
| 56 | | Interior Finishe | 8/1/2003 | M / HY | 7.0000 | 51,574.00 | 100.0000 | 0.00 | 0.00 | 29,470.86 | 6,315.18 | 35,786.04 |
| 57 | | Paving, Curb, | 8/1/2003 | M / HY | 15.0000 | 48,208.00 | 100.0000 | 0.00 | 0.00 | 19,355.51 | 2,885.25 | 22,240.76 |
| 80 | | Build-out Back | 12/17/2004 | MSL / MM | 39.0000 | 26,350.00 | 100.0000 | 0.00 | 0.00 | 28.15 | 675.64 | 703.79 |
| 81 | | New HVAC sy: | 12/17/2004 | MSL / MM | 39.0000 | 1,120.00 | 100.0000 | 0.00 | 0.00 | 1.20 | 28.72 | 29.92 |
| 96 | | 3 ton Goodma | 7/8/2005 | M / MQ | 5.0000 | 3,300.00 | 100.0000 | 3,300.00 | 0.00 | 0.00 | 0.00 | 3,300.00 |
| Subtotal: Building & Land Improvements | | | | | | 2,433,326.43 | | 3,300.00 | 0.00 | 284,488.44 | 88,853.17 | 376,641.61 |
| **Computer & Equipment** | | | | | | | | | | | | |
| 36 | | 40 Toshiba La | 10/14/2002 | M / HY | 5.0000 | 41,085.01 | 100.0000 | 0.00 | 0.00 | 32,802.75 | 3,313.14 | 36,115.89 |
| 44 | | Kodak 3500S | 10/17/2002 | M / HY | 5.0000 | 12,209.50 | 100.0000 | 0.00 | 0.00 | 9,748.07 | 984.57 | 10,732.64 |
| 45 | | Linux Filer Ser | 10/31/2002 | M / HY | 5.0000 | 8,634.35 | 100.0000 | 0.00 | 0.00 | 6,893.67 | 696.27 | 7,589.94 |
| 43 | | 1 dell server, 1 | 11/1/2002 | M / HY | 5.0000 | 13,018.87 | 100.0000 | 0.00 | 0.00 | 10,394.27 | 1,049.84 | 11,444.11 |
| 46 | | Fax Mechine | 12/20/2002 | M / HY | 5.0000 | 1,959.94 | 100.0000 | 0.00 | 0.00 | 1,564.82 | 158.05 | 1,722.87 |
| 27 | | hp color laserj | 2/28/2003 | M / HY | 5.0000 | 1,500.00 | 100.0000 | 0.00 | 0.00 | 996.00 | 201.60 | 1,197.60 |
| 28 | | 1 PowerEdge : | 3/28/2003 | M / HY | 5.0000 | 5,070.00 | 100.0000 | 0.00 | 0.00 | 3,366.48 | 681.41 | 4,047.89 |
| 30 | | Lanier Model 6 | 3/28/2003 | M / HY | 5.0000 | 3,523.00 | 100.0000 | 0.00 | 0.00 | 2,339.27 | 473.49 | 2,812.76 |
| 29 | | Hp 2500 N col | 4/11/2003 | M / HY | 5.0000 | 1,456.44 | 100.0000 | 0.00 | 0.00 | 967.07 | 195.75 | 1,162.82 |
| 26 | | Fax Mechine | 5/9/2003 | M / HY | 5.0000 | 1,796.70 | 100.0000 | 0.00 | 0.00 | 1,365.49 | 172.48 | 1,537.97 |
| 14 | | 2 dimension, 3 | 5/14/2003 | M / HY | 5.0000 | 12,741.73 | 100.0000 | 0.00 | 0.00 | 9,683.72 | 1,223.20 | 10,906.92 |
| 15 | | 1 dimension | 5/14/2003 | M / HY | 5.0000 | 1,317.46 | 100.0000 | 0.00 | 0.00 | 1,001.27 | 126.48 | 1,127.75 |

81-0600987
01/01/2006 - 12/31/2006
Sorted: <None>

**Home America Mortgage [44240]**
**Depreciation Expense**
Federal
01/01/2006 - 12/31/2006

**I-3**

3/12/2007
4:03:03PM

| System No. | S | Description | Date In Service | Method / Conv. | Life | Cost / Other Basis | Bus./ Inv. % | Sec. 179/ Bonus/ (Cur. Yr. Only) | Salvage/ Basis Adj. | Beg. Accum. Depreciation/ (Sec. 179) | Current Depreciation | Total Depreciation/ (Sec. 179) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Automobile** | | | | | | | | | | | | |
| 50 | | Holiday Rambl | 10/8/2003 | M / HY | 5.0000 | 224,377.94 | 100.0000 | 0.00 | 0.00 | 192,067.51 | 12,924.17 | 204,991.68 |
| 93 | | Home America | 4/22/2005 | M / MQ | 5.0000 | 30,000.00 | 100.0000 | 0.00 | 0.00 | 30,000.00 | 0.00 | 30,000.00 |
| 101 | | Rang Rover | 12/1/2005 | M / MQ | 5.0000 | 38,560.34 | 100.0000 | 0.00 | 0.00 | 2,980.00 | 4,700.00 | 7,660.00 |
| 140 | | Greg's Trailer | 4/28/2006 | M / MQ | 5.0000 | 4,962.92 | 100.0000 | 4,962.92 | 0.00 | 0.00 | 0.00 | 4,962.92 |
| 104 | | 2003 Ford Truc | 8/11/2006 | M / MQ | 5.0000 | 6,238.58 | 100.0000 | 4,445.71 | 0.00 | 0.00 | 268.93 | 4,714.64 |
| 139 | | Avalanche | 10/6/2006 | M / MQ | 5.0000 | 27,406.01 | 100.0000 | 0.00 | 0.00 | 0.00 | 1,370.30 | 1,370.30 |
| Subtotal: Automobile | | | | | | 331,545.79 | | 9,408.63 | 0.00 | 225,027.51 | 19,263.40 | 253,699.54 |
| **Building & Land Improvements** | | | | | | | | | | | | |
| 2 | | Chandeliers | 8/1/2003 | M / HY | 7.0000 | 2,493.54 | 100.0000 | 0.00 | 0.00 | 1,948.30 | 155.78 | 2,104.08 |
| 5 | | Capitalized Inte | 8/1/2003 | MSL / MM | 39.0000 | 41,397.00 | 100.0000 | 0.00 | 0.00 | 2,520.97 | 1,061.46 | 3,582.43 |
| 6 | | Cabinets/Count | 8/1/2003 | M / HY | 7.0000 | 17,140.00 | 100.0000 | 0.00 | 0.00 | 13,392.19 | 1,070.80 | 14,462.99 |
| 7 | | Signage | 8/1/2003 | M / HY | 15.0000 | 5,870.00 | 100.0000 | 0.00 | 0.00 | 3,611.52 | 225.85 | 3,837.37 |
| 34 | | Construction (E | 8/1/2003 | MSL / MM | 39.0000 | 866,377.00 | 100.0000 | 0.00 | 0.00 | 52,760.13 | 22,214.80 | 74,974.93 |
| 35 | | Wallcovering | 8/1/2003 | M / HY | 7.0000 | 3,700.00 | 100.0000 | 0.00 | 0.00 | 2,890.96 | 231.15 | 3,122.11 |
| 37 | | Landscaping | 8/1/2003 | M / HY | 15.0000 | 5,000.00 | 100.0000 | 0.00 | 0.00 | 3,076.25 | 192.38 | 3,268.63 |
| 38 | | Landscaping | 8/1/2003 | M / HY | 15.0000 | 8,072.00 | 100.0000 | 0.00 | 0.00 | 4,966.30 | 310.57 | 5,276.87 |
| 39 | | Awning | 8/1/2003 | M / HY | 15.0000 | 3,220.00 | 100.0000 | 0.00 | 0.00 | 1,981.11 | 123.89 | 2,105.00 |
| 40 | | Hardwood floo | 8/1/2003 | MSL / MM | 39.0000 | 34,832.74 | 100.0000 | 0.00 | 0.00 | 2,121.23 | 893.15 | 3,014.38 |
| 41 | | Lumber | 8/1/2003 | MSL / MM | 39.0000 | 14,655.11 | 100.0000 | 0.00 | 0.00 | 892.45 | 375.77 | 1,268.22 |
| 49 | | Construction | 8/1/2003 | MSL / MM | 39.0000 | 888,902.04 | 100.0000 | 0.00 | 0.00 | 54,131.86 | 22,792.36 | 76,924.22 |
| 51 | | Cabinets per C | 8/1/2003 | M / HY | 7.0000 | 19,864.00 | 100.0000 | 0.00 | 0.00 | 13,783.19 | 1,737.37 | 15,520.56 |
| 52 | | Paving, Curb, a | 8/1/2003 | M / HY | 15.0000 | 107,320.00 | 100.0000 | 0.00 | 0.00 | 24,737.26 | 8,258.27 | 32,995.53 |
| 53 | | Pump and Lift | 8/1/2003 | M / HY | 15.0000 | 231,056.00 | 100.0000 | 0.00 | 0.00 | 129,665.18 | 15,139.08 | 144,804.26 |
| 56 | | Interior Finishe | 8/1/2003 | M / HY | 7.0000 | 51,574.00 | 100.0000 | 0.00 | 0.00 | 35,786.04 | 4,510.85 | 40,296.89 |
| 57 | | Paving, Curb, a | 8/1/2003 | M / HY | 15.0000 | 48,208.00 | 100.0000 | 0.00 | 0.00 | 22,240.76 | 2,596.72 | 24,837.48 |
| 80 | | Build-out Back | 12/17/2004 | MSL / MM | 39.0000 | 26,350.00 | 100.0000 | 0.00 | 0.00 | 703.79 | 675.64 | 1,379.43 |
| 81 | | New HVAC sys | 12/17/2004 | MSL / MM | 39.0000 | 1,120.00 | 100.0000 | 0.00 | 0.00 | 29.92 | 28.72 | 58.64 |
| 96 | | 3 ton Goodman | 7/8/2005 | M / MQ | 5.0000 | 3,300.00 | 100.0000 | 0.00 | 0.00 | 3,300.00 | 0.00 | 3,300.00 |
| 105 | | New Flooring | 2/17/2006 | MSL / MM | 39.0000 | 9,568.09 | 100.0000 | 0.00 | 0.00 | 0.00 | 214.67 | 214.67 |
| 125 | | build out garag | 4/27/2006 | MSL / MM | 38.0000 | 24,700.00 | 100.0000 | 0.00 | 0.00 | 0.00 | 448.61 | 448.61 |
| 124 | | Construction a | 6/23/2006 | MSL / MM | 39.0000 | 25,398.00 | 100.0000 | 0.00 | 0.00 | 0.00 | 352.75 | 352.75 |
| 138 | | Home America | 11/9/2006 | M / MQ | 5.0000 | 2,203.10 | 100.0000 | 0.00 | 0.00 | 0.00 | 110.16 | 110.16 |
| Subtotal: Building & Land Improvements | | | | | | 2,482,320.62 | | 0.00 | 0.00 | 374,539.41 | 83,720.80 | 458,260.21 |
| **Computer & Equipment** | | | | | | | | | | | | |
| 36 | | 40 Toshiba Lap | 10/14/2002 | M / HY | 5.0000 | 41,085.61 | 100.0000 | 0.00 | 0.00 | 36,115.89 | 3,313.15 | 39,429.04 |
| 44 | | Kodak 3500S S | 10/17/2002 | M / HY | 5.0000 | 12,209.50 | 100.0000 | 0.00 | 0.00 | 10,732.64 | 984.57 | 11,717.21 |
| 45 | | Linux Filer Serv | 10/31/2002 | M / HY | 5.0000 | 8,634.35 | 100.0000 | 0.00 | 0.00 | 7,589.94 | 696.27 | 8,286.21 |
| 43 | | 1 dell server, 1C | 11/1/2002 | M / HY | 5.0000 | 13,018.87 | 100.0000 | 0.00 | 0.00 | 11,444.11 | 1,049.84 | 12,493.95 |
| 46 | | Fax Mechine | 12/20/2002 | M / HY | 5.0000 | 1,959.94 | 100.0000 | 0.00 | 0.00 | 1,722.87 | 158.05 | 1,880.92 |
| 27 | | hp color laserje | 2/28/2003 | M / HY | 5.0000 | 1,500.00 | 100.0000 | 0.00 | 0.00 | 1,197.60 | 120.96 | 1,318.56 |
| 28 | | 1 PowerEdge 2 | 3/28/2003 | M / HY | 5.0000 | 5,070.00 | 100.0000 | 0.00 | 0.00 | 4,047.89 | 408.84 | 4,456.73 |

Page 1 of 4

# EXHIBIT S

**Safe, accurate, FAST! Use**  Visit the IRS Web Site at www.irs.gov/efile.

**Employee Reference Copy**

**W-2 Wage and Tax Statement 2006**
OMB No. 1545-0008
Copy C for employee's records.

a Control number  101267 70/GCD  Dept. 123010
Corp. Employer use only  A  108

c Employer's name, address, and ZIP code
HOME AMERICA MORTGAGE INC.
950 GRAYSON HWY
LAWRENCEVILLE GA 30045

Batch #01079

e/f Employee's name, address, and ZIP code
DESIRAE A HICKS
AUBURN GA

b Employer's FED ID number 81-0600987
d Employee's SSA number

1 Wages, tips, other comp. 38460.00
2 Federal income tax withheld 5779.50
3 Social security wages 38460.00
4 Social security tax withheld 2384.52
5 Medicare wages and tips 38460.00
6 Medicare tax withheld 557.67
7 Social security tips
8 Allocated tips
9 Advance EIC payment
10 Dependent care benefits
11 Nonqualified plans
12a See instructions for box 12
14 Other
12b
12c
12d
13 Stat emp/Ret. plan/3rd party sick pay

15 State GA  Employer's state ID no. 2261827-NQ  16 State wages, tips, etc. 38460.00
17 State income tax 1925.00
18 Local wages, tips, etc.
19 Local income tax
20 Locality name

**2006 W-2 and EARNINGS SUMMARY**

This blue Earnings Summary section is included with your W-2 to help describe portions in more detail. The reverse side includes general information that you may also find helpful.

