UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| ex. rel. COMFORT FRIDDLE | ) | |
| and STEPHANIE KENNEDY | ) | |
| | ) | |
| Relators, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 1:06-CV-3023-JEC |
| TAYLOR, BEAN & WHITAKER | ) | |
| MORTGAGE CORPRORATION; | ) | |
| HOME AMERICA MORTGAGE, INC.; | ) | |
| GREGORY HICKS and | ) | |
| CARL WRIGHT; | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS HICKS AND WRIGHT'S STATEMENT OF MATERIAL FACTS

Defendant Gregory Hicks and Carl Wright, by and through undersigned counsel, submit this Statement of Material Facts in support of their Motion for Summary Judgment.

### Background

1. Defendant Gregory Hicks ("Hicks") was from the beginning of Defendant Home America Mortgage, Inc's ("Home America") operations in 2001 until January, 2009 its CEO.

1

   a. Hicks Declaration, Exhibit A at ¶ 2.

   b. First Amended Complaint [Doc. 114], ("1st AC") at ¶ 12.

   c. Moseley Declaration, Exhibit B at ¶ 3.

2. From 2001 to January 2009 Home America was a retail mortgage company offering conventional and non-conventional loans in Alabama, Florida, Georgia, Kentucky, North Carolina and Tennessee.

   a. 1st AC at ¶ 17.

3. The loans were for new home construction, home equity/home improvement, home purchase and refinancing of existing mortgages.

   a. 1st AC at ¶ 18.

4. Home America's principal place of business was in the Atlanta area.

   a. 1st AC at ¶ 11.

5. By 2009 Home America employed approximately 400 people who collectively originated 800 to 1000 loans per month.

   a. Hicks Declaration, Exhibit A at ¶ 3.

   b. Moseley Declaration, Exhibit B at ¶ 4.

6. The employees of Home America generally were loan officers, processors, administrators and management.

   a. Moseley Declaration, Exhibit B, at ¶ 3.

7. Defendant Taylor, Bean & Whitaker Mortgage Corporation ("Taylor, Bean & Whitaker"), headquartered in Ocala, Florida, was during the period 2001 until it filed for bankruptcy protection in August 2009, a wholesale mortgage lender which provided financing and other services to various mortgage companies, one of which was Home America

        a. 1st AC at ¶¶10 and 20.

        b. Hicks Declaration, Exhibit A, at ¶ 3.

        c. Moseley Declaration, Exhibit B, at ¶ 3.

8. It was reported that Taylor, Bean & Whitaker's annual production volume approached $25 billion with assets exceeding $3 billion.

        a. 1st AC at ¶ 20.

9. During the period of 2001 into January, 2009 Taylor, Bean & Whitaker was the owner of 10% of the shares of stock of Home America; Hicks owned 90% of the shares of stock.

        a. Hicks Declaration, Exhibit A at attached deposition excerpts at page 42, line 10 through page 43, line 14.

        b. Moseley Declaration, Exhibit B at ¶3.

10. In January 2009 Hicks sold his interest in Home America to Taylor, Bean & Whitaker which promptly at the closing table fired Hicks.

    a. Hicks Declaration, Exhibit A at attached deposition excerpts at page 43, line 15 through page 45, line 4.

11. Former Defendant Dennis Moseley ("Moseley") was from 2001 until Home America filed for bankruptcy protection in November, 2009 a loan officer and later president of Home Amrica.[1]

    a. Moseley Declaration, Exhibit B at ¶ 2.

    b. 1st AC at ¶11.

12. Defendant Carl Wright ("Wright") was during the period of 2001 through and after 2009 an Atlanta area attorney who from time to time closed real estate transactions financed by Home America.

    a. 1st AC at ¶15.

13. Wright was convicted of mortgage fraud involving unrelated transactions to his closings for Home America.

    a. 1st AC at ¶15.

14. Wright has been disbarred and no longer practices law.

    a. 1st AC at ¶15.

---

[1] On June 25, 2013, the Relators voluntarily dismissed the First Amended Complaint without prejudice against Moseley. [ Doc. 196].

**Business Relationship Between Home America and Taylor, Bean & Whitaker**

15. Home America contracted with and paid fees to Taylor, Bean & Whitaker to conduct underwriting, closing and post closing activities regarding loans originated by Home America.

    a. Moseley Declaration, Exhibit B at ¶ 3 and at attached deposition excerpts at page 159, line 23 through page 160, line 25.

16. The funding for the Home America loans to its customers was a warehouse line of credit at Colonial Bank, Montgomery, Alabama.

    a. Moseley Declaration, Exhibit B at ¶ 3.

