# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| ex rel. COMFORT FRIDDLE | ) | |
| and STEPHANIE KENNEDY; | ) | |
| | ) | |
| Relators, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 1:06-CV-3023-JEC |
| TAYLOR, BEAN & WHITAKER | ) | |
| MORTGAGE CORPORATION; | ) | |
| HOME AMERICA MORTGAGE, INC.; | ) | |
| GREGORY HICKS; CARL WRIGHT; | ) | |
| and JOHN DOE; | ) | |
| | ) | |
| Defendants. | ) | |

## RELATORS' RESPONSE IN OPPOSITION TO DEENDANTS' MOTION FOR SUMMARY JUDGMENT

Mike Bothwell
Julie K. Bracker
Jason Marcus

**BOTHWELL BRACKER**
ATTORNEYS AT LAW

304 Macy Drive
Roswell, Georgia  30076
Phone:  (770) 643-1606
Fax: (770) 643-1442
Jason@WhistleblowerLaw.com

## I.  INTRODUCTION

"Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file and any affidavits, show 'that there is no genuine [issue] as to **any** material fact **and** that the movant is entitled to judgment as a matter of law.'" *OSA Healthcare v. Mount Vernon Fire Ins. Co.*, 2013 U.S. Dist. LEXIS 135192, *9 (N.D. Ga. Sept. 22, 2013)(Carnes, J.) (*quoting* Fed. R. Civ. P. 56(c))(emphasis added). Defendants have failed to address many material facts, the facts they do address are contested, and even if true, they still would not be entitled to judgment as a matter of law.[1] Defendants' Motion must fail.

## II. ARGUMENT

"To establish a cause of action under the False Claims Act, a relator must prove three elements: (1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with knowledge that the claim was false." *U.S. ex rel. Walker v. R&F*

---

[1] "Defendants'" Motion is really Hicks's Motion – Wright is not a part of Defendants' SOF, nor is his role addressed. Defendants' Statement of Facts ("SOF") states four facts about Wright, none of which are material. Dkt. 214-2, Defendants' SOF 12-14, 49. Instead, Defendants simply append Wright's name to a series of conclusions about Hicks. *See, e.g.*, Dkt. 214-1 at 19 (*citing* Defendant's SOF 57, 59 for Hicks only). The lone instance in which Wright is addressed individually is in a footnote, with no citation. Dkt. 214-1 at 14 n.14. Because they lack support, these conclusions are a legal nullity and are insufficient for summary judgment. *See* Fed. R. Civ. P. 56(c)(1); LR 56.1B(1)(a); *McDaniel v. Merlin Corp.*, 2003 U.S. Dist. LEXIS 16472, *24 (N.D. Ga. June 6, 2003) (Carnes, J., adopting).

*Props. of Lake Cnty., Inc.*, 433 F.3d 1349, 1355 (11th Cir. 2005). For the Court to grant summary judgment, Defendants must establish that when all evidence and factual inferences are viewed "in the light most favorable" to Relators, it is impossible for Relators to prove one of these three elements. *OSA Healthcare*, 2013 U.S. Dist. LEXIS 135192, *9-10 (requiring a "complete failure of proof concerning an essential element").

Although it is never explicitly stated, Defendants' Motion is premised on the second element. Defendants do not attempt to show that the statements at issue were not false,[2] nor do they attack Relators' evidence of scienter. Rather, they argue that they did not "cause" the claims to be presented. Defendants' view of causation, however, is contrary to established precedent. Even assuming that all of the facts alleged by Defendants were undisputed, as a matter of law Defendants' actions still meet the appropriate standard to establish FCA liability.[3] Accordingly, the Court should deny Defendants' Motion.

---

[2] In a single conclusory sentence, Defendants raise a series of unsupported evidentiary objections. Dkt. 214-1 at 15. For purposes of defending summary judgment, it should suffice that Relators obtained the files in question directly from HUD, with certification by HUD that they "consist of business records that [Taylor Bean] and [Home America] provided to HUD or the servicers of [Home America/Taylor Bean] loans as part of the regular practice of originating and processing government-insured home loans and were created contemporaneous with this practice." Dkt. 213-2, Relators' SOF 32-33.

[3] Defendants refer to the Government's partial declination (Dkt. 214-1 at 1 fn.1, 7-8), but it is well established that declination does not make any statement as to

**A. Defendants Do Not Meet Their Burden For Summary Judgment.**

The basis for Defendants' Motion for Summary Judgment is unsupported complaints about what Relators have supposedly "failed to prove." Dkt. 214-1 at 10.[4] Defendants, however, do not point to any specific lack of evidence (as is their burden), and moreover cannot do so because they made no effort whatsoever during discovery. Finally, Defendants fail to address the correct standards for any claims that fall under the FERA amendments to the FCA. By failing to identify the specific portions of the record that demonstrate the absence of a genuine issue of material fact, and by applying the wrong version of the statute, Defendants fail to meet their burden and their Motion must fail.

**1. <u>Defendants fail to identify "particular parts of materials in the record" which demonstrate the absence of a genuine issue of material fact.</u>**

"Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits." *OSA Healthcare*, 2013 U.S. Dist. LEXIS 135192, at *9. "The movant bears the initial burden of

---

the merits. *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 n.17 (11th Cir. 2006). It is a particularly strange argument here, where the Government *has* intervened against the corporate defendants—who, as legal fictions, could not possibly commit fraud on their own.