1. The following information reflects your final 2006 pay stub plus any adjustments submitted by your employer.

| | | | |
|---|---|---|---|
| Gross Pay | 38460.00 | Social Security Tax Withheld Box 4 of W-2 | 2384.52 | GA. State Income Tax Box 17 of W-2 SUI/SDI Box 14 of W-2 | 1925.00 |
| Fed. Income Tax Withheld Box 2 of W-2 | 5779.50 | Medicare Tax Withheld Box 6 of W-2 | 557.67 | | |

2. Your Gross Pay was adjusted as follows to produce your W-2 Statement.

| | Wages, Tips, other Compensation Box 1 of W-2 | Social Security Wages Box 3 of W-2 | Medicare Wages Box 5 of W-2 | GA. State Wages, Tips, Etc. Box 16 of W-2 |
|---|---|---|---|---|
| Gross Pay | 38,460.00 | 38,460.00 | 38,460.00 | 38,460.00 |
| Reported W-2 Wages | 38,460.00 | 38,460.00 | 38,460.00 | 38,460.00 |

3. Employee W-4 Profile. To change your Employee W-4 Profile information, file a new W-4 with your payroll dept.



DESIRAE A HICKS
AUBURN GA

Social Security Number:
Taxable Marital Status: SINGLE
Exemptions/Allowances:
FEDERAL: 0
STATE: 0
(Head of Household)

© 2006 AUTOMATIC DATA PROCESSING, INC.

---

1 Wages, tips, other comp. 38460.00
2 Federal income tax withheld 5779.50
3 Social security wages 38460.00
4 Social security tax withheld 2384.52
5 Medicare wages and tips 38460.00
6 Medicare tax withheld 557.67
a Control number 101267 70/GCD Dept. 123010 Corp. Employer use only A 108
c Employer's name, address, and ZIP code
HOME AMERICA MORTGAGE INC.
950 GRAYSON HWY
LAWRENCEVILLE GA 30045

b Employer's FED ID number 81-0600987
d Employee's SSA number
7 Social security tips
8 Allocated tips
9 Advance EIC payment
10 Dependent care benefits
11 Nonqualified plans
12a See instructions for box 12
14 Other
12b
12c
12d
13 Stat emp/Ret. plan/3rd party sick pay

e/f Employee's name, address and ZIP code
DESIRAE A HICKS
AUBURN GA

15 State GA Employer's state ID no. 2261827-NQ 16 State wages, tips, etc. 38460.00
17 State income tax 1925.00
18 Local wages, tips, etc.
19 Local income tax
20 Locality name

**Federal Filing Copy**
**W-2 Wage and Tax Statement 2006**
OMB No. 1545-0008
Copy B to be filed with employee's Federal Income Tax Return.

---

1 Wages, tips, other comp. 38460.00
2 Federal income tax withheld 5779.50
3 Social security wages 38460.00
4 Social security tax withheld 2384.52
5 Medicare wages and tips 38460.00
6 Medicare tax withheld 557.67
a Control number 101267 70/GCD Dept. 123010 Corp. Employer use only A 108
c Employer's name, address, and ZIP code
HOME AMERICA MORTGAGE INC.
950 GRAYSON HWY
LAWRENCEVILLE GA 30045

b Employer's FED ID number 81-0600987
d Employee's SSA number
7 Social security tips
8 Allocated tips
9 Advance EIC payment
10 Dependent care benefits
11 Nonqualified plans
12a
14 Other
12b
12c
12d
13 Stat emp/Ret. plan/3rd party sick pay

e/f Employee's name, address and ZIP code
DESIRAE A HICKS
AUBURN GA

15 State GA Employer's state ID no. 2261827-NQ 16 State wages, tips, etc. 38460.00
17 State income tax 1925.00
18 Local wages, tips, etc.
19 Local income tax
20 Locality name

**GA State Reference Copy**
**W-2 Wage and Tax Statement 2006**
OMB No. 1545-0008
Copy 2 to be filed with employee's State Income Tax Return.

---

1 Wages, tips, other comp. 38460.00
2 Federal income tax withheld 5779.50
3 Social security wages 38460.00
4 Social security tax withheld 2384.52
5 Medicare wages and tips 38460.00
6 Medicare tax withheld 557.67
a Control number 101267 70/GCD Dept. 123010 Corp. Employer use only A 108
c Employer's name, address, and ZIP code
HOME AMERICA MORTGAGE INC.
950 GRAYSON HWY
LAWRENCEVILLE GA 30045

b Employer's FED ID number 81-0600987
d Employee's SSA number
7 Social security tips
8 Allocated tips
9 Advance EIC payment
10 Dependent care benefits
11 Nonqualified plans
12a
14 Other
12b
12c
12d
13 Stat emp/Ret. plan/3rd party sick pay

e/f Employee's name, address and ZIP code
DESIRAE A HICKS
AUBURN GA

15 State GA Employer's state ID no. 2261827-NQ 16 State wages, tips, etc. 38460.00
17 State income tax 1925.00
18 Local wages, tips, etc.
19 Local income tax
20 Locality name

**GA State Filing Copy**
**W-2 Wage and Tax Statement 2006**
OMB No. 1545-0008
Copy 2 to be filed with employee's State Income Tax Return.

# EXHIBIT T

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                              Chapter 11

TAYLOR, BEAN & WHITAKER                             Case No. 3:09-bk-07047-JAF
MORTGAGE CORP., *et al.,*                            Case No. 3:09-bk-10022-JAF
                                                    Case No. 3:09-bk-10023-JAF
            Debtors.                                (Jointly Administered Under
                                                    Case No. 3:09-bk-07047-JAF)

_____/

NEIL F. LURIA, as Trustee for the TAYLOR,
BEAN & WHITAKER PLAN TRUST,                         Adv. Pro. No. 3:11-ap-00674-JAF

            Plaintiff,
v.

JAMES GREGORY HICKS,

            Defendant.

_____/

## SECOND AMENDED COMPLAINT TO AVOID AND RECOVER PREFERENTIAL AND FRAUDULENT TRANSFERS

Neil F. Luria, as Trustee for the Taylor, Bean & Whitaker plan trust (the "Plaintiff"), pursuant to 11 U.S.C. §§ 544, 547, 548 and 550 and Fla. Stat. § 726.105 and 726.106, sues the Defendant, James Gregory Hicks, to avoid and recover preferential and fraudulent transfers, and in support thereof, alleges:

### JURISDICTION

1.      This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. § 1334(b).  This is a core proceeding for which the Court is authorized to hear and determine all matters regarding this case in accordance with 28 U.S.C. §§ 157(b)(2)(F) and (H).

4138627-3

**BERGER SINGERMAN**
attorneys at law

*Boca Raton   Fort Lauderdale   Miami   Tallahassee*

## PROCEDURAL BACKGROUND

2.     Taylor, Bean & Whitaker Mortgage Corp. (the "Debtor") commenced its bankruptcy case on August 24, 2009 (the "Petition Date") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

3.     On July 21, 2011, the Bankruptcy Court entered its order confirming the *Third Amended and Restated Joint Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors* (the "Plan") [Order, D.E. # 3420].  Pursuant to the Plan, and the Taylor, Bean & Whitaker Plan Trust, the Plaintiff, as Trustee for the Plan Trust, is empowered to commence this case against the Defendant.

4.     On or about January 6, 2009, a date that is less than one year prior to the Petition Date, the Debtor purchased shares of stock in Home America Mortgage, Inc. ("HAM") consisting of approximately 90% of the outstanding shares of stock of such company from the Defendant for an agreed price of $20,894,448.

5.     The purchase price was paid in the following manner: (a) The Debtor forgave a promissory note from the Defendant to the Debtor in the amount of $9,000,000; (b) the Debtor gave the Defendant its own note for $9,000,000, which bears interest at 6% per annum; and (c) the Debtor paid cash to the Defendant in the amount of $1,894,448.  The parties agreed upon a $1,000,000 holdback on the purchase price, which was subsequently paid as detailed below.

6.     On various dates after January 6, 2009 and before the Petition Date, the Debtor paid the Defendant's debts to various taxing agencies, as follows:

**BERGER SINGERMAN**
attorneys at law                                    *Boca Raton    Fort Lauderdale    Miami    Tallahassee*

| PAYEE | DATE | AMOUNT |
|---|---|---|
| Internal Revenue Service | TBD | $414,512.00 |
| State of Georgia | 06/05/09 | $62,291.00 |
| State of North Carolina | TBD | $528.00 |
| State of South Carolina | TBD | $42.00 |
| State of Colorado | 04/15/09 | $184.00 |
| State of Tennessee | 03/31/09 | $5,756.00 |
| **Total Tax Payments** | | **$  483,313.00** |

These payments were credited to and thereby reduced the balance due on the $1,000,000 holdback, and are hereafter referred to as the "Tax Payments."

7.    On or about April 20, 2009, the Debtor paid the Defendant the $516,687 balance on the holdback.

8.    On January 6, 2009, and on the date of each transfer to or for the benefit of the Defendant thereafter, there existed at least one actual creditor of the Debtor that was harmed by the incurring of the obligation and by each of the transfers.

## COUNT I –
## AVOIDANCE OF JUNE 5, 2009 PREFERENTIAL TRANSFER

9.    Plaintiff realleges the allegations set forth in paragraphs 1 through 8, and incorporates those allegations by reference.

10.    On or about June 5, 2009, a date that is within 90 days before the Petition Date, the Debtor made a payment in the amount of $1,217,274.44 to the Defendant on the promissory note it delivered to the Defendant on or about January 6, 2009.

11.    The Defendant was a creditor of the Debtor within the meaning of 11 U.S.C. § 101(10)(A) at the time that the Debtor paid the $1,217,274.44 to the Defendant, inasmuch as Defendant was the holder of a promissory note issued by the Debtor. Moreover, the Defendant

4138627-3                                     -3-

filed a proof of claim in the Debtor's bankruptcy case for amounts still due on that promissory note.

12.     The $1,217,274.44 payment was to or for the benefit of a creditor within the meaning of Section 547(b)(1) of the Bankruptcy Code because the payment reduced a debt then owing by the Debtor to the Defendant.

13.     The $1,217,274.44 payment was for, or on account of, antecedent debt owed by the Debtor to the Defendant before the payment was made.

14.     The source of the funds for the $1,217,274.44 payment was property of the Debtor or property in which the Debtor had an interest because it came from the Debtor's bank account.

15.     Inasmuch as on the date of the $1,217,274.44 payment, the fair value of the Debtor's assets was much less than the total amount of the debts it owed, as set forth in detail in the various reports filed in the Bankruptcy Case and in the *Second Amended and Restated Disclosure Statement* [D.E. # 2144] filed by the Debtor in the Bankruptcy Case, the Debtor was insolvent at all times during the 90 days prior to the Petition Date.

16.     As a result of the $1,217,274.44 payment, the Defendant received more than he would have received if:  (i) the Debtor's case was a case under chapter 7 of the Bankruptcy Code, (ii) the $1,217,274.44 payment had not been made, and (iii) the Defendant received payment of his claim under the provisions of the Bankruptcy Code.