17. Within 7 to 10 days after the loans were closed, Home America sold each loan to Taylor, Bean & Whitaker which paid for the loans by paying Colonial Bank which credited Home America's line of credit.

    a. Hicks Declaration, Exhibit A at ¶ 4.

    b. Moseley Declaration, Exhibit B at ¶¶ 3 and 5.

18. After Home America sold its loans to Taylor, Bean & Whitaker, Home America had no ownership interest in the loans.

    a. Hicks Declaration, Exhibit A at ¶ 4.

    b. Moseley Declaration, Exhibit B at ¶¶ 3 and 5.

19. Home America did not service loans it originated.

      a. Hicks Declaration, Exhibit A at ¶4.

      b. Moseley Declaration, Exhibit B at ¶¶ 3 and 5.

**<u>The Process – Loan Origination to Closing to Sale to Taylor, Bean & Whitaker</u>**

20.    The originating process of a potential loan was performed by employees of Home America.

      a. Moseley Declaration, Exhibit B at ¶¶ 3 and 4, and at attached deposition excerpts at page 86, line 15 through page 87, line 4 and at page 121, line 14 through page 122, line 2.

21. The loan officer interviewed the customer and obtained information.

      a. Moseley Declaration, Exhibit B at attached deposition excerpts at page 121, line 14 through page 122, line 2.

22. The loan officer solicited from the customer documentation to support the customer's claims as to income, assets, liabilities, residency, etc.

      a. Moseley Declaration, Exhibit B at attached deposition excerpts at page 121, line 14 through page 122, line 2.

23. In undertaking this activity the Home America employee caused a file to be created.

      a. Moseley Declaration, Exhibit B at attached deposition excerpts at page 121, line 18; page 130, line 18 and page 137, line 22 through page 138, line 11.

24. The next step in the process was to submit the loan file to "processing" by a "processor"… "to make sure the information [in the file] [was] accurate."

      a. Moseley Declaration, Exhibit B at attached deposition excerpts at page 137, line 22 through page 138, line 11.

25. The processor ordered verifications of the putative borrower's employment, appraisals of property, title insurance, flood certificates, etc.

      a. Moseley Declaration, Exhibit B at attached deposition excerpts at page 137, line 22 through page 138, line 11.

26. The processor was responsible for assembling and organizing the various documents in the file for its subsequent submission to the underwriter.

      a. Moseley Declaration, Exhibit B at attached deposition excerpts at page 137, line 22 through page 138, line 11.

27. Relator Comfort Friddle was a loan processor employed by Home America.

      a. 1st AC at ¶8.

28. The processor, a Home America employee, in "the early days" would physically transfer the loan file to an underwriter, a Taylor, Bean & Whitaker employee.

> a. Moseley Declaration, Exhibit B at attached deposition excerpts at page 138, line 12 through page 140, line 4 and page 141, line 16 through page 142, line 16.

29. Later, the loan file would be "uploaded" in the Taylor, Bean & Whitaker underwriting system.

> a. Moseley Declaration, Exhibit B at attached deposition excerpts at page 138, line 12 through page 140, line 4.

30. All underwriting activity (review of all information regarding income, assets, ensuring compliance with rules and regulations, etc.) was performed by employees of Taylor, Bean & Whitaker who were co-located in Home America's premises.

> a. Hicks Declaration, Exhibit A at ¶¶ 3 and 4 and at attached deposition excerpts at page 80, line 22 through page 81, line 9.
>
> b. Moseley Declaration, Exhibit B at ¶¶ 4 and 5 and at attached deposition excerpts at page 101, line 23 through page 12, line 20 and at page 144, line 5 through line 25.
>
> c. 1st AC at ¶31.

31. The underwriter either approved the loan for closing, approved the loan with conditions to be satisfied before closing or denied the loan.

    a. Moseley Declaration, Exhibit B at attached deposition excerpts at page 140, line 5 through line 19 and page 144, line 7 through line 25 and page 145, line 19 through page 146, line 4.

32. If the loan was cleared to close, the loan file was sent to closing.

    a. Moseley Declaration, Exhibit B at attached deposition excerpts at page 149, line 13 through page 150, line 14.

33. In authorizing a loan to be closed Taylor, Bean & Whitaker's underwriter issued a commitment to Home America that Taylor, Bean & Whitaker would purchase the loan after it closed.

    a. Moseley Declaration, Exhibit B at deposition excerpts at page 149, line 13 through page 150, line 14 and at page 191, line 3 through page 193, line 4.

34. Next, the closing department at Taylor, Bean & Whitaker would prepare the closing documents (warranty deed, mortgage note, etc.) reflecting Home America as the lender.

    a. Moseley Declaration, Exhibit B at attached deposition excerpts at page 150, line 15 through page 151, line 8.

35. The closing documents would then be delivered to the closing attorney or title agent, depending on the state.

    a. Moseley Declaration, Exhibit B at attached deposition excerpts at page 150, line 15 through page 151, line 8.