[4] *See*, *e.g.*, Dkt. 214-1 at 14 ("The evidence fails to show"); at 15 ("Not only haven't the Relators met their burden of proof…")("No claim has been shown")("false records… have not been proven"); at 17 ("There is simply no evidence")("There just is no evidence"); at 17-18 ("There is no evidence"); at 18 ("Relators have utterly failed to prove"). But in none of these instances do Defendants specify to what failure of proof they are alluding.

asserting the basis for his motion." *Id.* at *10. "If--and **only** if--the moving party carries the initial burden" does it shift to the non-movant. *Anderson v. Radisson Hotel Corp.*, 834 F. Supp. 1364, 1367 (S.D. Ga. 1993).

Rather than attempt to meet this burden, Defendants merely announce repeatedly that Relators lack sufficient evidence. This is not enough:

> In this circuit, even after *Celotex*, it is never enough simply to state that the non-moving party cannot meet its burden at trial. Instead, the moving party must point to specific portions of the record in order to demonstrate that the nonmoving party cannot meet its burden of proof at trial.

*U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 n.19 (11th Cir. 1991)(internal citations and quotation marks omitted).[5]

As shown below, Defendants' inability to prove Relators' case is due to twin failings: unwillingness to acknowledge the legal standards of binding precedent and failure to prosecute their own defense. But it does not follow that

---

[5] *Quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 328 (1986) (White, J., concurring) ("it is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case"); *accord Am. Hospice, Inc. v. Sebelius*, 2010 U.S. Dist. LEXIS 136710, *33-34 (N.D. Ala. Jan. 26, 2010) (A "movant generally does not satisfy its initial burden simply by pointing out to the court that… the materials in the court file, as they might be constituted following the filing of the defendant's motion, *do not include* evidence of every essential element of a plaintiff's claim."); *Radisson Hotel*, 834 F. Supp. at 1367 (*citing Clark*, 929 F.2d at 606-08); *Kaufman v. Wyeth, LLC*, 2011 U.S. Dist. LEXIS 154112, *24-25 (S.D. Fla. Aug. 15, 2011) ("Defendants' mere conclusory assertion that Prempro was state-of-the-art at time of manufacture is simply insufficient to shift the burden to Plaintiff to produce evidence that Prempro was not state-of-the-art.").

Relators cannot prove their case.[6] Nor do these generic protestations shift any burden to Relators. *See Am. Hospice*, 2010 U.S. Dist. LEXIS 136710, at *34. If such "meager effort" were enough to shift the burden, then "summary judgment would be reduced to nothing more than a tool for smoking out the trial strategy of the opposing party." *Radisson Hotel*, 834 F. Supp. at 1369.

## 2.  Defendants conducted no discovery of their own.

"[W]hen moving for summary judgment, a party asserting the absence of evidence to support the nonmoving party's case should be required to show that reasonable efforts have been made to uncover the relevant evidence, through use of interrogatories, document requests, depositions, and requests for admission." *Am. Hospice*, 2010 U.S. Dist. LEXIS 136710, at *34-35. But Defendants took **no** depositions—not of Relators, not of Home America employees, not of Taylor Bean employees. They subpoenaed **no** documents, obtained **no** substantive discovery from Relators, and stated repeatedly that they have **no** documents of their own. They did not even bother to procure a copy of the files at issue. *See* Dkt. 214-4 ¶¶ 6-7; Dkt. 211 at 6. Defendants' sole evidence is their own testimony. They cannot prevail at summary judgment by failing to conduct **any** discovery and then announcing that there is no proof of Relators' claims.

---

[6] Relators do not have to prove their own case to overcome the instant Motion; however, they refer the Court to their own affirmative Motion for Summary Judgment, Dkt. 213, which establishes their claims as a matter of law.

**3.  Defendants apply the wrong standard: FERA applies to claims pending on or after June 7, 2008.**

Defendants incorrectly conclude that only the pre-FERA[7] version of the False Claims Act applies to this action. Dkt. 214-1 at 12. FERA retroactively applies to all claims pending on or after June 7, 2008:

> The Eleventh Circuit has ruled that FERA is retroactive to claims for payment submitted to the federal government pending on or after June 7, 2008, regardless of when the litigation was filed. *See Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318 n. 3 (11th Cir. 2009). Section 4(f)(1) of the Act provides that the amendments "shall take effect as if enacted on June 7, 2008, and apply to all claims . . . that are pending on or after that date." Pub. L. No. 111-21, § 4(f)(1), 123 Stat. at 1625. In *Hopper*, the Eleventh Circuit interpreted the word "claim" to mean "any request or demand . . . for money or property," as defined by the amended 31 U.S.C. § 3729(b)(2)(A).

*U.S. ex rel. Bibby v. Wells Fargo Bank*, 906 F. Supp. 2d 1288, 1295 (N.D. Ga. 2012). Thus, under binding Eleventh Circuit precedent, the FERA amendments to the FCA apply to any claims for payment pending on or after June 7, 2008. *Id.* (*citing Hopper*, 588 F.3d at 1327 n.3).

In the First Amended Complaint, Relators cite to a sampling of 25 claims. Dkt. 114, ¶ 152. At least 11 of those 25 claims were submitted after June 7, 2008. *Id.*, ¶¶ 152a, d, e, g, j, n, o, q, r, t, y. The post-FERA statute applies to these and all other claims submitted or pending on or after June 7, 2008.