17.     In accordance with the foregoing, the $1,217,274.44 payment is avoidable pursuant to 11 U.S.C. § 547(b).

        **WHEREFORE**, the Plaintiff requests the Court to enter a Judgment:

**BERGER SINGERMAN**
attorneys at law                    *Boca Raton    Fort Lauderdale    Miami    Tallahassee*

a.      Declaring the June 5, 2009 payment, in the amount of $1,217,274.44, to have been a preferential transfer pursuant to Section 547 of the Bankruptcy Code;

b.      Disallowing any Claim that the Defendant may have against the Debtor;

c.      Avoiding the $1,217,274.44 payment as a preferential transfer in violation of Section 547(b) of the Bankruptcy Code;

d.      Requiring the Defendant to repay the $1,217,274.44 payment to the Plaintiff; and

e.      Granting such other and further relief as may be just and proper.

## COUNT II –
## AVOIDANCE OF PAYMENTS TO TAXING AUTHORITIES
## AS PREFERENTIAL TRANSFERS

18.     Plaintiff realleges the allegations set forth in paragraphs 1 through 8, and incorporates those allegations by reference.

19.     On various dates, itemized in paragraph 6 above, the Debtor made payments to the taxing authorities identified in paragraph 6 above for and on account of the Defendant, as partial payment of the amount due to the Defendant arising from the January 6, 2009 purchase of the HAM stock from the Defendant.

20.     The payment in the amount of $62,291 to the State of Georgia was made on or about June 5, 2009, a date that is within 90 days before the Petition Date.  While several of the other tax payments were outside the preference period (*i.e.*, the period commencing May 24, 2009 and ending on the Petition Date), the dates of the payments to the Internal Revenue Service ($414,512) and the States of North Carolina ($528) and South Carolina ($42) are presently undetermined.  If investigation reveals that those payments were made on or after May 24, 2009, then this count seeks recovery of those payments as preferential as well.  The payments to taxing

**BERGER  SINGERMAN**
attorneys at law          *Boca Raton    Fort Lauderdale    Miami    Tallahassee*

authorities referenced in this paragraph are hereafter referred to as the "Preferential Tax Payments."

21.     The Defendant was a creditor of the Debtor within the meaning of 11 U.S.C. § 101(10)(A) at the time that the Debtor paid the Preferential Tax Payments on his behalf inasmuch as he was the holder of a promissory note issued by the Debtor. Moreover, the Defendant filed a proof of claim in the Debtor's bankruptcy case for amounts still due on that promissory note.

22.     The Preferential Tax Payments were to or for the benefit of a creditor within the meaning of Section 547(b)(1) of the Bankruptcy Code because the payments reduced a debt then owing by the Debtor to the Defendant.

23.     The Preferential Tax Payments were for, or on account of, antecedent debt owed by the Debtor to the Defendant before the payments were made.

24.     The source of the funds for the Preferential Tax Payments was property of the Debtor or property in which the Debtor had an interest because it came from the Debtor's bank account.

25.     Inasmuch as on the date of each of the Preferential Tax Payments the fair value of the Debtor's assets was much less than the total amount of the debts it owed, as set forth in detail in the various reports filed in the Bankruptcy Case and in the *Second Amended and Restated Disclosure Statement* [D.E. # 2144] filed by the Debtor in the Bankruptcy Case, the Debtor was insolvent at all times during the 90 days prior to the Petition Date.

26.     As a result of the Preferential Tax Payments, the Defendant received more than he would have received if:  (i) the Debtor's case was a case under chapter 7 of the Bankruptcy

Code, (ii) the Preferential Tax Payments had not been made, and (iii) the Defendant received payment of his claim under the provisions of the Bankruptcy Code.

27.     In accordance with the foregoing, the Preferential Tax Payments are avoidable pursuant to 11 U.S.C. § 547(b).

**WHEREFORE**, the Plaintiff requests the Court to enter a Judgment:

a.      Declaring the Preferential Tax Payments to have been preferential transfers pursuant to Section 547 of the Bankruptcy Code;

b.      Disallowing any Claim that the Defendant may have against the Debtor;

c.      Avoiding the Preferential Tax Payments as preferential transfers in violation of Section 547(b) of the Bankruptcy Code;

d.      Requiring the Defendant to repay the amounts of the Preferential Tax Payments to the Plaintiff; and

e.      Granting such other and further relief as may be just and proper.

**COUNT III –**
**AVOIDANCE OF FRAUDULENT TRANSFERS AND OBLIGATION –**
**CONSTRUCTIVE FRAUD – 11 USC §548(a)(1)(B)**

28.     Plaintiff realleges the allegations set forth in paragraphs 1 through 8 and incorporates those allegations by reference.

29.     Upon information and belief, the fair value of the HAM stock purchased by the Debtor from the Defendant on or about January 6, 2009, was substantially less than, and therefore not reasonably equivalent to, the value of the consideration paid by the Debtor to the Defendant.  Ergo, the Debtor received less than reasonably equivalent value in exchange for the transfers made on that date and on the subsequent dates as outlined in paragraphs 5-7 above.

**BERGER SINGERMAN**
attorneys at law                        *Boca Raton    Fort Lauderdale    Miami    Tallahassee*

30.     The fair value of the Debtor's assets was much less than the total amount of the debts it owed, as set forth in detail in the various reports filed in the Bankruptcy Case and in the *Second Amended and Restated Disclosure Statement* [D.E. # 2144] filed by the Debtor in the Bankruptcy Case.  Therefore, the Debtor was insolvent at the time of its January 6, 2009 purchase of the HAM stock from the Defendant and on every date thereafter when the Debtor partially paid the obligation it incurred on that date, or was made or became insolvent as a result of the transfers.

31.     The Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital.

32.     Alternatively, the Debtor intended to incur, or believed it would incur, debts that would be beyond its ability to pay as such debts matured.

**WHEREFORE**, the Plaintiff respectfully requests the Court to enter a Judgment:

a.     Declaring the obligation to the Defendant in the amount of $20,894,448 arising from the purchase of the HAM stock on or about January 6, 2009 and the payments made contemporaneously therewith and thereafter to have been fraudulent pursuant to Section 548(a)(1)(B) of the Bankruptcy Code;

b.     Disallowing any claim that the Defendant may have against the Debtor;

c.     Avoiding the obligation incurred and the payment made to the Defendant as fraudulent in violation of Section 548(a)(1)(B) of the Bankruptcy Code, including the Debtor's $9,000,000 promissory note to the Defendant, and requiring him to turn over the note to the Plaintiff for destruction;

**BERGER SINGERMAN**
attorneys at law                    *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

d. Avoiding the forgiveness of the $9,000,000 promissory note from the Defendant to the Debtor, thereby reinstating its validity, as if the note was never forgiven, and entering judgment against the Defendant for the $9,000,000 less the value of the HAM stock sold by the Defendant to TBW on or about January 6, 2009, as found by the Court after trial;

e. Requiring the Defendant to repay all payments made to him or for his benefit, which includes the January 6, 2009 payment of $1,894,448, the April 20, 2009 payment of $516,687, the June 5, 2009 payment of $1,217,274.44, and the $483,313 in Tax Payments, for a total of $4,111,722.44; and

f. Granting such other and further relief as may be just and proper.

## COUNT IV –
## AVOIDANCE OF FRAUDULENT TRANSFERS AND OBLIGATION PURSUANT TO 11 USC §544 AND §§726.105(1)(b) AND 106(1)FLORIDA STATUTES – CONSTRUCTIVE FRAUD

33. Plaintiff realleges the allegations set forth in paragraphs 1 through 8 and incorporates those allegations by reference.

34. Upon information and belief, the fair value of the HAM stock purchased by the Debtor from the Defendant on or about January 6, 2009, was substantially less than, and therefore not reasonably equivalent to, the value of the consideration paid by the Debtor to the Defendant. Ergo, the Debtor received less than reasonably equivalent value in exchange for the transfers made on that date and on the subsequent dates as outlined in paragraphs 5-7 above.

35. The fair value of the Debtor's assets was much less than the total amount of the debts it owed, as set forth in detail in the various reports filed in the Bankruptcy Case and in the *Second Amended and Restated Disclosure Statement* [D.E. # 2144] filed by the Debtor in the Bankruptcy Case. Therefore, the Debtor was insolvent at the time of its January 6, 2009, purchase of the HAM stock from the Defendant and on every date thereafter when the Debtor

partially paid the obligation it incurred on that date, or was made or became insolvent as a result of the transfers.

36.     The Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital.

37.     Alternatively, the Debtor intended to incur, or believed it would incur, debts that would be beyond its ability to pay as such debts matured.

**WHEREFORE**, the Plaintiff respectfully requests the Court to enter a Judgment:

a.     Declaring the obligation to the Defendant in the amount of $20,894,448 arising from the purchase of the HAM stock on or about January 6, 2009 and the payments made contemporaneously therewith and thereafter to have been fraudulent pursuant to Sections 726.105(1)(b) and 106(1) of the Florida Statutes;

b.     Disallowing any claim that the Defendant may have against the Debtor;

c.     Avoiding the obligation incurred and the payment made to the Defendant as fraudulent in violation of Sections 726.105(1)(b) and 106(1) of the Florida Statutes, including the Debtor's $9,000,000 promissory note to the Defendant, and requiring him to turn over the note to the Plaintiff for destruction;

d.     Avoiding the forgiveness of the $9,000,000 promissory note from the Defendant to the Debtor, thereby reinstating its validity, as if the note was never forgiven, and entering judgment against the Defendant for the $9,000,000 less the value of the HAM stock sold by the Defendant to TBW on or about January 6, 2009, as found by the Court after trial; and

e.     Requiring the Defendant to repay all payments made to him or for his benefit, which includes the January 6, 2009 payment of $1,894,448 payment, the April 20, 2009 payment

**BERGER SINGERMAN**
attorneys at law                    *Boca Raton    Fort Lauderdale    Miami    Tallahassee*

of $516,687, the June 5, 2009 payment of $1,217,274.44, and the $483,313 in Tax Payments, for a total of $4,111,722.44; and

     f.     Granting such other and further relief as may be just and proper.

## COUNT V –
## RECOVERY OF PROPERTY PURSUANT TO 11 USC §550

38.     Plaintiff realleges the allegations set forth in paragraphs 1 through 37 and incorporates those allegations by reference.

39.     The payments made contemporaneously with the incurring of the obligation to the Defendant in the amount of $20,894,448 arising from the purchase of the HAM stock on or about that date and thereafter (collectively, the "Transfers") are avoidable pursuant to Sections 544, 547 and 548 of the Bankruptcy Code and, as a result, the Transfers are recoverable by the Plaintiff pursuant to Section 550 of the Bankruptcy Code.

**WHEREFORE**, the Plaintiff respectfully requests that the Court:

     a.     Enter a money judgment against the Defendant for the amount of the avoided Transfers, plus interest at the applicable federal statutory rate, reasonable attorneys' fees, and costs and expenses to the extent permissible by applicable law;

     b.     Disallow any claim that the Defendant may have against the Debtor; and

**BERGER SINGERMAN**
attorneys at law     *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

     c.       Grant such other and further relief as may be just and proper.

Dated:  January 23, 2011                 BERGER SINGERMAN LLP
                                           Attorneys for Plaintiff
                                           1450 Brickell Avenue, Ste. 1900
                                           Miami, FL  33131
                                           Telephone:  (305) 755-9500
                                           Facsimile:  (305) 714-4340

                                   By:    */s/ Kristopher Aungst*
                                         Paul Steven Singerman
                                       Florida Bar No. 378860
                                       singerman@bergersingerman.com
                                       Kristopher Aungst
                                         Florida Bar No. 55348
                                       kaungst@bergersingerman.com

**B E R G E R  S I N G E R M A N**
attorneys at law         *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| | |
| TAYLOR, BEAN & WHITAKER | Case No.  3:09-bk-07047-JAF |
| MORTGAGE CORPORATION, | Case No.  3:09-bk-10022-JAF |
| | Case No.  3:09-bk-10023-JAF |
| Debtor. | (Jointly Administered Under |
| | Case No. 3:09-bk-07047-JAF) |

| | |
|---|---|
| NEIL F. LURIA, as Trustee to the TAYLOR, | Adv. Pro. No.: 3:11-ap-00674-JAF |
| BEAN & WHITAKER PLAN TRUST, | |
| | |
| Plaintiff, | |
| | |
| v. | |
| | |
| JAMES GREGORY HICKS, | |
| | |
| Defendant. | |

### ANSWER TO SECOND AMENDED COMPLAINT
### AND JURY TRIAL DEMAND

Defendant, James Gregory Hicks ("Hicks"), by and through undersigned counsel, responds to the Second Amended Complaint to Avoid Preferential and Fraudulent Transfers, filed by Plaintiff Neil F. Luria, in his capacity as Trustee for the Taylor, Bean & Whitaker Plan Trust (the "Trustee"), and alleges as follows:

1.     With regard to the allegations of paragraph 1 of the Second Amended Complaint, Hicks denies this court has subject matter jurisdiction and denies this is a core proceeding as argued in detail in his Motion to Dismiss filed contemporaneously herewith (Docket # 38).[1]

---

[1] Hicks does not waive the Motion to Dismiss or any of the arguments made therein by filing this Answer, nor does he waive his Motion to Withdraw the Reference or any of the arguments made therein or in the supporting Reply by filing this Answer.