36. As of the time of closing, there existed two separate sets of documents, the underwriting package and the legal documents sent to the closing attorney on title agent.

    a. Moseley Declaration, Exhibit B at attached deposition excerpts at page 151, line 11 through page 152, line 12.

37. The post-closing department of Taylor, Bean & Whitaker imaged the underwriting package file and transferred it to Taylor, Bean & Whitaker's back office located in Ocala, Florida.

    a. Moseley Declaration, Exhibit B at attached deposition excerpts at page 151, line 13 through page 152, line 12.

38. The second set of documents were the legal closing documents sent to the closing attorney or title agent.

    a. Moseley Declaration, Exhibit B at attached deposition excerpts at page 150, line 22 through page 151, line 25.

39. The post closing department at Taylor, Bean & Whitaker was responsible for obtaining any missing items (executed mortgage note, deeds, etc)

from the closing attorneys or title agents and other documents requested by Taylor, Bean & Whitaker's back office ultimately placing them into the underwriter's file.

> a. Moseley Declaration, Exhibit B at attached deposition excerpts at page 152, line 13 through page 154, line 15.

40. Lastly, within 7 to 10 days after closing Taylor, Bean & Whitaker purchased the loans from Home America which thereafter had no financial interest in the loans.

> a. Hicks Declaration, Exhibit A at ¶ 4.
>
> b. Moseley Declaration, Exhibit B at ¶¶ 3 and 5 and at attached deposition excerpts at page 193, line 21 through page 195, line 24.

**Federal Insurance**

41. Of the approximately 800 to 1000 loans a month originated by Home America approximately 30% per month were caused to be federally insured by Taylor, Bean & Whitaker, endorsed by the U.S. Department of Housing and Urban Development ("HUD") as a federal insurance underwriter.

> a. Hicks Declaration, Exhibit A at ¶¶ 3 and 4 and at attached deposition   excerpts at page 69, line 1 through page 71, line 20.
>
> b. Moseley Declaration, Exhibit B at ¶¶ 4 and 5 and at attached deposition excerpts at page 87, line 12 through page 88, line 15.
>
> c. 1st AC at ¶2.

11

42. Home America was identified by HUD as a Title II FHA lender, meaning Home America did not have authority to insure a loan.

    a. Moseley Declaration, Exhibit B at attached deposition excerpts at page 88, line 6 through line 15.

43. Only Taylor, Bean & Whitaker through its direct endorsement underwriters using Taylor, Bean & Whitakers' DE (direct endorsement) number issued by HUD, could cause FHA insurance to be issued for a Home America originated loan.

    a. Hicks Declaration, Exhibit A at ¶ 3 and at attached deposition excerpts at page 71, line 1 through page 72, line 4 and at page 131, line 6 through line 23.

    b. Moseley Declaration, Exhibit B at ¶¶ 3 and 4 and at attached deposition excerpts at page 201, line 11 through line 17.

44. Relator Stephanie Kennedy was employed by Taylor, Bean & Whitaker as a direct endorsement underwriter.

    a. Hicks Declaration, Exhibit A at attached deposition excerpts at page 80, line 22 through page 82, line 24 and at page 130, line 13 through page 131, line 23.

    b. 1st AC at ¶33.

**<u>Complaint Filed – Government Investigation</u>**

45. On December 12, 2006 the Relators filed under seal the initial Complaint in this action on behalf of the United States against the Defendants.

    a. Complaint [Doc.1]

46. Thereafter, the United States investigated the allegations contained within the Complaint.

    a. Unopposed Motion [Doc. 59 at pp. 2-4]

47. Before the Complaint was unsealed Defendant Hicks on his own initiative voluntarily submitted himself to three to four hours of questioning by the Atlanta United States Attorney's Office, together with agents of HUD's office of Inspector General, denying he made any false insurance claims against the government.

    a. Hicks Declaration, Exhibit A at ¶8 and at attached deposition excerpts at page 18, line 15 through page 20, line 25.

48. Before the Complaint was unsealed former Defendant Moseley voluntarily submitted himself to multiple hours of questioning by the Atlanta United States Attorney's Office and agents of HUD's office of Inspector General.

    a. Moseley Declaration, Exhibit B at ¶9.

49. On September 14, 2010 the United States filed its Notice of Election [Doc. 49] stating in part that the Government declined to intervene against Defendants Hicks, Moseley, Wright and John Doe.

    a. Unopposed Motion [Doc.59 at p. 4]

50. Thereafter the Complaint was unsealed.

    a. Dkt.