Defendants cite only two cases in support of summary judgment, *Allison*

---

[7] Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, 123 Stat. 1617

*Engine* and *Hopper*, both of which are limited to pre-FERA claims. 553 U.S. 662 (2008); 588 F.3d at 1327 n.3. FERA abrogated portions of *Allison Engine* and *Hopper* relied upon by Defendants, removing the materiality[8] and conspiracy[9] standards upon which they rely. Defendants never address the post-FERA standards for claims under § 3729(a)(1)(A); § 3729(a)(1)(B); § 3729(a)(1)(C); or materiality under § 3729(b)(4). Accordingly, the Motion must be denied at least as to all claims pending on or after June 7, 2008, which it fails to address.

**B. Defendants Caused False Claims To Be Presented To The Government.**

It is well-established that false statements in loan applications submitted to a government agency for the purpose of obtaining a loan guaranty or insurance, including FHA insurance, give rise to liability under the FCA for the claims subsequently paid out on defaulted loans. *See, e.g., U.S. v. Miller*, 645 F.2d 473, 476 (5th Cir. 1981) (false statement in application for FHA loans is false claim); *Bibby*, 906 F. Supp. 2d at 1296 (citing cases); *U.S. v. Eghbal*, 548 F.3d 1281, 1283

---

[8] FERA removed the ambiguous language relied upon by Defendants that a false statement be made for the purpose of getting a false claim paid; now it simply requires that a person caused to be made or used "a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B). Defendants quote the FCA definition of "material" (Dkt. 214-1 at 14), but then ignore the "natural tendency" test prescribed by the FCA (31 U.S.C. § 3729(b)(4)) and applied by the Eleventh Circuit. *See U.S. ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1228 (11th Cir. 2012).

[9] Defendants rely on a standard that was amended specifically to encompass a conspiracy to violate any provision of the FCA. 31 U.S.C. § 3729(a)(1)(C).

(9th Cir. 2008); *U.S. v. Van Oosterhout*, 96 F.3d 1491, 1494 (D.C. Cir. 1996); *U.S. v. First Nat'l Bank of Cicero*, 957 F.2d 1362, 1374 (7th Cir. 1992); *U.S. v. Anchor Mortg. Corp.*, 2010 U.S. Dist. LEXIS 81298, *15 (N.D. Ill. Aug. 11, 2010), summary judgment *affirmed at* 711 F.3d 745 (7th Cir. 2013); *U.S. v. Dolphin Mortg.,* 2009 U.S. Dist. LEXIS 4295, *25-26 (N.D. Ill. Jan. 22, 2009).

In awarding as damages the entire amount of the claims for fraudulently obtained insurance, the Seventh Circuit succinctly summed up causation: "The government offers a subsidy… (a form of insurance), with conditions. When the conditions are not satisfied, nothing is due." *U.S. v. Rogan*, 517 F.3d 449, 453 (7th Cir. 2008). The conditions on loans originated by Hicks and his team were not satisfied; nothing was due. "If the government would not have made a financial commitment absent the claimant's false statement, and the government is nevertheless required to pay a mortgage insurance claim or loan guaranty, the government has suffered damage 'because of' the false statement, as required by the Act." *First Nat'l Bank of Cicero*, 957 F.2d at 1374. Moreover, these false statements were not mere technical violations, but went directly to the buyers' credit worthiness. Defendants' actions caused the government to approve the false insurance applications and, ultimately, to pay the resulting claims.

1. **Binding precedent establishes causation.**

Defendants' lone argument as to Relators' claim under 31 U.S.C. §

3729(a)(1) is that they were not involved in any decision to submit claims. Dkt. 214-1 at 18-19. Even if true, this argument ignores the FCA's explicit incorporation of liability for those who "cause to be presented" a false claim.

*U.S. v. Miller* directly addressed Defendants' argument, holding that fraudulent origination practices could cause the submission of false claims:

> [F]alse statements regarding the ability of purchasers to afford housing could very well be the major factor for subsequent defaults. This being the case, the district court erred in dismissing the complaint against the developers since the government has clearly alleged the necessary causation factor.

645 F.2d 473, 476 (5th Cir. May 20, 1981). This decision is binding precedent.[10] Courts in this Circuit have continued to apply *Miller* to find causation in loan guarantee applications. *See U.S. v. Hill*, 676 F. Supp. 1158, 1174 (N.D. Fla. 1987) ("the false statement on a loan guarantee application has a sufficient nexus with the ultimate 'false claim' to fall within the 'causation' language of Section 3729(a)(1) and (a)(2)"); *U.S. v. Entin*, 750 F. Supp. 512, 519 (S.D. Fla. 1990) ("false statements regarding credit worthiness… have the requisite causal connection to a subsequent default"); *accord U.S. v. Wells Fargo Bank*, 2013 U.S. Dist. LEXIS 136539, *85-86 (S.D.N.Y. Sept. 24, 2013) (even "stringent causation requirements"

---

[10] *See Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (Decisions by the former Fifth Circuit issued before October 1, 1981, are binding as precedent in the Eleventh Circuit.).

are satisfied when the regulations "violated are those meant to ensure that

borrowers are able to afford their homes").