2.      Hicks admits the allegations contained in paragraph 2 of the Second Amended Complaint.

3.      Hicks admits the allegations contained in paragraph 3 of the Second Amended Complaint.

4.      With regard to the allegations of paragraph 4 of the Second Amended Complaint, Hicks denies the sales price had a value of $20,894,448, but admits the total consideration had a face value of $20,894,448, and admits that the closing date was January 6, 2009.

5.      With regard to the allegations of paragraph 5 of the Second Amended Complaint, Hicks admits that the paragraph accurately reflects some of the terms of the January 6, 2009 Stock Purchase Agreement ("SPA").  Hicks is without knowledge or information sufficient to form a belief that the full holdback was paid as detailed in paragraph 6 of the Second Amended Complaint.

6.      Hicks is without knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 6 of the Second Amended Complaint.

7.      Hicks is without knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 7 of the Second Amended Complaint.

8.      Hicks is without knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 8 of the Second Amended Complaint.

9.      Hicks repeats and realleges his answers to paragraphs 1 through 8 of the Second Amended Complaint as if fully set forth herein.

10.     With regard to the allegations of paragraph 10 of the Second Amended Complaint, Hicks admits that he received a payment for $1,217,274.44 pursuant to the Net Income payment requirement of § 2(a)(i) of the January 6, 2009 Promissory Note, but is without knowledge as to the exact date of that payment.

11.     Paragraph 11 of the Second Amended Complaint states a legal conclusion not requiring a response.  To the extent a response is required, Hicks admits that he filed proof of claim in the Debtor's bankruptcy case, but specifically reserved his right to jury trial.

12.     Paragraph 12 of the Second Amended Complaint states a legal conclusion not requiring a response.  To the extent a response is required, Hicks admits that he received a payment for $1,217,274.44 pursuant to the Net Income payment requirement of § 2(a)(i) of the January 6, 2009 Promissory Note.

13.     Hicks admits the allegations contained in paragraph 13 of the Second Amended Complaint.

14.     Hicks is without knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 14 of the Second Amended Complaint.

15.     Hicks is without knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 15 of the Second Amended Complaint.

16.     Hicks denies the allegations contained in paragraph 16 of the Second Amended Complaint.

17.     Hicks denies the allegations contained in paragraph 17 of the Second Amended Complaint.  Hicks also denies that the Trustee is entitled to the relief requested in the WHEREFORE paragraph following paragraph 17 of the Second Amended Complaint.

18.     Hicks repeats and realleges his answers to paragraphs 1 through 8 of the Second Amended Complaint as if fully set forth herein.

19.     Hicks is without knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 19 of the Second Amended Complaint.

20.     Hicks is without knowledge or information sufficient to form a belief about the truth of the allegations contained in first sentence of paragraph 20 of the Second Amended

Complaint.  Hicks denies the balance of the remaining allegations contained in paragraph 20 of the Second Amended Complaint.

21.     Hicks denies the allegations contained in paragraph 21 of the Second Amended Complaint.

22.     Hicks denies the allegations contained in paragraph 22 of the Second Amended Complaint.

23.     Hicks denies the allegations contained in paragraph 23 of the Second Amended Complaint.

24.     Hicks denies the allegations contained in paragraph 24 of the Second Amended Complaint.

25.     Hicks denies the allegations contained in paragraph 25 of the Second Amended Complaint.

26.     Hicks denies the allegations contained in paragraph 26 of the Second Amended Complaint.

27.     Hicks denies the allegations contained in paragraph 27 of the Second Amended Complaint.  Hicks also denies that the Trustee is entitled to the relief requested in the WHEREFORE paragraph following paragraph 27 of the Second Amended Complaint.

28.     Hicks repeats and realleges his answers to paragraphs 1 through 8 of the Second Amended Complaint as if fully set forth herein.

29.     Hicks denies the allegations contained in paragraph 29 of the Second Amended Complaint.

30.     Hicks denies the allegations contained in paragraph 30 of the Second Amended Complaint.

31.     Hicks denies the allegations contained in paragraph 31 of the Second Amended Complaint.

32.     Hicks denies the allegations contained in paragraph 32 of the Second Amended Complaint. Hicks also denies that the Trustee is entitled to the relief requested in the WHEREFORE paragraph following paragraph 32 of the Second Amended Complaint.

33.     Hicks repeats and realleges his answers to paragraphs 1 through 8 of the Second Amended Complaint as if fully set forth herein.

34.     Hicks denies the allegations contained in paragraph 34 of the Second Amended Complaint.

35.     Hicks denies the allegations contained in paragraph 35 of the Second Amended Complaint.

36.     Hicks denies the allegations contained in paragraph 36 of the Second Amended Complaint.

37.     Hicks denies the allegations contained in paragraph 37 of the Second Amended Complaint. Hicks also denies that the Trustee is entitled to the relief requested in the WHEREFORE paragraph following paragraph 37 of the Second Amended Complaint.

38.     Hicks repeats and realleges his answers to paragraphs 1 through 8 of the Second Amended Complaint as if fully set forth herein.

39.     Hicks denies the allegations contained in paragraph 39 of the Second Amended Complaint.  Hicks also denies that the Trustee is entitled to the relief requested in the WHEREFORE paragraph following paragraph 39 of the Second Amended Complaint.

40.     Hicks denies any allegations not specifically admitted previously.

## **AFFIRMATIVE DEFENSES**

1.     The payments Hicks received were made in the ordinary course and financial affairs of the Debtor and made according to the ordinary business terms of the agreement between the parties and thus were not avoidable preferences under Section 547.

2.     All alleged Tax Payments except from the State of Georgia were made outside the relevant preference period.

3.     Hicks received all payments for value and in good faith, and thus the Trustee may not recover any of the payments that are the subject of this proceeding under Sections 544, 548, or 550 of the Bankruptcy Code.

4.     Hicks was a subsequent transferee who took the alleged payments for value, in good faith, and without knowledge of the voidability of the transfers, and thus the Trustee may not recover the payments that are the subject of this proceeding under Section 550 of the Bankruptcy Code.

5.     All payments made and the claims asserted in the Second Amended Complaint are barred by any applicable statute of limitations, including any applicable limitations periods prescribed by law, as well as those limitations periods set forth in 11 U.S.C. §§ 546(a)(1)(A) and 550(f).

6.     The claims asserted in the Second Amended Complaint are barred by Section 546(e) of the Bankruptcy Code.  The transfers to Hicks were settlement payments in connection with a securities contract, as defined by 11 U.S.C. § 741(7).

7.     Debtor coerced Hicks into the sale of Home America and Hicks was under duress at the time of the sale.

8.     Debtor misrepresented the value of the assets Hicks was selling in order to induce Hicks to sell the assets.

9.     The Trustee is estopped and equitably estopped from recovering any alleged fraudulent transfers from Hicks is connection with Home America.

10.     Debtor has unclean hands due to their coercion of and misrepresentations to Hicks and other actions, and therefore the Trustee is prohibited from recovering any alleged fraudulent transfers from Hicks.

11.     Debtor waived and released any claims against Hicks in connection with the January, 2009 closing of the Home America sale.  The Debtor further waived any claims against Hicks by frustrating its own ability to rescind the transaction pursuant to the SPA by disposing of all the assets of Home America Mortgage.

12.     Hicks has filed an unsecured claim for $8,010,981.99 and is entitled to payment thereon.

13.     To the extent the Court were to find that the Trustee was entitled to recovery of any amounts pursuant to a fraudulent transfer theory, Hicks would be entitled to a credit for the value of the consideration transferred by him to the Debtor.

## JURY TRIAL DEMAND

Hicks demands trial by jury for all counts so triable.  Hicks does not consent to jury trial by the bankruptcy court.

Dated:  February 27, 2012.         Respectfully submitted,

                                   **AKERMAN SENTERFITT**


                                   By: /s/ *David E. Otero*
                                       David E. Otero
                                       Florida Bar Number:  651370
                                       E-mail:  david.otero@akerman.com
                                       Adina L. Pollan
                                       Florida Bar No. 15639
                                       E-mail:  adina.pollan@akerman.com
                                       April G.H. Davidson
                                       Florida Bar No. 0091388
                                       E-mail: april.davidson@akerman.com
                                       50 North Laura Street, Suite 3100
                                       Jacksonville, FL  32202-3640
                                       Phone:  (904) 798-3700
                                       Fax:  (904) 798-3730

                                       Attorneys for Defendant, James Gregory Hicks


## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished either by electronic notification via the CM/ECF system or by U.S. mail this 27th day of February, 2012 to:

    Paul Steven Singerman
    Berger Singerman, P.A.
    200 S. Biscayne Blvd, Suite 1000
    Miami, FL  33131


                                       /s/ *David E. Otero*
                                           Attorney

# EXHIBIT U

**Direct Endorsement/**
**Post-Endorsement**
**Technical Review Checklist**

U.S. Department of Housing
and Urban Development
Office of Housing
Federal Housing Commissioner

### Review of Underwriter/Mortgage Credit Checklist

**Mortgage Credit Underwriting/Loan Closing**
**Credit History Documents/Debts and Obligations** - Check if a required document is missing or statement describes a deficiency. Only assign a "poor" if materially affecting HUD's insurance risk and describe below.

| | | |
|---|---|---|
| M01. | ☐ | Copies of all credit reports were not submitted with loan file. |
| M02. | ☐ | Credit report was not obtained under all names and name variations used, as well as all social security numbers used. |
| M03. | ☐ | Report does not comply with prescribed guidelines. |
| M04. | ☐ | If verification of mortgage used, payment history was not shown (if not on credit report). |
| M05. | ☐ | Report was more than 120 (180) days old at time loan closed. |
| M06. | ☐ | Recent inquiries by other creditors not adequately explained. |
| M07. | ☐ | Credit accounts recently paid-in-full/source of funds unknown. |

☐ Fair  ☐ Poor  Comments:

**Underwriting Analysis**
  **Fair:** Miscalculation of debts/obligations, however risk and/or acceptability not affected. Describe below:

  **Poor:** Check if one or more of the following significantly increased HUD's insurance risk. Describe below how HUD's risk was increased.

| | | |
|---|---|---|
| M10. | ☐ | Bankruptcies, judgments, collections, foreclosures, delinquent government-related debts improperly addressed.* |
| M11. | ☐ | Past due accounts, pattern of consistently slow or late payments not satisfactorily or properly addressed. |
| M12. | ☐ | Monthly obligations improperly calculated and included in ratios. |
| M13. | ☐ | Personal obligations (child support, alimony, child care) not included in analysis. |
| M14. | ☐ | Real estate obligations/Non-owner occupant expenses improperly analyzed and used. |
| M16. | ☐ | Other |

Comments:

**Asset Verification Documents and Analysis** - Documents: Check if a required document is missing or statement describes a deficiency. Only assign a "poor" if materially affecting HUD's insurance risk and describe below.

| | | |
|---|---|---|
| M17. | ☐ | Asset verification documents more than 120 days old (180 on proposed construction) when loan closed. |
| M18. | ☐ | Gift letter not complete or does not meet all requirements |

☐ Fair  ☐ Poor  Comments:

**Underwriting Analysis**
  Fair: Miscalculation of assets to close, etc., however acceptability not affected. Describe below:

  **Poor:** Check if one or more of the following significantly increased HUD's insurance risk. Describe below how HUD's risk was increased.

| | | |
|---|---|---|
| M20. | ☐ | Substantial increase in debts or savings accounts not satisfactorily explained. |
| M21. | ☐ | Earnest money greater than 2% of sales price/Receipt not properly documented. |
| M22. | ☐ | Secondary financing does not meet HUD requirements.* |
| M23. | ☐ | Asset value of personal property sold not established and/or ownership verified. |
| M24. | ☐ | Equity from sale of previous residence not properly documented. |
| M25. | ☐ | Value and sale of stocks, bonds, other securities not verified. |
| M26. | ☐ | Transfer of Gift funds not properly substantiated. |
| M27. | ☐ | Funds to close not documented/Proper analysis of cash required vs. cash available not made. |
| M28. | ☐ | Seller concessions not properly considered or loan amount adjustments made. |
| M30. | ☐ | Other |