## HUD Files Produced – Records of Taylor, Bean & Whitaker

51. On December 15, 2011 Hicks, Moseley and Wilmer Parker, counsel for the defendants, travelled to HUD's General Counsel's office in Washington, D.C. to inspect and review documents which had been subpoenaed by Relators to be produced in this action.

    a. Hicks Declaration, Exhibit A at ¶5 and at attached deposition excerpts at page 203, line 4 through page 210, line 3.

    b. Moseley Declaration, Exhibit B at ¶6 and at attached deposition excerpts at page 14, line 15 through page 18, line 21.

    c. Parker Declaration, Exhibit C at ¶¶ 6 and 7.

52. The documents, stored in bankers boxes in individual files, were subsequently produced by HUD as Bates numbered HUD 000001 through HUD 080485. ("The Documents").

    a. Joel Foreman Declaration, Exhibit I to Doc. 101-3.

b. Parker Declaration, Exhibit C at ¶ 7.

53. The inspection and review of the Documents at HUD's General Counsel's Office revealed that the Documents were copies of records of Taylor, Bean & Whitaker.

    a. Hick's Declaration, Exhibit A at ¶ 5 and at attached deposition excerpts at page 203, line 4 through page 210, line 3.

    b. Moseley Declaration, Exhibit B at ¶ 6 and at attached deposition excerpts at page 14, line 15 through page 18, line 21.

54. In their prior filing of exhibits in support of their first Motion for Summary Judgment [Doc. 101], the Relators filed Exhibit A, which is a sub-set of the Documents.

    a. Doc 101-3, Exhibit A.

    b. Parker Declaration, Exhibit C at ¶¶ 6 and 7.

55. Taylor, Bean & Whitaker submitted to HUD the documents contained within exhibit A to Doc. 101-3.

    a. Parker Declaration, Exhibit C at ¶¶ 2-7 and attached exhibits A & B.

## No HUD Claims By Home America, Hicks, Moseley

56. Defendant Home America, prior to Hicks being fired in January 2009, **never** presented any claim to FHA and/or HUD seeking any money.

15

    a. Hicks Declaration, Exhibit A at ¶ 2.

    b. Moseley Declaration, Exhibit B at ¶2 and at attached deposition excerpts at page 15, line 24 through page 17, line 13.

57. Defendant Hicks has never presented any claim to FHA and/or HUD seeking any money.

    a. Hicks Declaration, exhibit A at ¶ 1.

58. Former Defendant Moseley has never presented any claim to FHA and/or HUD seeking any money.

    a. Moseley Declaration, Exhibit B at ¶ 1.

59. Defendant Hicks has never knowingly created a false record or statement in any documentation of loans originated by Home America.

    a. Hicks Declaration, Exhibit A at ¶ 6.

60. Defendant Hicks has never knowingly submitted any record or statement in any documentation created for Home America to be used in any false and fraudulent manner by Taylor, Bean & Whitaker in making any claim to the Government.

    a. Hicks Declaration, Exhibit A at ¶ 6.

    b. Hicks Declaration, Exhibit A at ¶ 9 and at attached deposition excerpts at page 130, line 13 through page 136, line 4.

61. Defendant Hicks did not conspire with any person to defraud the United States.

    a. Hicks Declaration, Exhibit A at ¶ 7.

**<u>No Personal Job Offered To Kennedy</u>**

62.  Defendant Hicks did not offer Relator Stephanie Kennedy a personal job.

    a. Hicks Declaration, Exhibit A at ¶ 9 and at attached deposition excerpts at page 130, line 13 through page 136, line 4.

                      Respectfully submitted,

                        /s/   Wilmer Parker
                        WILMER PARKER
                        Georgia Bar No. 563550

**MALOY JENKINS PARKER**
75 14th Street, N.E.
Suite 2500
Atlanta, Georgia 30309
(404) 875-2700
Fax: (404) 875-8757
parker@mjplawyers.com

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA ex. rel. COMFORT FRIDDLE and STEPHANIE KENNEDY**<br><br>　　　　**Relators,**<br><br>v.<br><br>**TAYLOR, BEAN & WHITAKER MORTGAGE CORPORATION; HOME AMERICA MORTGAGE, INC.; GREGORY HICKS and CARL WRIGHT;**<br><br>　　　　**Defendants.** | **CIVIL ACTION NO. 1:06-CV-3023-JEC** |

## CERTIFICATE OF SERVICE

　　This is to certify that I have this day served a copy of the foregoing filing into this District's ECF System, which will automatically forward a copy to counsel of record in this matter.

　　Dated: This day 7th of October, 2013.

　　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　/s/   Wilmer Parker
　　　　　　　　　　　　　　　　　　　　WILMER PARKER
　　　　　　　　　　　　　　　　　　　　Georgia Bar No. 563550

**MALOY JENKINS PARKER**
75 14th Street, N.E.
Suite 2500
Atlanta, Georgia 30309
(404) 875-2700
Fax: (404) 875-8757
parker@mjplawyers.com