> Other circuits also reject Defendants' same "no causation" argument:

> [Defendants] contend that the Government failed to show that their false statements set into motion a false claim, because they sought only to fraudulently induce HUD to insure the mortgage, not to have the buyers default or cause the mortgage holders to make claims on HUD. It is true that [Defendants] were not parties to the actual claims presented to HUD, made after the buyers defaulted, which resulted in monetary payments by the Government. However, liability under the FCA nevertheless attaches, because the false statements were "relevant to the government's decision to confer a benefit." *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1173 (9th Cir. 2006). The plain language of the FCA contemplates liability not only for fraudulently causing the Government to pay a claim, but also for causing the Government to *approve* a claim…. We agree with the district court that the false statements at issue here bore directly upon the likelihood that the buyers would be unable to make their mortgage payments, and thus the misrepresentations had a causal connection to the subsequent defaults sufficient to support FCA liability. 31 U.S.C. § 3729(a)(1).

*Eghbal*, 548 F.3d at 1283 (*Allison Engine* "confirms this reading of the FCA");

*accord First Nat'l Bank of Cicero*, 957 F.2d at 1374 (quoted above); *U.S. v. Veneziale*,

268 F.2d 504, 505 (3d Cir. 1959) (holding defendant liable under FCA where he

caused buyers to make fraudulent application for FHA-insured loan that

defaulted); *c.f. U.S. v. Peterson*, 538 F.3d 1064, 1077 (9th Cir. 2008) (fraudulent

statements regarding origin of down payment directly and proximately caused

HUD's losses under MVRA).

> An opinion from the Northern District of Illinois and affirmed by the

Seventh Circuit held that false certifications on HUD Form 92900-A[11] were

material and caused the insurance payments, citing the HUD Handbook that

Hicks has admitted regulated his and Home America's actions:[12]

> Defendants contend that the false certifications were immaterial and
> did not cause HUD's alleged loss on these loans. The Court agrees
> with the government, however, that it has established both
> materiality and causation…. The evidence shows that HUD would
> not have approved the relevant FHA mortgage insurance
> applications had it known [of the violations]…. *see also* [HUD
> Handbook] § 4000.4, ¶ 1-3 ("If at the time the case is submitted for
> endorsement HUD has evidence that there is fraud or
> misrepresentation on the part of the originating mortgagee, HUD
> will consider the certifications as fraudulent and will not endorse the
> mortgage for insurance.").

*Anchor Mortg. Corp.*, 2010 U.S. Dist. LEXIS 81298, at *29-30 (citations omitted).

The causation analysis should end here: Defendants made false statements

regarding the purchasers' ability to pay the loans, violating FHA guidelines

designed to ensure that only loans likely to be repaid were insured, thus causing

the Government to insure non-qualified loans and approve claims when those

loans defaulted. Pursuant to binding precedent, this establishes "a sufficient

nexus" between the false statement and the claim. [13]

---

[11] *See* Dkt. 213-1 at 12-14 for discussion of HUD/VA Addendums to the Uniform
Residential Loan Applications (HUD-92900-A), and *id.* at 27-34 for discussion of
the HUD-92900-A forms submitted with the 25 example loan files.

[12] Dkt. 213-2, Relators' SOF 77.

[13] Defendants assert the age of the loans "negat[es] any evidentiary inference of
causation" and offer random reasons that might cause default. Dkt. 214-1 at 17

**2. Fraudulent inducement focuses on fraudulent statements, not submission of claims.**

Fraudulent inducement into a Government contract, such as for federal insurance, is regularly a basis for FCA liability. *See, e.g., U.S. ex rel. Longhi v. Lithium Power Techs., Inc.,* 575 F.3d 458, 467-68 (5th Cir. 2009); *U.S. ex rel. Sanchez v. Abuabara,* 2012 U.S. Dist. LEXIS 10079, *20-21 (S.D. Fla. Jan. 26, 2012)(providing "exhaustive survey" of cases where FCA liability attached "because of the fraud surrounding the efforts to obtain the contract or benefit status"). Relying on the U.S. Supreme Court, the Fourth Circuit explained that where a contract is

---

fn.6. This is a red herring for three reasons. First, binding precedent establishes a nexus between credit worthiness and default, regardless of the loan's age. The law has never required (and should not require) that the false claim for payment must follow the false statement within any specific timeframe.

Second, the argument ignores the posture of the Motion: specifically, all evidence and factual inferences must be viewed in the light most favorable to Relators, and the burden of proof is on Defendants as movant to show that Relators cannot establish causation, not to proffer alternate theories. *OSA Healthcare,* 2013 U.S. Dist. LEXIS 135192, at *9-10. At the least, Relators have established a disputed question of material fact.

Third, Relators have not alleged (nor must they prove) that Defendants gave loans to individuals who would immediately default; they allege that Defendants caused loan applications to be submitted that were falsely certified to meet the credit requirements set by the federal Government, and thus were more likely to default. That 20 of the 25 loans defaulted in fewer than 5 years (on 30 year loans) offers an evidentiary inference. Individuals with the FHA-required incomes and assets are not likely to default on loans after just a few years, but Relators have (for example) identified 13 loans that lack proper documentation of employment, income, and/or assets. Dkt. 213-2, Relators' SOF 37-38, 40-43, 47-49, 51, 53-54, 56; *see also* Dkt. 214-1 at 17 fn.6 (admitting that insufficient employment or income is a cause of default).

obtained via fraudulent inducement, "[t]he initial fraudulent action and every step thereafter taken" constitute the chain of causation. *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 777 (4th Cir. 1999) (*citing U.S. ex rel. Marcus v. Hess,* 317 U.S. 537, 543-544 (1943)). Thus the chain of causation begins with false statements on the loan applications, resulting in bad underwriting, fraudulently induced insurance, and false claims. *See Abuabara*, 2012 U.S. Dist. LEXIS 10079, at *24 (analysis should "focus on the particularity of the fraudulent inducement allegations rather than the subsequently filed claims").