Comments:

**Income Verification Documents and Analysis** - Check if a required document is missing or statement describes a deficiency. Only assign a "poor" if materially affecting HUD's insurance risk and describe below.

| | | |
|---|---|---|
| M31. | ☐ | Pay stub was dated more than 30 days before signing initial application. |
| M32. | ☐ | Two-year employment history was not provided. |
| M33. | ☐ | Documents (W-2s, 1099s, 1040s, etc) do not support income used for qualifying. |
| M34. | ☐ | VOE missing employer's signatures, has white-outs, "squeezed-in" numbers, proper certifications absent. |
| M35. | ☐ | If self-employed, or using alternate documentation, file missing IRS 4506 or IRS 8821. |
| M36. | ☐ | If self-employed, two years' tax returns with all schedules were not provided. |

☐ Fair  ☐ Poor  Comments:

**Underwriting Analysis**
  **Fair:** Miscalculation of income amount or the income source is not acceptable, however acceptability and/or risk not affected. Describe below:

form HUD-54118-MCR (10/93)
ref. Handbook 4000.4

**Poor:** Check if one or more of the following significantly increased HUD's insurance risk. Descr be below how HUD's risk was increased.

| | | |
|---|---|---|
| M38. | ☐ | Income amount improperly calculated and/or analyzed. |
| M39. | ☐ | Year-to-date income does not correlate to previous years' income/Reasons for differences not documented. |
| M40. | ☐ | Income source unacceptable (overtime, bonus, car allowance, alimony, child support) |
| M41. | ☐ | Rental income not supported by tax returns (or lease if recently acquired). |
| M42. | ☐ | Stability of income not documented, including seasonal employment, second jobs etc. |
| M45. | ☐ | Other |

Comments: _____
_____

---

**Mortgage Transaction**

**Underwriting Analysis** - **Fair:** Miscalculation of mortgage amount, MIP (upfront or annual), Attachment "A" improperly processed, etc., however acceptability of loan not affected.  Descr be below:

_____

**Poor:** Check if one or more of the following significantly increased HUD's insurance risk.  Describe below how HUD's risk was increased.

| | | |
|---|---|---|
| M46. | ☐ | Loan amount/investment requirements incorrectly calculated and/or does not reflect sales contract. |
| M47. | ☐ | Repair items were not included in borrower's investment requirements or otherwise not  properly addressed. |
| M48. | ☐ | Loan-to-value ratio or statutory limits violated.* |
| M49. | ☐ | If a non-occupant co-borrower was included in mortgage, proper analysis of expenses, etc., not made. |
| M50. | ☐ | Compensating factors not properly enumerated or not sufficient to allow for loan approval on loan where ratios guidelines were exceeded. |
| M51. | ☐ | CAIVRS number not shown or, if other than "A", reason for loan approval not justified. |
| M52. | ☐ | Income amounts, assets, etc., on worksheet not reflected by that shown on final application. |
| M53. | ☐ | LTV exceeds 90% but property not eligible for maximum financing ("new const.")* |
| M54. | ☐ | Transaction violates "Seven-unit" limitation.  Mortgagor is an investor and not eligible for the loan.* |
| | | **Refinance Transactions** |
| M55. | ☐ | If streamline refinance, lender did not provide evidence that previous mortgage was HUD-insured. |
| M56. | ☐ | If investor refinance, file includes a HUD appraisal/closing costs included in mortgage. |
| M57. | ☐ | Subordinate liens included in new mortgage amount were not seasoned at least one year, or were not related to repairs/rehabilitation. |
| M58. | ☐ | Cash to borrower exceeded $250 (unless LTV < 85% and eligible for cash back). |
| M60. | ☐ | Other |

Comments: _____
_____

---

**Application/Underwriting/Closing Documents** - Check if a required document is missing or statement describes a deficiency.  Only assign a "poor" if materially affecting HUD's insurance risk, and describe in "comments" below.

| | | |
|---|---|---|
| | | **Sales Agreement** |
| M70. | ☐ | Was not signed by all parties to the transaction. |
| M71. | ☐ | Contract addenda were not provided. |
| M72. | ☐ | Although identity-of-interest was indicated, proper consideration was not given, including maximum LTV ratio. |
| M73. | ☐ | Responsibility for repairs required by appraiser was not detailed. |
| M74. | ☐ | Seller not acceptable (e.g., seller LDP'd and not selling principal residence) |
| M75. | ☐ | Security Instruments/Mortgage Note, etc. |
| M76. | ☐ | Loan was not closed in the same names as those approved on worksheet/loan application. |
| M77. | ☐ | Underwriter Certification not completed and/or executed properly. |
| | | **Settlement Statement/HUD-1** |
| M78. | ☐ | Was not signed by buyer, seller, etc. |
| M79. | ☐ | Seller and buyer were not identical to those shown on the sales contract. |
| M80. | ☐ | Seller concessions do not reflect those indicated on the sales contract and worksheet. |
| M81. | ☐ | Earnest money credit varies from that shown on sales agreement/analysis worksheet. |
| M82. | ☐ | Indicates unauthorized charges, overcharges, etc. |
| M83. | ☐ | Closing costs on HUD-1 does not reflect those used to determine mortgage on worksheet (loan not within $250). |
| M84. | ☐ | Secondary financing shown but not disclosed elsewhere. |
| | | **Uniform Residential Loan Application (URLA) & Addendum (HUD-92900-A)** |
| M85. | ☐ | Initial (handwritten) application missing/not in file (if lender produces separate initial and final loan applications) |
| M86. | ☐ | Variations between initial and final applications not satisfactorily explained. |
| M87. | ☐ | Addendum is not complete and correct, including property address, discount points paid by borrower. |
| M88. | ☐ | Addendum not signed by borrower before signing by lender. |
| M89. | ☐ | Not all conditions (from page 3) satisfied at closing or waived. |
| M90. | ☐ | Borrower Identification |
| M91. | ☐ | Files does not contain valid picture identification or SSN not documented. |

☐ Fair   ☐ Poor        Comments: _____

_____
_____
_____

* Indicates deficiencies that may warrant indemnification.

| Completed by: | Date | CHUMS ID# |
|---|---|---|
| | | |
| **X** | | FHA Case No |

# EXHIBIT V

## MORTGAGE FINANCE FRAUD WARNING SIGNALS

The following describe "warning signals" of possible mortgage finance fraud. The presence of one or more of these warning signals does not necessarily mean that fraudulent activity occurred, but that the need for a more detailed review of the mortgage may be warranted.

**Mortgage Application Warning Signals**
__Significant or contradictory changes from handwritten to typed application
__Unsigned or undated application
__Employer's address shown only as a post office box
__Buyer currently resides in property
__Borrower and employer have same telephone number

**Credit Report Warning Signals**
__No credit history (possible use of alias)
__Recent inquiries from other mortgage lenders
__Social Security number used varies from the shown on other documents
__Employment information differs from the shown on VOE or mortgage application
__Credit agency unable to confirm employment

**Salaried Employment and Income Warning Signals**
__Income exceeds that typical for type of employment
__Pay stub not pre-printed/Does not show employer or employee name
__Employer's Federal ID number not in proper format (nn-nnnnnnn)
__Deductions (FICA, etc) on W-2 do not reflect correct percentages
__VOE signed by secretary/co-worker rather than Personnel Dept. individual
__Employer's address is a P. O. Box
__Evidence of whiteout, alterations, squeezed-in numbers, rounded dollar amounts
__Appearance that verification was hand-carried

**Self-Employment Warning Signals**
__Tax Returns not signed or dated
__Paid taxpreparer handwrites returns
__Evidence of white-outs or alterations
__Borrower with substantial cash in bank reporting little or no interest income
__Real Estate taxes or mortgage interest paid, but no ownership of real property shown
__Different handwriting or typestyle within one document

**Source of Funds Warning Signals**
__New bank account
__Evidence of white-outs, alterations, rounded dollar amounts
__Illegible signatures with no further identification
__Recent large deposits without acceptable identification
__Unusual downpayment source (i.e. sale of personal property, rent credit, repayment of personal loan, etc)
__Stocks, bonds, etc not publicly traded
__Joint bank account with real estate broker, builder, seller, etc.

**Sales Contract Warning Signals**
__Purchase transaction with no real estate agent involved.
__Excessive (above typical for area) real estate commission (may be funding downpayment)
__Seller shown as relative, real estate agent or employer
__Sales price substantially below market value

**Legal and Closing Document Warning Signals**
__Terms of the closed mortgage differ from terms approved by underwriter
__Unusual credits or disbursements shown on HUD-1
__Power-of-attorney used with no explanation
__Reference to other undisclosed financing

**Owner-Occupancy Warning Signals**
__Employment is not within reasonable distance of property
__Buyer "downgrading" to less expensive house
__Buyer purchasing 'principal residence" but owns rental properties nearby

# EXHIBIT W

# INTRODUCTION

This User Guide is designed to assist lenders using the Federal Housing Administration's (FHA) *Technology Open To Approved Lenders* (TOTAL) Mortgage Scorecard deployed in conjunction with various automated underwriting systems (AUS). FHA's TOTAL Mortgage Scorecard evaluates the overall creditworthiness of the applicants based on a number of credit variables and, when combined with the functionalities of the AUS, indicates a recommended level of underwriting and documentation to determine a loan's eligibility for insurance by FHA. Taken together, TOTAL and the AUS either conclude that the borrowers' credit and capacity for repayment of the mortgage are acceptable or will refer the loan application to a Direct Endorsement (DE) underwriter for further consideration and review. It is FHA's policy that no borrower be denied a FHA-insured mortgage solely on the basis of a risk assessment generated by the TOTAL mortgage scorecard.

The mortgage credit portion of loan applications that receive an accept or approve recommendation (competing AUSs may use either term) need not be reviewed by a DE underwriter, and neither the mortgage credit analysis worksheet nor the DE Approval (HUD-92900-A, page 3) need indicate the individual underwriter's Computerized Homes Underwriting Management System (CHUMS) identification number. Instead, these documents will show the identification number assigned by FHA for its TOTAL Mortgage Scorecard and provide feedback to the lender. A DE underwriter must underwrite the appraisal according to standard FHA requirements regardless of the mortgage credit risk score determined by the scorecard.

Each AUS using FHA's Mortgage Scorecard produces a document that provides feedback to the lender. The feedback document upon which the lender makes its credit decision (typically, the result from the last scoring event) must be included in the binder submitted to FHA for insurance purposes even if the loan application is referred to a DE underwriter for manual underwriting. It is to be placed on the right-hand side of the endorsement binder, top sheets.

Regardless of the risk assessment provided, the lender remains accountable for compliance with FHA eligibility requirements, as well as for any credit, capacity, and documentation requirements not covered in this user guide. A registered DE underwriter must fully underwrite those applications where the AUS refers the loan application to an underwriter for review and comply with the underwriting requirements described in Handbook HUD 4155.1 REV-5, Mortgage Credit Analysis, and applicable mortgagee letters and other policy directives.

Chapter 1 of this User Guide describes the process for submitting loans, the programs and property types eligible for risk assessment by FHA's Mortgage Scorecard, and data integrity issues. Chapter 2 describes underwriting issues and contrasts the documentation requirements between loans rated as accept/approve and those rated as refer, and details system overrides and manual downgrades. Chapter 3 briefly describes mortgage endorsement procedures.

FHA TOTAL Mortgage Scorecard User Guide

---

## Summary of Credit Policy Revisions and Documentation Reductions

As described in greater detail in Chapter 2 in this guide, borrowers *may* be eligible for some or all of the reduced documentation and credit policy revisions in the following categories, depending on the risk class of the mortgage. Most of the credit policy revisions to the underwriting requirements of the mortgage credit analysis handbook and documentation reductions are available only on loans scored as accept or approve.

For ease of reading, we have chosen to use "lender" in lieu of "mortgagee" throughout this user guide. However, lender is to be interpreted as a FHA-approved mortgagee as described in 24 CFR § 202.10.

FHA TOTAL Mortgage Scorecard User Guide

# CHAPTER 1

# LOAN SUBMISSION REQUIREMENTS

The Loan Origination System (LOS) being used, as well as the AUS vendor or platform, will determine the manner in which data are entered into the AUS, including the field names, which may vary across systems. The instructions below are designed to provide lenders with basic information on FHA standards and definitions.

Please note that although all of the following products and programs are eligible for risk assessment using FHA's TOTAL Mortgage Scorecard, it is possible that not all are supported by the AUS. Mortgage lenders will need to check the AUS vendor's user guide for details. The AUS's proprietary user guide will provide the requirements for data input specific to that AUS.