### 3.  Participation in the submission process is not an element of causation.

The U.S. Supreme Court has already rejected Defendants' argument that they cannot be liable because they did not take part in a decision to submit a claim for payment. *U.S. ex rel. Marcus v. Hess* identified as the purpose of the FCA "to reach any person who knowingly assisted in causing the government to pay claims which were grounded in fraud, without regard to whether that person had direct contractual relations with the government." 317 U.S. 537, 544-545 (1943). Accordingly, in *U.S. v. Bornstein,* a subcontractor was held liable under the FCA for causing a contractor to certify it used materials that met quality requirements. 423 U.S. 303 (1976). "It is settled that the Act… gives the United States a cause of action against a subcontractor who causes a prime

contractor to submit a false claim to the Government." *Id.* at 309.[14]

Analogously, Home America, alleging to be a subcontractor,[15] submitted loan applications to underwriters that contained false data and representations the applicants met HUD requirements. Those false statements went directly to the borrowers' ability to pay. As a result, they caused false certifications that the loans qualified for federal insurance to be submitted to HUD.

The subcontractor in *Bornstein* did not ship mislabeled sub-quality tubes because it intended to defraud the Government; it simply wanted to profit by selling sub-quality tubes. 423 U.S. at 307. Thus when Defendants assert that false statements were not made with the intent of "*facilitating* a false claim against the government" (Dkt. 214-1 at 18), or "*for the purpose* of getting a false claim paid" (Dkt. 214-1 at 15), such a test is irrelevant under the standard set forth by the Supreme Court. And when Defendants suggest that by selling the loans they can avoid liability for anything that comes after, *Bornstein* rejects that argument as well, finding the subcontractor liable for tubes it sold to a third party. The FCA "makes no distinction between how non-submitting and submitting entities may

---

[14] Just as it is irrelevant whether Hicks or Wright submitted the claims, it is irrelevant whether they were paid for the claim. *See Hopper*, 588 F.3d at 1327 (false claim may be paid "either to the defendant itself, or to a third party").

[15] This fact is disputed and without support. *See* Dkt. 214-1 at 14 & fn.4; Dkt. 222-1, Response to Statement of Facts ("RSOF") 43; Dkt. 219 at 4 (Taylor Bean performed services for Home America for a fee, not vice versa). However, as discussed, Defendants are liable whether they are contractors or subcontractors.

render the underlying claim or statements false or fraudulent." *U.S. ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 389 (1st Cir. 2011).

As the Supreme Court has further held, in enacting the FCA "Congress wrote expansively, meaning 'to reach all types of fraud, without qualification, that might result in financial loss to the Government.'" *Cook Cnty. v. U.S. ex rel. Chandler*, 538 U.S. 119, 129 (2003) (*quoting U.S. v. Neifert-White Co.*, 390 U.S. 228, 232 (1968)). The record is replete with evidence that Hicks—through his own actions and by bullying Home America employees and underwriters—caused the creation of false statements in order to create loan files that would be insured by the Government. He knew that such fraud "might result in financial loss to the Government." *Id.*; *see also* Dkt. 213-2, Relators' SOF 96. Hicks caused loans to be insured through false certifications of credit worthiness and abidance by HUD regulations.[16] Defendants' Motion should be denied.

## C. The False Statements Were Material.

Rather than arguing that any of the false statements were not material, Defendants again try to shift the burden to Relators, arguing that Relators have not "proven" the false statements are "material" because they have not "proven"

---

[16] There are many FCA cases in which a liable party did not participate in the claims submission process. *See, e.g., Bornstein,* 423 U.S. 303 (sale of non-conforming product); *U.S. ex rel. Stephens v. Tissue Sci. Labs., Inc.*, 664 F. Supp. 2d 1310 (N.D. Ga. 2009) (off-label marketing); *Hutcheson*, 647 F.3d 377 (kickbacks).

that the false statements "*caused* the government to actually pay a false claim." Dkt. 214-1 at 18 (*quoting Hopper*, 588 F.3d at 1327).[17] As with causation, binding precedent already holds that false statements regarding ability to repay are material. *Miller*, 645 F.2d at 474 ("statements as to the credit worthiness and net worth of such home buyers" in loan applications are "materially false"). Two circuits and at least four district courts, including this one, agree:

> [I]mplicit in the submission of a claim for payment on a defaulted loan is a certification that the loan complies with the core eligibility requirements of HUD insurance…. That the absence of material violations [in the origination and underwriting of a loan file] was an explicit condition of payment is made clear by regulation and by statute. Such loans must be reported to HUD… **HUD may refuse to pay claims -- on defaulted loans that materially violate the agency's requirements.**

*Wells Fargo*, 2013 U.S. Dist. LEXIS 136539, at *83-84 (emphasis added); *see also Eghbal*, 548 F.3d at 1283 (applying *Allison Engine,* "use of fraudulent information to induce the Government to provide a loan guarantee" has a "'material effect' on the Government's eventual decision to pay a claim"); *Bibby*, 906 F. Supp. 2d at 1303-04; *U.S. ex rel. Fago v. M&T Mortg. Corp.*, 518 F. Supp. 2d 108, 118 (D.D.C. 2007); *Anchor Mortg. Corp.*, 2010 U.S. Dist. LEXIS 81298, at *17-19 (false statements about source of down payments "were material to HUD's decision to grant FHA insurance" and were material to resulting claims; affirmed by Seventh Circuit).