### Property and Program Eligibility

To obtain a credit risk assessment from FHA's TOTAL Mortgage Scorecard, the loan must meet the following FHA eligibility criteria:

- **Loan Purpose**
  - Purchase Money Mortgage
  - Construction-to-Permanent Mortgages
  - Regular Refinance with Credit Qualifying
  - Cash-Out Refinances up to 85 percent of the appraised value
  - Streamline Refinance (both credit qualifying and non-credit qualifying, provided sufficient data is entered and verified to obtain a risk analysis)
  - Credit Qualifying Assumptions

- **FHA Insurance Product**
  - 203(b)---Standard FHA product for detached dwellings
  - 203(h)---Mortgages for Disaster Victims
  - 234(c)---Unit Mortgages in Condominium Projects
  - 203(k)---Rehabilitation Mortgage Insurance
  - 251---Adjustable Rate Mortgages (ARMs) on single family Detached and Condominium Units
  - Energy Efficient Mortgages (EEMs) (see instructions under "Income and PITI Information," below)
  - Section 247---Hawaiian Home Land mortgages

FHA TOTAL Mortgage Scorecard User Guide

- **Property Types**

    - Single family dwellings of 1- to 4-living units  [Note: 3- and 4-unit properties have additional underwriting requirements as described in Handbook HUD 4155.1 REV-5 which may or may not be supported by the AUS]
    - Manufactured homes meeting FHA's property requirements for Title II mortgage insurance
    - Units in Low- and High-Rise Condominium Projects [Note: Project must be FHA approved or individual unit must be eligible using "spot condo" processing]

- **Plan Type**
    - Fixed Rate Mortgages
    - Adjustable Rate Mortgages, including 1-year ARMs and FHA's hybrid ARMs of 3-, 5-, 7-, and 10-years

### Loan Application Information and Definitions

The Uniform Residential Loan Application (URLA) captures most of the information needed to obtain a risk assessment from an AUS, and a completed URLA is required for all FHA insured mortgages. The following guidance is to ensure that information entered into the LOS/AUS meets FHA eligibility criteria. Income, assets, debts, and other credit variables entered into the AUS to obtain a risk assessment evaluation using FHA's TOTAL Mortgage Scorecard must meet FHA's *eligibility* for that loan application element.

#### Type of Mortgage and Terms of Loan

Section I of the URLA captures data on the Type of Mortgage and Terms of the Loan, including interest rate, etc. The interest rate at which the loan will close is to be entered in the AUS for qualifying purposes; any increase requires a resubmission. Borrowers using 1-year ARMs are to be qualified at an interest rate one percentage point above the initial rate if the loan-to-value equals or exceeds 95 percent. FHA's 3-year, 5-year, 7-year, and 10-year ARMs are to be underwritten at the loan's initial interest rate.

#### Property Information/Section II

This captures information on the property and purpose of the loan. Because the maximum insured mortgage is a function of location and the number of units, accurately enter the property county and property state as listed in the AUS vendor's Maximum Mortgage Limit Table (if provided by the AUS vendor).

#### Borrower Information/Section III

Must include a two-year residency history for each borrower (except for streamline refinances of FHA-insured mortgages).

*Employment Information/Section IV*

Must include a two-year employment history for each borrower (except for streamline refinances of FHA-insured mortgages).

*Income and Principal, Interest, Taxes and Insurance (PITI) Information/Section V*

All income entered into the AUS for risk assessment purposes must meet FHA's requirements for qualifying income (as explained in Handbook HUD4155.1 REV-5 and applicable mortgagee letters). The lender is responsible for ascertaining that the income used in qualifying the applicant meets FHA's criteria for inclusion in the qualifying ratios.

PITI consists of the items listed below (as well as any other real estate owned):

- Principal and Interest
- Real Estate Taxes (if proposed construction, base estimate on property being completed and valued/reassessed by the taxing authority)
- Hazard Insurance Premiums
- Monthly FHA Mortgage Insurance Premiums
- Flood Insurance
- Ground Rent
- Homeowner's Association Dues/Condominium Fees
- Other property related special assessments
- Subordinate Financing payments scheduled to begin within three years of loan closing

If the mortgage being underwritten is a one-year *ARM* with a loan-to-value (LTV) ratio equal to or greater than 95 percent, calculate the Principal and Interest using a rate one percentage point above the loan's initial interest rate. FHA's 3-, 5-, 7-, and 10-year ARMs are to be underwritten at the loan's initial interest rate.

If the mortgage being underwritten is an *Energy Efficient Mortgage* (EEM), and the AUS does not separately accommodate such mortgages, use the following instructions for underwriting these loans. If the lender obtains an "accept" or "approve" on a mortgage loan application prior to adding the energy efficient improvements, FHA will recognize the risk rating from the AUS and permit the increased mortgage payments without re-underwriting or re-scoring *provided* that the lender's DE underwriter certifies that he or she has reviewed the calculations associated with the energy efficient improvements, and found the mortgage and the property to be in compliance with FHA's underwriting instructions. This language must appear either in the remarks section of the mortgage credit analysis worksheet or on a separate document in the case binder.

FHA TOTAL Mortgage Scorecard User Guide

*Assets/Section VI*

Asset documentation must comply with FHA requirements. All asset information entered into the AUS must be verifiable and meet FHA requirements for eligibility.

Verified Reserves After Closing are not a requirement for FHA underwriting (except on 3- and 4-unit properties), but are nevertheless considered in the mortgage evaluation. If not already calculated by the LOS, this information should be entered in the appropriate field for the automated underwriting database. See Chapter 2 of this User Guide for information on what assets may be considered as Reserves for qualifying purposes.

*Liabilities Section VI*

Include the following amounts, if applicable, in Total Debt:

All debts listed on credit report that are not excludable under the conditions described below.

Alimony, child support, separate maintenance agreements (Note: Because of the tax treatment of alimony, the lender may reduce the borrower's monthly gross income by the amount of the alimony payments rather than include it as a debt obligation under Total Debt. If this option is chosen, do not also include the alimony payment in the data field that calculates Total Debt.)

- Negative Rent on other real estate owned
- Mortgage Debt (PITI) on other real estate owned
- Installment debt (Note: Installment debts with fewer than ten payments remaining may be excluded from the ratio calculations. However, if the AUS indicates that manual underwriting is required, then the DE underwriter must determine that short-term debt will not negatively affect the borrower's ability to make mortgage payments during the early months following loan settlement. See Handbook HUD 4155.1 REV-5 for additional information.)
- Significant (greater than $100 per month) debt payment not shown on the credit report and all debts disclosed by the borrower.
- Payment from new debt resulting from material inquiries on credit report within 90 days of application. *Material inquiries* result in obligations incurred by the mortgage borrowers and may include other mortgages, auto loans and leases, or other installment loans and must be considered in the underwriting analysis. Inquiries from department stores, credit bureaus, and insurance companies are not considered as "material."
- Those debts that must be considered in the qualifying ratios if the borrower resides in or the property is located in a community property state, per Handbook HUD 4155.1 REV-5.

FHA TOTAL Mortgage Scorecard User Guide

---

## Loan Resubmission Requirements

The lender is responsible for the integrity of the data used to obtain the risk assessment, and for resubmitting the loan when material changes are discovered or otherwise occur during loan processing. The lender is required to resubmit the loan through the automated underwriting system for an updated evaluation under any of the conditions described below.

- Borrowers were either added to or deleted from the loan application. Those borrowers shown on the most recent submission into the AUS must be the same borrowers who sign the mortgage note/deed of trust.
- Borrower's income and/or cash assets/reserves decrease.
- There were changes to the sales price or terms and conditions of the mortgage.
- Any changes are discovered that would negatively affect the borrowers' ability to repay the mortgage.
- Information about the property valuation changes (e.g., the appraised value is determined to be less than the sales price).

# CHAPTER 2

# UNDERWRITING REQUIREMENTS

The underwriting and documentation instructions contained throughout this chapter are designed only for lenders using FHA's TOTAL Mortgage Scorecard in conjunction with an AUS. For mortgage loans scored as "accept" or "approve," FHA has granted a number of credit policy revisions and documentation relief from the instructions in Handbook HUD 4155.1 REV-5 as described below. Lenders must still comply with outstanding eligibility requirements and ensure the integrity and accuracy of the data used to render a decision. Loan applications receiving a "refer" risk classification are remanded to a DE underwriter and FHA's credit policies as described in HUD Handbook 4155.1 REV-5 apply, subject to certain specific modifications as detailed below.

## Credit and Capacity to Repay Evaluation

FHA's Mortgage Scorecard evaluates the borrower's credit history, income, cash reserves, and other components of creditworthiness and either determines that the borrower is acceptable as a mortgage credit risk and may be processed with reduced documentation, or refers the loan application to a DE underwriter for his or her personal review and evaluation. This chapter describes how lenders may use FHA's TOTAL Mortgage Scorecard deployed through an approved AUS in evaluating the borrower's credit and capacity to repay the mortgage including:

- Adequacy of Income;
- Funds to Close and Cash Reserves; and
- Credit History

## Risk Classification and Related Responsibilities

Lenders should also refer to the user guides developed by the AUS vendor. However, feedback messages provided by the AUS vendor do not supersede the written guidelines issued by FHA in this User Guide.

## "Accept/Approve"

If the AUS using the TOTAL Mortgage Scorecard rates the mortgage loan application as an accept or approve, based on the analysis of the credit and capacity to repay and certain other loan characteristics, the loan is eligible for FHA's insurance endorsement provided:

- The data entered into the AUS are true, complete, properly documented, and accurate; and

- The entire loan package meets all other FHA requirements (except for those specifically not required because the loan was evaluated by an AUS). FHA requires adherence to all eligibility rules and the documentation requirements described elsewhere in this User Guide and Handbook HUD 4155.1 REV-5. The DE underwriter need not use his or her personal CHUMS identification number on forms HUD-92900-WS, 92900-PUR, loan information summary sheet, or 92900-A and must substitute the CHUMS identifier provided as feedback by TOTAL.

## "Approve/Ineligible" Recommendations

The AUS vendor may also provide "approve/ineligible" recommendations. Loans receiving this recommendation have been determined to have met FHA's Mortgage Scorecard threshold but do not meet certain FHA eligibility requirements. The vendor will provide detailed information advising why the loan did not meet FHA's eligibility requirements. Typical reasons for an "approve/ineligible" recommendation include:

- Loan amount exceeds the FHA maximum;
- Property type submitted does not correspond to the Section of the Act selected in the AUS;
- Insufficient reserves on a 3- or 4-unit property; and
- Insufficient funds for closing.

Loans that receive a recommendation of "approve/ineligible" may still be eligible for FHA insurance. To achieve eligibility status, the lender must analyze the findings report and determine that the reason for the ineligibility is one that can be resolved in a manner complying with FHA underwriting requirements. The lender must document the circumstances or other reasons that were evaluated in making the decision to approve the loan in the remarks section of the mortgage credit analysis worksheet (MCAW). The lender is not required to re-underwrite the entire loan, but must address each reason the loan received an ineligible recommendation and document and explain why it is now eligible for FHA insurance. Loans that receive a recommendation of "approve/ineligible" will receive the benefit of all other accept or approve documentation and credit policy revisions. The CHUMS identifier issued by TOTAL (currently ZFHA) may be used as the underwriter on the MCAW for mortgages risk classified as "approve/ineligible."

The lender may also need to correct the issue(s) that caused the loan to be ineligible and resubmit the loan to attempt to obtain an "accept/approve" recommendation such as when a mortgage amount exceeds statutory limits.

## "Refer"

The lender using the TOTAL Mortgage Scorecard must conduct a manual underwriting review according to FHA requirements for all loan applications that generate a "refer" rating. The DE

underwriter must determine if the borrower is creditworthy in accordance with FHA standard credit policies and requirements. It is FHA policy that no borrower will be denied a FHA insured mortgage loan solely on the basis of a risk assessment generated by the TOTAL Mortgage Scorecard.

## System Overrides and Manual Downgrades

A system override and/or manual downgrade of an "accept/approve" to a "refer" classification may be required if a particular loan application variable is revealed during loan processing. Loan processors and underwriters must be aware of the variables detailed later in this User Guide that otherwise require an accept/approve mortgage loan application to be remanded to an underwriter for his or her personal review and decision.

## Documentation Requirements

All standard FHA documentation requirements must be met, with the exception of those described below which may allow for reduced documentation sets based upon the risk classification of the loan. The lender must also document any situation not addressed in this User Guide in accordance with the applicable HUD Handbook or Mortgagee Letter.