---

[17] Again, this standard is only applicable to those claims made prior to June 7, 2008. FERA § 4(f)(1); *see also* Section A(3), *supra*.

Although no more is needed, there are at least three other sources that establish materiality. First, as noted by *Anchor Mortgage,* the HUD Handbook establishes materiality. *Id.* (quoted in Section B(1) above). Second, HUD's proof of claim against Home America outright states that "FHA would not have endorsed the mortgages for insurance had it known of the fraudulence or falsity of the claims and/or the false information submitted to FHA that supported or otherwise was used to get the claims for mortgage insurance paid." Dkt. 213-2, Relators' SOF 107-108.[18] And third, the false statements themselves establish materiality. *See, e.g.*, Dkt. 213-2, Relators' SOF 113 (HUD-92900-A includes a signed statement that Home America's certifications are made "to induce [HUD] to issue a firm commitment for mortgage insurance"); CSOF 10-11 (HUD-92900-A also includes a certification as to the integrity of the data, due diligence, and certifying that the "mortgage is eligible for HUD mortgage insurance" and "makes all certifications required" by HUD Handbook 4000.4).

---

[18] Defendants objected to Relators' use of the Governments' proofs of claims as hearsay. Dkt. 214-1 at 19-20. Relators do not offer the proof of claim as "evidence to prove the truth of the matter asserted" (i.e., that Defendants originated bad loans), nor for any of the matters presented "upon information and belief." Rather, they cite the proof of claim for two admissible purposes: first, as HUD's statement of its own position as to materiality of the violations. Dkt. 213-2, Relators' SOF 108. Second, that for each of the 415 loans listed, "FHA endorsed the mortgage, the borrower(s) defaulted, the mortgage holder made claim(s) for insurance benefits to FHA, and FHA paid insurance benefits on the loans." *Id.*, Relators' SOF 107. This information was compiled from HUD's systems and the mortgage servicers for each loan, and is not hearsay. *See id.*, Relators' SOF 35.

Thus, as a matter of law, Defendants' false statements were material to the Government's decision to insure the loans, thereby causing the Government to issue payment on 415 false claims. *Id.*, Relators' SOF 107-108.

**D. Defendants Intended To Falsely Induce The Government To Insure Loans.**

Defendants made and/or caused to be made false records and statements for the purpose of getting loans insured by the Government. Contrary to Defendants' brief, this satisfies the FCA's standard of intent. There is no requirement that Defendants intended that claims be paid.

**1.  <u>Defendants apply an incorrect standard for intent under the FCA.</u>**

Defendants cite *Allison Engine* for the standard of intent required under 31 U.S.C. § 3729(a)(2): "that the defendant made a false record or statement for the purpose of getting a false or fraudulent claim paid or approved by the Government." Dkt. 214-1 at 13 (*quoting* 553 U.S. 662, 671 (2008)).[19] But the standard they then apply is very different: that the defendant "intended to make any alleged material false record or statement to be submitted to the government to facilitate a false claim against the government." Dkt. 214-1 at 17-18.

*Allison Engine* does not support this latter standard. It does not require specific intent to commit fraud (553 U.S. at 672 n.2), and it does not require

---

[19] As discussed above, this standard has bearing only on claims made prior to June 7, 2008, before the adoption of FERA.

submission or intent to submit (*id.* at 671). Indeed, the *Allison Engine* decision did not change the FCA's scienter requirements at all. *See U.S. ex rel. Loughren v. Unum Group*, 613 F.3d 300, 312-13 (1st Cir. 2010).[20] In its application of the correct intent standard, however, *Allison Engine* did tender an important proclamation: "a subcontractor violates § 3729(a)(2) if the subcontractor submits a false statement to the prime contractor intending for the statement to be used by the prime contractor to get the Government to pay its claim." 553 U.S. at 671.

This is **exactly** what occurred in this case. With respect to federally-insured loans, Home America's *raison d'être* was to originate loans that would be insured by the federal Government. Dkt. 222-1, Relators' Counter Statement of Facts ("CSOF") 9. If the loan applications did not meet Government standards, the loans were not closed. CSOF 1. In actuality, the applicants did not qualify to be federally insured, and so Hicks and his team fraudulently induced the Government to insure the loans by making false statements.

Defendants demand proof that they created the statements in question for

---

[20] Rather, the issue in *Allison Engine* was whether false statements submitted to private entities, as opposed to government agencies, could give rise to FCA liability. 553 U.S. at 671-73; *see also U.S. ex rel. Wall v. Circle C Constr., LLC*, 697 F.3d 345, 355 n.3 (6th Cir. 2012) ("the primary concern raised in *Allison* [was] regarding subcontractors' indirect submissions [to the Government]"). In the instant case, Defendants caused false statements to be submitted to the Government, with the intent of inducing HUD/FHA to insure loans that did not actually qualify. Because the false statements actually were submitted to the Government (and not some third party), *Allison Engine*'s holding is inapplicable.