"Faxed" Documents—If income/employment, asset, or other documents including various disclosures are "faxed" to and from the lender, the documents must clearly identify the employer, depository/investment firm's name, etc., and source of information. The lender is accountable for ascertaining the authenticity of the document by examining, among other things, the information included at the top or banner portion of the fax received by the lender. The document itself must also include a name and telephone number of the individual with the employer or financial institution that can verify the accuracy of the data.

Internet Downloads—Income/employment or asset documents downloaded from an Internet website must be placed in the case binder in paper form. The documents must clearly identify the employer or depository/investment firm's name and source of information. The lender is accountable for ascertaining the authenticity of the document by examining the information included on any headers, footers, and the banner portion of the printouts of the downloaded web page(s). The printed web page(s) must also show its Uniform Resource Locator (URL) address and the date and time printed.

## Employment /Income

Specific underwriting requirements for what constitutes acceptable types and sources of income, as well as stability of income requirements are described in Chapter 2 of Handbook HUD 4155.1 REV-5. The lender is responsible for documenting and verifying the accuracy of the amount of income being reported, and for determining if it can be considered as effective income in determining the payment-to-income and debt-to-income ratios. If any information regarding a

borrower's income or employment changes during loan processing, the lender must resubmit current, corrected information through the AUS to determine if the risk classification changes. Additional documentation may be required for borrowers who work for family-owned businesses, as per the mortgage credit handbook.

| For loan applications rated as *"Accept/Approve"*, use the following to verify employment for employed borrowers: | For loan applications rated as *"Refer"*, use the following to verify employment for employed borrowers: |
|---|---|
| • **Current Employment**---The lender must obtain the single most recent pay stub (showing year-to-date earnings of at least one month) **and** any one of the following to verify current employment: | • **Current Employment**---The lender must obtain the single most recent pay stub (showing year-to-date earnings of at least one month) **and** any one of the following to verify current employment: |
|     • Written Verification of Employment (VOE)<br>    • Verbal verification of employment (Lender or service provider must document individual verifying the employment.)<br>    • Electronic verification acceptable to FHA |     • Written Verification of Employment (VOE)<br>    • Verbal verification of employment (Lender or service provider must document individual verifying the employment.)<br>    • Electronic verification acceptable to FHA |
| • **Employment History**---The lender is required to verify the applicant's employment history for the previous two years. However, direct verification is *not* required if *all* of the following conditions are met:<br>    • The current employer confirms a two-year employment history (this may include a paystub indicating a hiring date)<br>    • Only base pay is used to qualify (no overtime or bonuses)<br>    • The borrower signs form IRS 4506 or 8821 for the previous two tax years.<br><br>If the applicant has not been employed with the same employer for the previous two years and/or all conditions immediately | **Employment History**---The lender is required to verify the applicant's employment history for the previous two years. Obtain one of the following for the most recent two years to verify the applicant's employment history:<br>    • W-2(s)<br>    • VOE(s)<br>    • Electronic verification acceptable to FHA |

FHA TOTAL Mortgage Scorecard User Guide

above cannot be met, then the lender must
obtain one of the following for the most
recent two years to verify the applicant's
employment history:
- W-2(s)
- VOE(s)
- Electronic verification acceptable
  to FHA

## Commissioned Individuals

A commissioned applicant is defined as one who receives more than 25 percent of his or her
annual income from commissions. For these individuals, obtain and analyze signed federal
income tax returns, including all schedules, for the most recent two years and subtract
unreimbursed business expenses in underwriting.

## Self-Employed Borrowers

FHA considers a borrower owning 25 percent or more of a business as being self-employed. The
minimum length of self-employment that a borrower must exhibit to have that income considered
stable and effective for qualifying is discussed in Handbook HUD 4155.1 REV-5. Unless the
self-employed borrower's income information is obtained directly from the Internal Revenue
Service (IRS), as a quality control measure, all other self-employed borrowers must sign form
IRS 4506 or 8821 and lenders must routinely verify through IRS the income being reported for
the mortgage application.

| Use the following to verify the income for self-employed borrowers rated as *"Accept/Approve"* by TOTAL: | Use the following to verify the income for self-employed borrowers rated as *"Refer"* by TOTAL: |
|---|---|
| • **Individual Tax Returns**---The lender must obtain signed individual federal tax returns, including all schedules, or income information directly from the IRS for the most recent two years and subtract unreimbursed business expenses in underwriting. | • **Individual Tax Returns**---The lender must obtain signed individual federal tax returns, including all schedules, or income information directly from the IRS for the most recent two years and subtract unreimbursed business expenses in underwriting. |
| • **Business Tax Returns**---The lender must obtain signed federal business tax returns, with all applicable schedules, if the business is a corporation, an "S" corporation, or a partnership. Also obtain business income information directly from | • **Business Tax Returns**---The lender must obtain signed federal business tax returns, with all applicable schedules, if the business is a corporation, an "S" corporation, or a partnership. Also obtain business income information directly from |

the IRS for the most recent two years for each business. However, for accepts/approves, no business tax returns are required if *all* of the following are met:
- Individual federal income tax returns show increasing self-employed income over the past two years.
- Funds to close are not coming from business accounts
- The FHA insured mortgage is not a cash-out refinance

|  |  |
|---|---|

the IRS for the most recent two years for each business.

- **Profit and Loss (P&L) Statements and Balance Sheets**---These documents are not required on mortgages rated "accept/approve" by FHA's Mortgage Scorecard *provided* that the income used in qualifying was based on the previous two years' tax returns. However, if income used to qualify the borrower exceeds that of the two-year average based on tax returns, then either an audited P&L statement or signed quarterly tax returns are to be used to support the greater income stream.

- **Profit and Loss (P&L) Statements and Balance Sheets**---Obtain profit and loss and balance sheet or income information directly from the IRS if all of the following occur:
  - More than seven (7) months have elapsed since the business tax year's ending date.
  - Income to the self-employed borrower from each individual business is greater than five (5) percent of his or her stable monthly income.

- **Business Credit Reports**---Obtain a business credit report on corporations and "S" corporations.

## "Deminimus" Self-employed

If a borrower receives less than five percent of his or her stable monthly income as a result of being self-employed, and the loan application receives an "accept/approve", there is no need to obtain individual or business tax returns, nor is it necessary to obtain balance sheets or P&L statements. Verify the existence of the business through telephone listings, business cards, etc.

If a borrower receives less than five percent of his or her stable monthly income as a result of being self-employed, and the loan application receives a refer, there is no need to obtain individual or business tax returns, nor is it necessary to obtain balance sheets or P&L statements. Verify the existence of the business through telephone listings, business cards, etc.

## Other Income Information

| If the loan application is rated as *"Accept/Approve"*, the lender must abide by the following if there are employment gaps or if alimony or child support are being used in qualifying: | If the loan application is rated as *"Refer"*, the lender must abide by the following if there are employment gaps or if alimony or child support are being used in qualifying: |
|---|---|
| • **Employment Gaps**---Obtain an explanation for employment gaps of greater than **60** days if it occurred within the last two years. | • **Employment Gaps**---Obtain an explanation for employment gaps of greater than **30** days in duration if it occurred within the last two years. |
| • **Alimony and/or Child Support**---Obtain evidence of receipt using deposits on bank statements or canceled checks for the most recent three (3) months that support the amount used in qualifying. Provide evidence that the claimed income will continue for at least three years. Use the front and pertinent pages of the divorce decree/settlement agreement showing financial details. | • **Alimony and/or Child Support**---Obtain evidence of receipt using deposits on bank statements or canceled checks for the most recent three (3) months that support the amount used in qualifying. Provide evidence that the claimed income will continue for at least three years. Use the front and pertinent pages of the divorce decree/settlement agreement showing financial details. |

## Asset Information

| If the loan application is rated as an *"Accept/Approve"*, document the borrower's assets to close and cash reserves, if any, using the following: | If the loan application is rated as a *"Refer"*, document the borrower's assets to close and cash reserves, if any, using the following: |
|---|---|
| • **Depository Accounts**---If a Verification of Deposit (VOD) is not obtained, then provide a statement showing the previous month's ending balance for the most recent month. If the previous month's balance is not shown, then obtain statement(s) for the most recent two months to verify sufficient funds to close. | • **Depository Accounts**---If a Verification of Deposit (VOD) is not obtained, then provide a statement showing the previous month's ending balance for the most recent two months. If the previous month's balance is not shown, then obtain statement(s) for the most recent three months to verify sufficient funds to close. |
| • **Cash Reserves**---Verify all cash reserves available after closing that are submitted to the AUS. Note that cash reserves after closing are not required on FHA mortgages | • **Cash Reserves**---Verify all cash reserves available after closing that are submitted to the AUS. Note that cash reserves after closing are not required on FHA mortgages |

FHA TOTAL Mortgage Scorecard User Guide

(except when purchasing 3- or 4-unit properties) but are evaluated in determining the risk classification of the loan.

Cash reserves may include certain retirement accounts. To account for withdrawal penalties and taxes, only 60% of the vested amount of the account may be used. The lender must document the existence of the account with the most recent depository or brokerage account statement. In addition, evidence must be provided that the retirement account allows for withdrawals for conditions other than in connection with the borrower's employment termination, retirement, or death. If withdrawals can only be made under these circumstances, the retirement account may not be included as cash reserves. If any of these funds are also to be used for loan settlement, that amount must be subtracted from the amount included as cash reserves.

- **Gift Funds**---The borrower must list the name, address, telephone number, relationship to the homebuyer, and the dollar amount of the gift on the loan application or in a gift letter for each cash gift received. If sufficient funds required for closing are not already verified in the borrower's accounts, document the transfer of the gift funds to the homebuyer in accordance with instructions described in Handbook HUD 4155.1 REV-5. [Note: No form of secondary financing, with or without required payments, is to be shown as "gifts" in any AUS.]

- **Stock and/or Bond Accounts**—Obtain brokerage statement(s) for each account for

(except when purchasing 3- or 4-unit properties) but are evaluated in determining the risk classification of the loan.

Cash reserves may include certain retirement accounts. To account for withdrawal penalties and taxes, only 60% of the vested amount of the account may be used. The lender must document the existence of the account with the most recent depository or brokerage account statement. In addition, evidence must be provided that the retirement account allows for withdrawals for conditions other than in connection with the borrower's employment termination, retirement, or death. If withdrawals can only be made under these circumstances, the retirement account may not be included as cash reserves. If any of these funds are also to be used for loan settlement, that amount must be subtracted from the amount included as cash reserves. Note: To be considered as a compensating factor when manually underwriting, there must be three months' worth of such reserves.

- **Gift Funds**---The borrower must list the name, address, telephone number, relationship to the homebuyer, and the dollar amount of the gift on the loan application or in a gift letter for each cash gift received. If sufficient funds required for closing are not already verified in the borrower's accounts, document the transfer of the gift funds to the homebuyer in accordance with instructions described in Handbook HUD 4155.1 REV-5. [Note: No form of secondary financing, with or without required payments, is to be shown as "gifts" in any AUS.]

- **Stock and/or Bond Accounts**—Obtain brokerage statement(s) for each account for

FHA TOTAL Mortgage Scorecard User Guide

the most recent two months. Evidence of liquidation is *not* required.

- **Retirement Accounts**---Obtain the most recent statements for each account to verify sufficient funds to close. Document the terms and conditions for withdrawal and/or borrowing and that the borrower is eligible for these withdrawals. Use only 60 percent of the amount in the account unless the borrower presents documentation supporting a greater amount after subtracting any taxes or penalties for early withdrawal. Evidence of liquidation is *not* required.

- **Sale of Home**---Obtain a HUD-1 or equivalent closing statement. If the borrower is being transferred by his or her company under a guaranteed sales plan, obtain an executed buyout agreement and accompanying settlement statement indicating that the employer or relocation service takes responsibility for the outstanding mortgage debt.

- **Sale of Assets**---If an asset other than real estate or exchange-traded securities is sold to accumulate funds to close the mortgage, obtain a bill of sale and evidence of proceeds, or document the existence, value, and buyer's intention to purchase. Evidence of liquidation is *not* required.

- **Earnest Money and Other Large Deposits**---Obtain an explanation and documentation for recent large deposits in excess of 2 percent of the property's sales price, including the earnest money deposit. Also verify that any recent debts were not incurred to obtain part or all of the required cash investment on the property being purchased.

the most recent three months. Evidence of liquidation is required if used for cash to close.

- **Retirement Accounts**---Obtain the most recent statements for each account to verify sufficient funds to close. Document the terms and conditions for withdrawal and/or borrowing and that the borrower is eligible for these withdrawals. Use only 60 percent of the amount in the account unless the borrower presents documentation supporting a greater amount after subtracting any taxes or penalties for early withdrawal. Evidence of liquidation is *not* required.