19

the express purpose of defrauding the Government. Dkt. 214-1 at 17-18. But, again, the FCA does not require "proof of specific intent to defraud." 31 U.S.C. § 3729(b)(1)(B). *Allison Engine* clarified the distinction between Defendants' faulty "intent to defraud" standard and the correct standard: intent that the documents be material to a claim for payment.

> First, the intent requirement we discern in § 3729(a)(2) derives not from the term "knowingly," but rather from the infinitive phrase "to get." Second, § 3729(b) refers to specific intent with regard to the truth or falsity of the "information," while our holding refers to a defendant's purpose in making or using a false record or statement.

553 U.S. at 670 n.1.

*Allison Engine* cites a similar standard for intent under § 3729(a)(3), that Defendants conspired with the intent of making false statements to get a false claim paid or approved.[21] 553 U.S. at 672.[22] Defendants conspired to make false statements for the purpose of getting the loans federally insured. Hicks originated bad loans, Home America processed the loans, Wright closed the bad loans, and Taylor Bean submitted them for insurance.[23] At each step, the parties'

---

[21] Under the present version of the FCA, the standard for conspiracy is even broader: "conspires to commit a violation" of the FCA. 31 U.S.C. § 3729(a)(1)(C).

[22] The sole purpose of this analysis was to hold that a conspiracy to get a "recipient of Government funds" to pay false claims does not fall under the FCA.

[23] Defendants assert that they have no liability because Taylor Bean underwrote the loans and were responsible for telling them if something was wrong with the loan. Dkt. 214-1 at 15. In addition to being irrelevant, this completely ignores the conspiracy allegation: Home America originated bad loans, created false

intent was to get loans insured by the Government, regardless of whether the loans met program conditions.

*Allison Engine* was intended to ensure that "a defendant is not answerable for anything beyond the natural, ordinary and reasonable consequences of his conduct." *Id.* at 672. That is not a concern here. The natural, ordinary, and reasonable consequences of making false statements and attaching false records to an application for a federally-insured loan program is their submission to obtain that very insurance. Hicks is not protected by *Allison Engine*.

**2.  Presentment is not an element of § 3729(a)(2) or § 3729(a)(3).**

In the very language cited by Defendants, *Allison Engine* is clear that presentment **is not a requirement** under § 3729(a)(2) or § 3729(a)(3):

> What § 3729(a)(2) demands is not proof that the defendant caused a false record or statement to be presented or submitted to the Government but that the defendant made a false record or statement for the purpose of getting "a false or fraudulent claim paid or approved by the Government…. It is not necessary [under § 3729(a)(3)] to show that the conspirators intended that the false record or statement to be presented directly to the Government…"

553 U.S. at 671; *see also Hopper*, 588 F.3d at 1327 (§ 3729(a)(2) does not demand proof that defendant caused a false record, statement, or claim to be submitted to the Government). Defendants thus misstate the law when they argue that

---

documents to support those loans, and made false certifications that the loans qualified for federal insurance. That Taylor Bean performed one part of the scheme does not excuse Defendants from their own roles in the conspiracy.

Relators have not proven that they "intended to make any alleged material false record or statement to be submitted to the government." Dkt. 214-1 at 17-18. By making false statements to get bad loans federally insured, the standard is met.

### E.  Hicks Is Personally Liable For The Fraud He Orchestrated.

Hicks appears to believe that he can avoid FCA liability if he did not personally submit a false statement to the Government. *See, e.g.*, Dkt. 214-1 at 19. The orchestrator of a fraudulent scheme cannot evade liability simply by having others carry out his dirty work. Rather, an individual who "causes [a false record or statement] to be made or used" is equally liable as the person who actually makes the false statement. 31 U.S.C. § 3729(a)(2).[24] By directing Home America staff and the underwriters to make false statements in loan applications to obtain federal insurance, Hicks is personally liable for the resulting fraud.[25]

---

[24] *See also Peterson v. Weinberger*, 508 F.2d 45, 53 (5th Cir. 1975) (company owner liable for instructing his employees to include false information on Medicare claim forms); *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 715 (10th Cir. 2006); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 378 (5th Cir. 2004) ("[A] person need not be the one who actually submitted the claim forms in order to be liable."); *U.S. v. Mackby*, 261 F.3d 821, 828 (9th Cir. 2001) (physical therapist who instructed billing service and office manager to use false statement on Medicare claim forms "caused" false records to be submitted).

[25] The issue of Hicks's personal liability is briefed at length in support of Relators' Motion for Summary Judgment. Dkt. 213-1, Section C (Hicks personally performed the fraud, ordered Home America staff to perform the fraud, instructed the Taylor Bean underwriters to perform the fraud, and at the very least recklessly disregarded the fraud being committed by his own company).

**F. There Is A Genuine Issue Of Material Fact As To Whether Greg Hicks Offered Bonuses To Stephanie Kennedy.**

Relator Kennedy alleges that Hicks offered her a position as Vice President of Operations, increased compensation, sales options, and bonuses to induce her to refuse a job with SunTrust. Dkt. 114, ¶¶ 178-179. Kennedy accepted Hicks's offer. *Id.*, ¶ 180. Hicks changed Kennedy's title, but did not pay her the agreed upon bonuses or sales options. *Id.*, ¶ 181.