- **Sale of Home**---Obtain a HUD-1 or equivalent closing statement. If the borrower is being transferred by his or her company under a guaranteed sales plan, obtain an executed buyout agreement and accompanying settlement statement indicating that the employer or relocation service takes responsibility for the outstanding mortgage debt.

- **Sale of Assets**---If an asset other than real estate or exchange-traded securities is sold to accumulate funds to close the mortgage, obtain a bill of sale and evidence of liquidation.

- **Earnest Money and Other Large Deposits**---Obtain an explanation and documentation for recent large deposits in excess of 2 percent of the property's sales price, including the earnest money deposit. Also verify that any recent debts were not incurred to obtain part or all of the required cash investment on the property being purchased.

FHA TOTAL Mortgage Scorecard User Guide

## Credit Report Processing and Reconciliation Information

The lender is responsible for reviewing all credit reports for all borrowers. Lenders may choose to document each borrower's credit history by obtaining credit reports through the AUS vendor, or separately through an independent source, depending on the chosen AUS. The vendor will determine the options available to the lender, including use of in-file credit reports, merged credit reports, and Residential Mortgage Credit Reports (RMCRs).

In the event that derogatory or delinquent credit items are revealed during processing that are not reflected on the credit report and, thus, were *not* considered by the scorecard, downgrade to a *Refer* and manually underwrite the loan. Derogatory credit items that could conceivably not appear on the credit report and must result in a downgrade include but are not limited to:

- Bankruptcy, foreclosure, collection account, charge-off, tax lien, or judgment; and
- Any mortgage trade line including mortgage line-of-credit payments, during the most recent 12 months, consisting of:
  3 or more late payments of greater than 30 days, or
  1 or more late payments of 60 days plus 1 or more 30-day late payments, or
  1 payment greater than 90 days late.

| Use the following to document the borrower's credit history for loans receiving an *"Accept/Approve"*: | Use the following to document the borrower's credit history for loans receiving a *"Refer"*: |
|---|---|
| • **Significant Inaccuracy/Undisclosed Debt**—When a debt or obligation (other than a mortgage) is revealed during the application process that was not listed on the loan application and/or credit report and was *not* considered by the AUS, the lender must: <br><br> • Verify the actual monthly payment amount; and <br> • Include the monthly payment amount and re-submit the loan if the liability is greater than $100 per month. Direct verification of the debt is not required. <br> • Determine that any funds borrowed were not/will not be used for the homebuyer's cash investment into the transaction. | • **Significant Inaccuracy/Undisclosed Debt**—When a debt or obligation (other than a mortgage) is revealed during the application process that was not listed on the loan application and/or credit report and was *not* considered by the AUS, the lender must: <br><br> • Verify the actual monthly payment amount; and <br> • Include the monthly payment amount and manually underwrite the mortgage using standard qualifying criteria. Direct verification of the debt is not required. <br> • Determine that any funds borrowed were not/will not be used for the homebuyer's cash investment into the transaction. |

- **Contingent Liability on Mortgage Debt--**
  If the credit report indicates a mortgage
  debt that has been assumed by an unrelated
  party, with or without a release of liability,
  or the title has been transferred because of
  divorce, lenders need not include the debt
  in the qualifying ratios.  Obtain either a) a
  copy of the divorce decree ordering the
  other spouse to make payments or b) the
  assumption agreement and the deed
  showing transfer of title out of the
  borrower's name.  There is no 12-month
  payment history requirement.

- **Mortgage Reference---** If a mortgage debt
  does not appear on the credit report, the
  credit report does not have a 12-month
  history, or if no rating is available, obtain
  the most recent 12-month history and
  include the payment in the qualifying
  ratios.

- **Rental Reference---**A separate rental
  reference is not required.

- **Credit Report Inquiries---**Include new
  debt payment resulting from material
  inquiries listed on the credit report in the
  debt ratios.  Also determine that any recent
  debts were not incurred to obtain any part
  of the required cash investment on the
  property being purchased.

- **Derogatory Credit Information and
  Judgments---**Obtain evidence of payoff for
  any outstanding judgments shown on the
  credit report.  No other explanation is
  required for adverse credit or other

- **Contingent Liability on Mortgage Debt--**
  If the credit report indicates a mortgage
  debt that has been assumed by an unrelated
  party, with or without a release of liability,
  or the title has been transferred because of
  divorce, lenders need not include the debt
  in the qualifying ratios *provided* that
  evidence is obtained that the mortgage has
  been current during the previous 12 months
  or that the loan-to-value ratio is at or below
  75%.  Also obtain either a) a copy of the
  divorce decree ordering the other spouse to
  make payments or b) the assumption
  agreement and the deed showing transfer of
  title out of the borrower's name.  Further
  instructions are in Handbook HUD 4155.1
  REV-5.

- **Mortgage Reference---**If a mortgage debt
  does not appear on the credit report, the
  credit report does not have a 12-month
  history, or if no rating is available, obtain
  the most recent 12-month history and
  include the payment in the qualifying
  ratios.

- **Rental Reference---**If a rental reference
  does not appear on the credit report, obtain
  the most recent 12-month history.

- **Credit Report Inquiries---**Include new
  debt payment resulting from material
  inquiries listed on the credit report in the
  debt ratios.  Also determine that any recent
  debts were not incurred to obtain any part
  of the required cash investment on the
  property being purchased.

- **Derogatory Credit Information and
  Judgments---**Obtain evidence of payoff for
  any outstanding judgments shown on the
  credit report.  Obtain an explanation for
  major indications of derogatory credit, such

| | |
|---|---|
| derogatory information. | as judgments and collections, as well as any minor indications within the past two years. |

## SYSTEM OVERRIDES AND MANUAL DOWNGRADES

A system override occurs when a loan application variable triggers a requirement (a "review rule") that an underwriter review the loan file. A manual downgrade becomes necessary if additional information, not considered in the AUS decision, affects the overall insurability or eligibility of a mortgage otherwise rated as an accept or approve. Both system overrides and manual downgrades may be triggered by inaccuracies in credit reporting, by eligibility issues, and for other reasons including the unlikely failure of the TOTAL Mortgage Scorecard or AUS to recognize a derogatory credit variable. Unless specifically permitted to continue to use the "accept/approve" documentation class, such as following a favorable resolution of a credit issue due to an error in reporting, the lender must document as a "refer" risk class and is accountable for the credit and ratio warranties on these loans. If the AUS the lender is using does not provide for a system override for any of the conditions shown below, then the lender is required to manually downgrade the loan to a "refer" under any of the following conditions:

### FEDERAL ELIGIBILITY

Certain individuals may not be eligible for federal benefits due to delinquent federally-related obligations or actions taken by a federal government agency. If a borrower is discovered to be ineligible due to any of the conditions described below, the lender must downgrade the loan to a Refer status (if the AUS does not do so) and determine what actions—if any—may be taken to allow the borrower to qualify for the mortgage. If it is determined that the information originally relied on to determine a borrower to be ineligible was erroneous, the lender may document the file accordingly and if the loan application is rated as an "accept/approve," use the credit waivers and reduced documentation accordingly.

#### *Delinquent Federal Debt*

If the borrower, as revealed by public records, credit information, or HUD's Credit Alert Interactive Voice Response System (CAIVRS), is presently delinquent on any federal debt, the borrower is not eligible for a mortgage insured by FHA. See Chapter 2 of Handbook HUD 4155.1 REV-5 for details.

#### *CAIVRS*

If CAIVRS indicates a federal delinquency, default, claim payment, or lien, the borrower is not eligible for additional federally related credit. Exceptions and error resolution are discussed in Chapter 2 of Handbook HUD 4155.1 REV-5. A check of CAIVRS is not required for streamline

FHA TOTAL Mortgage Scorecard User Guide

refinances.

We do not require a "clear" CAIVRS access number as a condition for mortgage endorsement, but the lender must document and justify its approval based on the exceptions described in the handbook or otherwise provide documentation proving erroneous or outdated information residing in CAIVRS.

### *Suspended and Debarred Individuals*

A borrower suspended, debarred, or otherwise excluded from participation in the Department's programs is not eligible for a FHA-insured mortgage. Both the General Services Administration (GSA) "List of Parties Excluded from Federal Procurement and Non-Procurement Programs" and HUD's Limited Denial of Participation (LDP) list are available through the FHA Connection.

### CREDIT ISSUES

### *Previous mortgage foreclosure*

A borrower whose previous residence or other real property was foreclosed on or has given a deed-in-lieu of foreclosure within the previous three years is generally not eligible for an insured mortgage. If the lender chooses to continue processing and manually underwrite the loan application, it must refer to Handbook HUD 4155.1 REV-5 for exceptions and additional underwriting requirements.

Provided that the foreclosure was completed at least three years previously *and* the risk-classification from TOTAL is an "accept/approve," no further documentation regarding the foreclosure is required.

### *Bankruptcy*

Both Chapter 7 liquidations and Chapter 13 bankruptcies discharged within two years of loan application require a referral to an underwriter and compliance with the instructions regarding bankruptcies described in Handbook HUD 4155.1 REV-5. A borrower whose bankruptcy has been discharged less than one year is not eligible for FHA mortgage insurance (except on non-credit qualifying streamline refinances).

Provided that the bankruptcy was discharged at least two years previously *and* the risk-classification from TOTAL is an "accept/approve," no further documentation regarding the bankruptcy is required.

### *Late Mortgage Payments*

If any mortgage trade line including mortgage line-of-credit payments, during the most recent 12

FHA TOTAL Mortgage Scorecard User Guide

months, shows:

> 3 or more late payments of greater than 30 days; or
> 1 or more late payments of 60 days plus one or more 30-day late payments; or
> 1 payment greater than 90 days late,

the loan application must be referred to a DE underwriter for review.

### *Disputed Accounts*

If the credit report reveals that the borrower is disputing any credit accounts or public records, the mortgage application must be referred to a DE underwriter for review.

# CHAPTER 3

## ENDORSEMENT PROCEDURES

The loan is eligible for FHA insurance endorsement if:

- The TOTAL Mortgage Scorecard rated the mortgage loan application as an "accept" or "approve", or if a "refer", the DE Underwriter manually underwrote and approved the mortgage application; and
- The data entered into the AUS are true, complete, and accurate; and
- The entire loan package meets all other FHA requirements (except for those specifically not required because the loan was evaluated by TOTAL).

Loan-level data in the AUS used to render a risk assessment must match that data also entered into CHUMS (if the lender has manually updated any of the fields used by TOTAL for scoring the mortgage). If data entered by the lender into CHUMS indicate a degradation of loan quality when compared with the AUS data used to obtain the risk assessment, FHA reserves the right to return the case binder to the lender unendorsed until such time as the lender corrects its data. FHA may also score the mortgage using FHA's TOTAL Mortgage Scorecard emulator. If the results of this re-scoring indicate that an "accept/approve" has been downgraded to a "refer" risk classification, the case binder may be returned for traditional manual underwriting.

It is imperative that lenders make certain that they enter the FHA case number into their LOS or AUS as soon as it is known. This will ensure a more efficient endorsement process. Mortgage loans that FHA's system of records cannot identify as having been risk-assessed by FHA's TOTAL Mortgage Scorecard will not receive the benefits of documentation reduction and credit policy revisions and may be returned to the lender for manual underwriting.

**Scorecard Version Issues**

From time to time, FHA will revise the TOTAL Mortgage Scorecard. FHA will announce the date that the new version of the scorecard will be available and from that date forward all new, first-time risk assessments will be based on the new scorecard. Loan applications that were scored under the previous version of the scorecard will be "grandfathered" and eligible for re-scoring under the earlier version for 90 days. Once that period has lapsed, all re-scores will be subject to the new version of the TOTAL Mortgage Scorecard. Lenders and vendors are also advised that the version number must be passed back to the TOTAL Mortgage Scorecard to allow for this grandfathering feature to operate.

**Underwriter Responsibilities**

| **For mortgages receiving an *"Accept/Approve"*:** | **For mortgages receiving a *"Refer"*** |
|---|---|
| • The DE underwriter is *not* required to personally review the credit and/or qualifying ratios;<br>• The DE underwriter is *not* required to certify that the borrower's credit and capacity meets standard FHA requirements;<br>• The TOTAL Mortgage Scorecard CHUMS number is to be recorded on form HUD-92900-A and the mortgage credit analysis worksheet; and<br>• The DE underwriter must underwrite the appraisal according to standard FHA requirements. | • The DE underwriter is required to underwrite both credit and capacity according to standard FHA guidelines;<br>• The DE underwriter is required to certify that the borrower's credit and capacity meet standard FHA requirements;<br>• The CHUMS number of the DE underwriter is to be recorded on form HUD-92900-A and the mortgage credit analysis worksheet;<br>• The DE underwriter must underwrite the appraisal according to standard FHA requirements. |