Greg Hicks proffers only two facts to refute these allegations: First, "Relator Stephanie Kennedy was employed by Taylor, Bean & Whitaker as a direct endorsement underwriter." Defendants' SOF 44. Second, "Defendant Hicks did not offer Relator Stephanie Kennedy a personal job." Defendants' SOF 62. The sole support for both statements is Hicks's own testimony, and both are disputed by Kennedy's testimony. RSOF 44, 62. Where it is one party's word against the other, there is a genuine issue of material fact for a jury to decide. *See Faulkenbery v. Lee*, 307 Fed. Appx. 813, 814 (5th Cir. 2009).

Hicks also argues that Home America could not employ direct endorsement underwriters. Dkt. 214-1 at 21-22. He offers no support for this position, which is controverted by the testimony of Stephanie Kennedy and Allison Olson, both of whom were hired by Greg Hicks to work as underwriters at Home America. CSOF 2, 4. Even if Home America could not legally employ underwriters, Hicks conspired with Taylor Bean to circumvent this restriction:

23

> Although I was hired by Greg Hicks personally, and brought on to work for the "Hicks Team," my pay stub and W-2 both indicated that I was being paid by Taylor Bean & Whitaker. When I asked why this was being done, I was reassured by Hicks personally that I was a HAM employee, but that it was a "clerical necessity" that I be paid through TBW, because HAM's FHA ID and FHA approval were "through TBW," which I was assured was legal and legitimate because Hicks was an owner of both entities.

CSOF 3, *citing* Dkt. 213-3, Exhibit D, Declaration of Allison Olson, ¶ 34.

Third, Kennedy does not allege that she was being offered a job as a direct endorsement underwriter; she alleges that Hicks offered to promote her to Vice President of Operations. Dkt. 114, ¶ 179; CSOF 5. Hicks argues that he did not have authority to do this, and yet Kennedy *was* promoted to VP of Operations. CSOF 6. Thus even if Kennedy was not an employee of Home America, Hicks still had the apparent authority to promote her and offer her compensation.[26]

Finally, even if Relator Kennedy was an employee of Taylor Bean, she was also an employee of Home America under the "borrowed servant" doctrine. *See Summerlin v. Ga. Pines Cmty. Serv. Bd.*, 286 Ga. 593, 594 (2010) (borrowed servants are employees of the borrowing employer). Under Georgia law, "in order for an employee to be a borrowed employee, the evidence must show that (1) the special master had complete control and direction of the servant for the occasion;

---

[26] Kennedy was promoted to VP of Operations the same month that Hicks offered her the position in exchange for staying at Home America. CSOF 5-6. This at the very least provides a genuine issue of material fact as to his authority.

(2) the general master had no such control, and (3) the special master had the exclusive right to discharge the servant." *Six Flags Over Georgia, Inc. v. Hill*, 247 Ga. 375, 377 (1981). Hicks had complete control and direction of the Home America underwriters – Kennedy included – during the term of her employment. CSOF 7-8. Kennedy did not take direction from management at Taylor Bean, but only from supervisors at Home America, including Hicks. CSOF 7. And finally, Hicks twice hired and fired her from the Home America office. *Id*.

Ultimately, for purposes this claim, the identity of Kennedy's employer is irrelevant. Hicks offered Kennedy compensation if she refused another job and instead continued to work at the Home America office. This is an offer he could make, and had reason to make, whether Kennedy was technically an employee of Home America or of Taylor Bean. Kennedy accepted Hicks's offer and turned down the other position, and Hicks made the promotion but never paid the promised bonuses. CSOF 5. Hicks breached his agreement with Kennedy.

### III. CONCLUSION

It is **Defendants** who seek summary judgment, and so it is **Defendants'** burden to show that Relators **cannot** prove the elements of their case. *Four Parcels*, 941 F.2d at 1438 n.19. Defendants have not met their burden of showing that there are no genuine issues as to any material fact or that they are entitled to judgment as a matter of law. Accordingly, Defendants' Motion must be denied.

25

Respectfully submitted this 31st day of October, 2013.[27]

/s/ Jason Marcus
Mike Bothwell
Georgia Bar No. 069920
Julie Keeton Bracker
Georgia Bar No. 073803
Jason Marcus
Georgia Bar No. 949698

BOTHWELL
BRACKER
ATTORNEYS AT LAW

304 Macy Drive
Roswell, GA  30076
Phone: (770) 643-1606
Fax: (770) 643-1442
Jason@WhistleblowerLaw.com

---

[27] Counsel certifies that this brief was prepared using Book Antiqua 13-point font.

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| **ex rel. COMFORT FRIDDLE** | ) | |
| **and STEPHANIE KENNEDY** | ) | |
| | ) | |
| **Relators,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.** |
| | ) | **1:06-CV-3023-JEC** |
| **TAYLOR, BEAN & WHITAKER** | ) | |
| **MORTGAGE CORPORATION;** | ) | |
| **HOME AMERICA MORTGAGE,** | ) | |
| **INC.; GREGORY HICKS; CARL** | ) | |
| **WRIGHT; and JOHN DOE** | ) | |
| | ) | |
| **Defendants.** | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing and a proposed order were sent

via the Court's electronic filing system to all counsel of record on October 31, 2013.


*/s/ Jason Marcus*

27